## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CHARLES S. WEEMS, IV, an
individual, KERRI WEEMS, an
individual, and CELEBRATION
GLOBAL, INC., a Florida not for
profit corporation, HONEY LAKE
FARMS, INC., a Florida not for profit
corporation, NORTHSTREAM
MANAGEMENT GROUP, LLC, a
Florida limited liability company, and
WEEMS GROUP, LLC, a Florida
limited liability company,

       Plaintiffs,

v.

ASSOCIATION OF RELATED
CHURCHES, a Texas not-for-profit
corporation, CHRIS HODGES,
individually, DINO RIZZO,
individually, and JOHN SEIBELING,
individually,

       Defendants.

_____/

Case: 3:23-cv-00811-MMH-LLL

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Local Rule 3.01 and Federal Rule of Civil Procedure 12, Defendants Association of Related Churches ("ARC"), Chris Hodges ("Pastor Hodges"), Dino Rizzo ("Pastor Rizzo"), and John Siebeling ("Pastor Siebeling") (collectively "Defendants") move to dismiss Plaintiffs' Complaint & Demand for Jury Trial (Doc. 1; "Complaint" or "Compl.") for lack of subject matter jurisdiction based on the ecclesiastical abstention doctrine or, alternatively, for a

more definite statement because Plaintiffs filed an impermissible shotgun pleading.

## I.    <u>INTRODUCTION</u>

At the outset, Defendants strongly disagree with the allegations and claims in Plaintiffs' Complaint, most of which are neither factually nor legally supported. But for purposes of this motion, the Court need not decide the merits of any of Plaintiffs' positions. Instead, even accepting what has been written, two inescapable conclusions result: (i) the Court lacks jurisdiction over this dispute, and (ii) Plaintiffs have inadequately pled their allegations and claims in a shotgun complaint.

As to the first conclusion, the Complaint asks the Court to impermissibly take sides in a church dispute over which it has no jurisdiction. Plaintiff Stovall Weems is the founder and former Senior Pastor of the Celebration Church ("Celebration Church" or "the Church") based in Jacksonville, Florida. Compl., ¶¶ 27-29. This lawsuit arises from what the Complaint portrays as a dispute between two rival factions, each with a different vision of the Church's future. According to the Complaint, one faction favors "unbridled church growth." *Id.*, ¶ 2. The other faction, represented by Pastor Weems and his wife, Plaintiff Kerri Weems, purportedly favors an "anti-growth, missionary focused vision." *Id.*, ¶ 38; *see also id.*, ¶ 61.

According to the Complaint, Defendants—alleged proponents of the growth-focused vision—hatched "a plan to oust Pastor Weems from his leadership position" so their vision could prevail. *Id.*, ¶ 93. The centerpiece of the alleged plan

was what Pastor Weems characterizes as a "sham 'investigation'" of his misconduct as Senior Pastor. *Id.*, ¶ 125. That investigation, conducted by respected attorneys hired by the Church's board of trustees, culminated in a report finding that Pastor Weems had exhibited "the antithesis of biblical leadership" in his role at the Church, including alleged financial improprieties and misconduct. Compl., Ex. A. at 20. Ultimately, with his leadership in doubt, Pastor Weems resigned. *Id.*, ¶ 138.

Did Pastor Weems actually exhibit "the antithesis of biblical leadership"? *Id.*, Ex. A. at 20. Or was the investigation a pretext "to legitimize the takeover of Celebration Church and ensure the failure of Plaintiffs' anti-growth vision and missionary work"? *Id.*, ¶ 141. Did the wrong faction prevail in the struggle for control of the Church? These are among the disagreements in which the Complaint impermissibly seeks to entangle this Court.

Both the United States and Florida Constitutions forbid the Court from deciding such matters. Under the ecclesiastical abstention doctrine, civil courts may not "enter[] into a religious controversy and put[] the enforcement power of the state behind a particular religious faction." *Crowder v. S. Baptist Convention*, 828 F.2d 718, 721 (11th Cir. 1987); *see also Napolitano v. St. Joseph Cath. Church*, 308 So. 3d 274, 275, 277 (Fla. 5th DCA 2020). Because civil courts "may not adjudicate ecclesiastical disputes," the Court lacks subject matter jurisdiction to decide this case and must dismiss the Complaint. *Crowder*, 828 F.2d at 718.

As to the second conclusion, Plaintiffs have not adequately pled the claims

brought by each named plaintiff against each named defendant. Plaintiffs have, instead, impermissibly filed a shotgun complaint, grouping all named parties on each side of the case into two over-generalized groups described as "Plaintiffs" and "Defendants," incorporating all allegations by and against these groups into a single first count, and then incorporating that first count into a second. It is thus impossible to understand the specific facts and actions at issue as to each of the 10 parties in this case. Thus, if the Court exercises jurisdiction over this matter, it should order a more definite statement and require Plaintiffs to replead the Complaint.

## II.    <u>MOTION TO DISMISS FOR LACK OF JURISDICTION</u>

### A.    <u>Applicable Law</u>

"Among the separation of church and state principles required by the establishment and free exercise clauses of the first amendment is that courts may not adjudicate ecclesiastical disputes." *Crowder*, 828 F.2d at 718. This "limitation on secular judicial power" to interfere with "religious affairs" is similarly embedded in Florida's Constitution. *Napolitano*, 308 So. 3d at 275, 277.

The "ecclesiastical abstention doctrine" is well-established: "Civil courts lack jurisdiction to entertain disputes involving church doctrine and polity." *Rutland v. Nelson*, 857 F. App'x 627, 628 (11th Cir. 2021); *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 F. App'x

926, 928 (11th Cir. 2018) (same); *see also Napolitano*, 308 So. 3d at 277.[1]

A "narrow exception to this doctrine" permits judicial review of a church-related dispute only if it (i) can be decided via neutral legal principles; and (ii) does not involve religious doctrinal matters, *see Rutland*, 857 F. App'x at 628, or matters of internal church procedures or governance, *see Myhre*, 719 F. App'x at 928-29. But courts lack jurisdiction if a claim implicates or is "part and parcel of ecclesiastical concerns." *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla.*, 824 F. App'x 680, 683 (11th Cir. 2020). The core areas courts must avoid include "issues connected to 'theological controversy, church discipline, ecclesiastical government, or conformity of members of the church to the standard of morals required of them.'" *Myhre*, 719 F. App'x at 928 (citation omitted); *see also Eglise Baptiste*, 824 F. App'x at 683.

In short, the "inquiry is whether this dispute is one of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. If so, secular courts lack" jurisdiction. *Napolitano*, 308 So. 3d at 279; *see also Eglise Baptiste*, 824 F.

---

[1] The ecclesiastical abstention doctrine goes by other names, including the church autonomy doctrine. *E.g.*, *Springhill Missionary Baptist Church, Inc. v. Mobley*, 251 So. 3d 281, 283 (Fla. 1st DCA 2018). But the doctrine is not limited to religious bodies and is also properly invoked by individuals. *E.g.*, *Rutland*, 857 F. App'x at 627 (affirming dismissal of complaint against president of church); *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla.*, 824 F. App'x 680, 681 (11th Cir. 2020) (affirming dismissal of claims against individual defendant); *Napolitano*, 308 So. 3d at 275, 279 (holding claims against church, pastor, and bishop all barred); *Goodman v. Temple Shir Ami, Inc.*, 712 So. 2d 775, 776-77 (Fla. 3d DCA 1998) (holding rabbi's claim against temple board member barred). Indeed, the doctrine applies even to religious disputes between secular parties. *Mammon v. SCI Funeral Servs. of Fla. Inc.*, 193 So. 3d 980, 981 (Fla. 4th DCA 2016) (affirming dismissal of widow's complaint against cemeteries for failure to follow "'Jewish burial customs and traditions'").

App'x at 683; *Myhre*, 719 F. App'x at 928-29.

> **B.    Background of Church Dispute**

> **1.    The Complaint's Allegations**

Though most of the Complaint's allegations against Defendants are inaccurate, this motion treats the allegations as if they were true.[2] As such, the allegations that follow are simply a recitation of what Plaintiffs have pled.

Pastor Weems and K. Weems founded Celebration Church, where Pastor Weems presided as Senior Pastor until April 2022. Compl., ¶¶ 27, 29. His duties included "shap[ing] the vision and direction of Celebration Church" and directing its missionary and spiritual activities. *Id.*, ¶ 30. The Church eventually grew to nearly 20,000 members. *Id.*, ¶ 28.

Pastors Rizzo and Siebeling served as Overseers at the Church. *Id.*, ¶¶ 52-53. Celebration's Overseers "were nominated by the Senior Pastor and confirmed by the Board of Trustees," and they "provided apostolic oversight to the Senior Pastor, and were charged with protecting the Church through counsel, prayer, and

---

[2] Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) can be facial or factual. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). A facial attack looks to the complaint and accepts its allegations as true. *See id.* In a factual attack, extrinsic evidence may be considered, and so long as the jurisdictional issues are not "inextricably intertwined with the merits," the Court is free to weigh evidence. *Id.* at 1230, 1232. This is a facial attack. The Complaint's allegations are presumed true, and the only outside materials cited are from related state-court proceedings, of which this Court may take judicial notice. *See Sporea v. Regions Bank, N.A.*, No. 20-11812, 2021 WL 2935365, at *2 (11th Cir. July 13, 2021); *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015); Fed. R. Evid. 201. Even if construed as a factual attack, the issues are not inextricably intertwined with the merits, allowing for outside evidence. *See Kennedy*, 998 F.3d at 1230, 1232.

if required, the investigation and discipline of the Senior Pastor." *Id.*, ¶ 32.

In addition to pastoring churches in Alabama and Tennessee, Pastors Rizzo, Siebeling, and Hodges are founding members of ARC, which is a nonprofit organization that helps launch and grow churches. *Id.*, ¶¶ 12, 39, 41, 46.

In 2018, Pastor Weems embraced what the Complaint characterizes as a "new vision" for the Church, prioritizing missionary work over Church growth and attendance. *Id.*, ¶¶ 33-39. Pastor Weems claims Defendants favored a competing vision emphasizing "unbridled church growth." *Id.,* ¶ 2. The Complaint alleges that Defendants "engineer[ed] a takeover" of the Church to ensure their vision prevailed. *Id.*, ¶ 1.

In 2019, while working to implement his "new vision and direction" for the Church, Pastor Weems began planning his transition to a less demanding "Founding Pastor" role. *Id.*, ¶¶ 60, 64. Pastor Weems also began working to identify his successor. *Id.*, ¶ 65. The Complaint alleges that Defendants—seizing "an opportunity to oust Pastor Weems from Celebration Church"—identified Tim Timberlake ("Pastor Timberlake") as a successor because he allegedly shared their vision. *Id.*, ¶¶ 66-67.

In December 2019, Pastor Weems alleges the Church's Compensation Committee approved, and the Board of Trustees executed, a compensation package for the Weemses, including parsonage benefits. *Id.*, ¶¶ 70-71. At the same time, Pastor Timberlake moved to Jacksonville and, according to the Complaint, began to pressure Pastor Weems "to hand over control of Celebration Church."

*Id.*, ¶ 73.

Around the same time, the Church retained Kevin Cormier ("Cormier") to provide construction services to Honey Lake Farms, a facility launched, supposedly, in furtherance of Pastor Weems's new vision: to provide retreats, outpatient pastoral care, and mental health treatment services. *Id.*, ¶¶ 78-81. Pastor Weems soon appointed Cormier to a Church Trustee position. *Id.*, ¶ 82.

The Complaint alleges Pastor Weems later discovered that Cormier embezzled from the Church. *Id.*, ¶¶ 77, 85-88. Pastor Weems alleges that around the same time, without his knowledge, Cormier asked Pastors Rizzo and Siebeling to investigate potential misconduct by Pastor Weems. *Id.*, ¶¶ 32, 99. Meanwhile, Pastor Weems alleges he continued his transitional work, unaware that "Defendants and their agents" supposedly "were already working behind the scenes" to "oust Pastor Weems from his leadership position" in the Church. *Id.*, ¶¶ 89, 93.

In September 2021, Pastors Rizzo and Siebeling resigned from their Church Overseer positions. *Id.*, ¶¶ 52-53, 95. On September 22, 2021, Pastor Weems allegedly informed Pastors Rizzo and Siebeling of his suspicions regarding Cormier after uncovering more evidence of misconduct. *Id.*, ¶ 99. Pastor Weems alleges that they in turn told him of Cormier's inquiry months earlier about investigating Pastor Weems. *Id.*

In and after October 2021, Pastor Weems continued working on his transition and implementing his new vision for the Church. *Id.*, ¶¶ 100-06. But in

or around November 2021, according to the Complaint, Pastors Rizzo and Timberlake leaked that Pastor Weems was about to be put under investigation. *Id.*, ¶¶ 107-09. The following month, the Church's Trustees supposedly presented Pastor Weems with a substantially revised retirement package. *Id.*, ¶ 111. Meanwhile, "Defendants" allegedly worked to transition Pastor Timberlake to Senior Pastor, a position he would use to "return Celebration Church's vision and direction" to again prioritize church growth. *Id.*, ¶¶ 113-14.

Pastor Weems allegedly planned to dismiss Cormier at the end of 2021, and he took initial steps to do so in December 2021. *Id.*, ¶ 116. But in January 2022, Cormier responded that he and two other Trustees were bringing an investigation of Pastor Weems. *Id.*, ¶ 117. The Complaint alleges that the investigation was engineered to frame Pastor Weems for Cormier's financial misconduct—a "nefarious plot" to "justify ousting [Pastor Weems] from Celebration Church" and "stomp[]-out Pastor Weemes's anti-church growth message." *Id.*, ¶¶ 125-27.

Days later, attorneys from the Nelson Mullins law firm who "purportedly represented Celebration Church" informed Pastor Weems that he was banned from the Church pending further investigation. *Id.*, ¶¶ 58, 122. Later that month, a nonparty emailed Pastor Weems and "openly challenged" his "'new direction in ministry'" before summarizing the investigation against him and asking him, among other things, to clear his name and repent to ARC, Pastor Rizzo, and Pastor Siebeling. *Id.*, ¶¶ 130-32. The following month, in February 2022, the Weemses filed a lawsuit, purportedly to try to "force the resolution of the sham

investigation." *Id.*, ¶ 135. After a motion to dismiss was filed, Pastor Weems resigned. *Id.*, ¶¶ 137-38.

The Complaint alleges that "Defendants" continued to work with the Nelson Mullins attorneys to prevent Pastor Weems from continuing his ministry. *Id.*, ¶ 139. Pastor Weems alleges this culminated with the release of an April 2022 report ("the Report"), authored by the Nelson Mullins attorneys, detailing the investigation's findings, including allegations of financial improprieties and misconduct. *Id.*, ¶ 140 & Ex. A. According to the Complaint, the Report's purpose was "to legitimize the takeover of Celebration Church and ensure the failure of Plaintiffs' anti-growth vision and missionary work." *Id.* ¶ 141.

The Report, attached as Exhibit "A" to the Complaint, was "provided to assist the Board in fulfilling its biblical and legal obligations" and was "performed according to biblical principles." Compl, Ex. A at 4, 6. In addition to detailing financial misconduct by Pastor Weems, *id.* at 13-20, the Report concluded that the Weemses' discipline and removal were independently justified by "unbiblical" leadership of the Church, including "spiritual" abuse. *Id.* at 6-7. For example, the Report chronicled narcissistic behavior and demands by Pastor Weems, reflecting "the antithesis of Christ-like personal sacrifice and service to others." *Id.* at 7-8.

The Report further described a dramatic change in the Weemses' behavior following his "personal encounter with Jesus Christ," in which he claims he was "transported to the Last Supper the night before Jesus' crucifixion" and spoke with Jesus in Hebrew about "what Christ wanted for the Weemses to accomplish on

10

Earth." *Id.* at 9. The Report observed that from then on, Pastor Weems had relied on "messages flowing from the Encounter to justify his authority and maintain control of the Church." *Id.* at 10. That practice was a problem, since as "only Weems experienced the Encounter, only he had the ability to interpret its meaning and direction," thus leading to his potentially "heretical" exercise of "control by claiming a secret divine revelation." *Id.* at 9-10 & n.2.

After extensively quoting scripture, the Report concluded that the Weemses had acted with "the antithesis of biblical leadership as described in scripture." It recommended, among other things, immediate acceptance of their resignations without further pay or benefits. *Id.* at 20-23.

### 2.    Related State Court Litigation

This is not the first lawsuit arising from this dispute about control of the Celebration Church. *See* Compl., ¶¶ 135-36; Doc. 7 at 2. Attached as Exhibits "A" through "J" are true and correct copies of pleadings, motion filings, and an order from related state-court litigation.

On February 23, 2022, the Weemses filed suit in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, Case Number 2022-CA-001047 (the "State Proceedings").[3] *See* Exhibit "A." In that matter, the Weemses' original Complaint for Temporary Injunction sought only injunctive relief against Celebration Church (an entity not named as a party in this case). Among other

---

[3] The Weemses are also parties to a separate pending eviction matter in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, Case Number 2023-CA-000740.

relief, the Weemses requested an order "[r]estoring Pastor Stovall and Kerri to their pre-suspension positions at the Church…; [r]equiring the Trustees to confirm or reject Pastor Stovall's nominated Overseers in accordance with the Bylaws; [d]etermining that the purported January 2022 amendment to the Bylaws is invalid; [and] [r]equiring all parties to strictly comply with the Bylaws' procedural requirements for discipline and conflict resolution." *Id.* at ¶ 100.

Thereafter, on June 27, 2022, the Weemses filed their Second Amended Complaint against the Church and five individuals, including trustees of the Church and its attorney. *See* Exhibit "B." Like the claims herein, the Second Amended Complaint asserted multiple claims for conspiracy, in addition to counts for defamation, invasion of privacy, public disclosure of private facts, and intentional infliction of emotional distress. *See id.* At the core of the Second Amendment Complaint was the same Report attached to the Complaint here, which served as the foundation for the Weemses' 365-paragraph, 12-count catch-all pleading. *See, e.g., id.* at ¶¶ 233, 248, 263, 278, 293, 308, 334.

The state-court defendants moved to dismiss the Second Amended Complaint on the ground that the ecclesiastical abstention doctrine deprived the court of subject matter jurisdiction. The court agreed and dismissed the claims because they "require this Court's involvement in ecclesiastical, doctrinal matters." *See* Exhibit "C" at 10. In her order dated September 28, 2022, the Honorable Marianne Lloyd Aho wrote that the claims, which challenged "the veracity of numerous aspects of the Report," invited impermissible judicial "entanglement

into Celebration Church's internal matters" and "would require this Court to impermissibly examine the inner workings of Celebration Church, including the church's internal financial policies and bylaws, as well as the duties and actions of Pastor Weems." *Id.* at 7-8. For example, the "Court would need to look to the time Pastor Weems was employed by the Church to see whether he did or did not partake in the actions as alleged by the Church and whether those actions were forbidden by the Church's bylaws and other internal policies." *Id.* at 8.[4] In addition, the plaintiffs' allegations in the State Proceedings that the defendants sought to prevent plaintiffs "'from continuing their ministry anywhere else'" and ruin the plaintiffs' professional careers and "'destroy any opportunity for Pastor Weems to lead a ministry in the future'" would have required the "Court to impermissibly entangle itself within matters of church governance and pastor qualifications." *Id.* at 9-10.

## C.   Discussion

Plaintiffs' Complaint presents myriad "manifestly ecclesiastical" questions that "would require [the Court] to inquire into church rules, policies, and decision-making and questions of church governance" and excessively entangle it "'in questions of ecclesiastical doctrine or belief'—the very types of questions [courts] are commanded to avoid." *Eglise Baptiste*, 824 F. App'x at 683 (quotation omitted).

---

[4] On October 18, 2022, the Weemses filed a Third Amended Complaint. *See* Exhibit "D." The defendants again moved to dismiss for lack of subject matter jurisdiction. *See* Exhibit "E" and "F." Those motions, along with separate motions to dismiss for lack of jurisdiction counterclaims filed in the eviction case, *see supra* note 3, were heard on August 3, 2023, and remain pending. *See* Exhibits "G" through "J."

First, all the reasons that led the state court to dismiss the related claims filed there apply equally to the claims repackaged here.[5] For example, as Judge Aho observed, the allegations in the State Proceedings urged judicial findings regarding "how the investigation into the Plaintiffs was initiated." *See* Exhibit "C" at 8. Such inquiry, particularly a review of the Report and its findings, would cause excessive judicial entanglement in "the inner workings of Celebration Church, including the church's financial policies and bylaws, as well as the duties and actions of Pastor Weems." *Id.* Similarly, inquiry into the alleged effect of Defendants' conduct on Pastor Weems's ability to lead a ministry elsewhere—as would be required to

---

[5] The state-court plaintiffs tried to evade ecclesiastical abstention by arguing that Celebration Church was congregational, not hierarchical, and that the doctrine could apply only to the latter type of church. The state court correctly rejected that argument. *See* Exhibit "C" at 4-6. Any such argument is even more misguided here. *See Crowder*, 828 F.2d at 727 n.20 ("Appellants' argument that the SBC has a congregational, rather than a hierarchical, form of church governance does little to help their position. The distinction . . . between the types of congregational and hierarchical church polities [is] relevant only to determining the ecclesiastical body to which the civil court must defer in determining rights to use of property."); *see generally Eglise Baptiste*, 824 F. App'x 680. And whatever traction such distinction may draw in some state-court discussions involving property disputes, this case involves core doctrinal and ecclesiastical matters. *Compare, e.g., Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Bank of Am., N.A.*, 321 So. 3d 245, 248, 250–51 (Fla. 4th DCA 2021) (Warner, J., dissenting) (arguing the distinction between congregational and hierarchical churches is important "in disputes involving church property" and criticizing the majority for not applying this distinction in following the lead of the Eleventh Circuit Court of Appeals) *with Mammon*, 193 So. 3d at 985-86 (holding widow's claim against cemetery companies barred where they would have required court to meddle in intrinsically religious questions in evaluating "what constitutes 'Jewish burial customs and traditions'"); *see also Napolitano*, 308 So. 3d at 278 (explaining "[t]he church autonomy doctrine extends beyond church property disputes" and "in cases involving disputes over polity and administration, the Court has taken a more categorical approach, recognizing that secular courts may not interfere with matters of internal church governance or interpret a church's written constitution or ecclesiastical law").

evaluate Plaintiffs' claim for damages—calls for impermissible judicial entanglement "within matters of church governance and pastor qualifications." *Id.* at 9-10.

The Complaint in this case presents the same issues underlying the Report and alleged damages as did the State Proceedings, and it invites the same impermissible inquiries. *See* Compl. at ¶ 115 ("Defendants also committed to ruining the Plaintiffs' reputations, specifically in the ministry world, so they could never be in ministry or make a living and have no possible way of ever being part of Celebration Church again."); *id.*, ¶ 139 ("Defendants continued to work closely behind the scenes with [the Nelson Mullins attorneys] to create and publicly disseminate a false and defamatory narrative and statements about Pastor Weems and K. Weems . . . to try to destroy their reputations, humiliate them, and prevent Plaintiffs from continuing their ministry and missions"); *id.*, ¶ 140 ("This culminated in … the 'Report'"); *id.*, ¶ 141 ("The ultimate purpose of the public dissemination of the Report was to frame Pastor Weems and K. Weems . . . , which could be used to legitimize the takeover of Celebration Church and ensure the failure of Plaintiffs' anti-growth vision and missionary work."). This Court cannot avoid the same unconstitutional inquiries, however repackaged, that deprived the state court of jurisdiction.

If anything, the ecclesiastical concerns in this case are *more* central. Plaintiffs allege a "takeover" in which Defendants conspired to cause the Church to oust Pastor Weems and tortiously interfered with the pastor-church and other ministry

relationships. *See generally* Compl.; Compl., ¶¶ 1, 93, 113. But that is not this Court's concern. *See Myhre*, 719 F. App'x at 928 ("Civil courts lack jurisdiction to entertain disputes involving church doctrine and polity" and must abstain from deciding issues connected to 'theological controversy, church discipline, ecclesiastical government, or conformity of members of the church to the standard of morals required of them[.]'"). The Court may not "put[] the enforcement power of the state behind a particular religious faction." *Crowder*, 828 F.2d at 721.

For example, in *Myhre,* the plaintiff brought a host of claims, including conspiracy and tortious interference, based on the termination of his retirement benefits for not remaining a "'member of good standing of the denomination'" after he was defrocked and excommunicated from his church. 719 F. App'x at 927-29. The Eleventh Circuit affirmed dismissal for lack of jurisdiction, explaining that "[a] dispute involving the application of church doctrine and procedure to discipline one of its members is not appropriate for secular adjudication." *Id.* at 928. The claims inherently "required an examination of doctrinal beliefs and internal church procedures," including attempts to define what it meant to be a member of a specific church and whether the application of church rules to particular conduct was an exercise of religion in accordance with church doctrine, faith, and custom. *Id.* at 929. In short, the court lacked jurisdiction to "entertain issues regarding the application . . . of church rules and standards to discipline a member of its clergy." *Id.* Such is the case here. *See id.*; *see also Diocese of Palm Beach, Inc. v. Gallagher*, 249 So. 3d 657, 663 (Fla. 4th DCA 2018) (holding abstention

16

required where claims required determination whether the "reasons for not making [the plaintiff] a pastor, and reassigning him to another church, were valid religious reasons concerning [his] fitness for the job"); *Se. Conf. Ass'n of Seventh-Day Adventists, Inc. v. Dennis*, 862 So. 2d 842, 843-44 (Fla. 4th DCA 2003) (holding jurisdiction lacking over pastor's claims church negligently suspended him and failed to follow internal procedures in dealing with allegations against him because "[w]hether an individual is qualified to be a clergy member of a particular faith is a matter to be determined by the procedures and dictates of that particular faith"; "[t]he interaction between a church and its pastor is an essential part of church government"; and "civil courts must abstain from deciding ministerial employment disputes").

Beyond that, Plaintiffs' claims, as presented in the Complaint, arise from a philosophical dispute about the propriety of "Pastor Weemses's [sic] vision to shift Celebration Church's focus away from growth and toward mission work." *E.g.*, Compl., ¶¶ 1-2, 33-38, 61, 66, 114, 132, 141, 151. The proper role, vision, and purpose of a church are deeply important questions—but they are not for this Court to decide. *E.g., Myhre*, 719 F. App'x at 927 (agreeing ecclesiastical abstention barred jurisdiction over allegations defendants "conspired to terminate" plaintiff's clergy retirement benefits "'to punish him for [his] beliefs on religious matters'").

Further, to prevail on their claims, Plaintiffs must prove that *Defendants' conduct*—not Pastor Weems's own behavior—destroyed Pastor Weems's ministries and so damaged his reputation that he can no longer pursue his ministry

elsewhere. *See, e.g.*, *Realauction.com, LLC v. Grant Street Grp., Inc.*, 82 So. 3d 1056, 1059 (Fla. 4th DCA 2011) (observing that a tortious interference claim requires the plaintiff to prove that "defendant's interference caused the cessation of the business relationship"). Was it a conspiracy by a rival Church faction that caused Pastor Weems to lose standing in the religious community? Or was it, as the Report put it, Pastor Weems's own failure to live up to the demanding "biblical standards for leadership in the church"? Compl., Ex. A at 21.

The causation and damages elements of Plaintiffs' claims simply cannot be evaluated without answering those questions. But the Court must abstain from entanglement in such religious issues. *E.g.*, *Myhre*, 719 F. App'x at 928; *see also* *Rutland v. Nelson*, No. 3:20-CV-1272-J-32JRK, 2021 WL 118984, at *1 (M.D. Fla. Jan. 13, 2021) ("[T]he First Amendment prevents this Court from ruling on any matters of internal governance of churches, including the [church's] decision to disfellow [the plaintiff], and any subsequent action relating to his role in the Church. No amendment of the Complaint can cure this problem."), *aff'd*, 857 F. App'x 627 (11th Cir. 2021); *Goodman v. Temple Shir Ami, Inc.*, 712 So. 2d 775, 777 (Fla. 3d DCA 1998) ("In order for the trial court to have resolved these disputes, it would have had to immerse itself in religious doctrines and concepts and 'determine' whether the religious disagreements were a 'valid' basis for the termination of [a rabbi's] services. The allegedly defamatory report and tortious interference occurred as part of this religious dispute and would require the trial court to weigh their effect on the board members as compared to the effects of the

other considerations which clearly are religious disagreements. Inquiring into the adequacy of the religious reasoning behind the dismissal of a spiritual leader is not a proper task for a civil court.").

The claims against Pastors Siebeling and Rizzo further demonstrate particularly well why abstention is required. According to the Complaint, they participated in the alleged plot to seize control of the Church while they served as Overseers at Celebration Church. *See* Compl., ¶¶ 53, 57, 99. Church Overseers "were nominated by the Senior Pastor and confirmed by the Board of Trustees," and they "provided apostolic oversight to the Senior Pastor, and were charged with protecting the Church through counsel, prayer, and if required, the investigation and discipline of the Senior Pastor." *Id.*, ¶ 32. The claims against Pastors Siebeling and Rizzo require an inquiry into whether they acted within the scope of their responsibilities as Overseers. If they did, then they could not have tortiously interfered with any Church relationship. *See, e.g.*, *M & M Realty Partners at Hagen Ranch, LLC v. Mazzoni*, 982 F.3d 1333, 1338 (11th Cir. 2020) ("[U]nder Florida law neither a party to a contract nor its agent can be held liable for interfering with his own contract."); *Johnson v. Wellborn*, 418 F. App'x 809, 816 (11th Cir. 2011) ("To state a tortious interference claim [under Florida law], the interfering defendant must be a third party and a stranger to the business relationship; an employee or agent acting on behalf of a contracting party's interests cannot be liable."). The same holds true for the conspiracy claim, which requires an actionable underlying tort. *See Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. 4th

19

DCA 2020).

Nor is it possible for Pastors Siebeling and Rizzo to have conspired with one another in their capacities as Church Overseers. *See id.* ("Alternatively, the intracorporate conspiracy doctrine bars the plaintiffs' conspiracy claim. . . . Where corporate agents are acting within the scope of their employment, their actions 'are attributed to the corporation itself, thereby negating the multiplicity of actors needed for a conspiracy.'").

Among other things, then, Plaintiffs must prove Pastors Siebeling and Rizzo were acting (i) *solely* with ulterior malice or self-motives; and (2) *not* as Church agents. *See id.* at 652-53; *see also M & M Realty Partners*, 982 F.3d at 1339. But applying agency concepts to a church and evaluating duties and motives to determine whether Pastors Siebeling and Rizzo were providing "apostolic oversight" or "prayer" are manifestly ecclesiastical questions. *See* Compl., ¶ 32; *Napolitano*, 308 So. 3d at 279 (abstaining from determining whether pastor entering agreement (i) was acting within his authority because "incorrectly identifying or describing the authority of a pastor as well as the scope of ordinary acts of administration would undermine the right of a religious organization to choose a structure that best propagates its message" and "the First Amendment may be violated not only by judicial decisions, but by the very inquiry that results in a court's findings and conclusions of law"; and/or (ii) was acting within his apparent authority as doing so would require "applying secular conceptions of agency to church governance"); *Gallagher*, 249 So. 3d at 663-64.

In sum, the Court lacks jurisdiction to resolve this manifestly ecclesiastical dispute. *See Rutland*, 857 F. App'x at 628; *Myhre*, 719 F. App'x at 928; *Eglise Baptiste*, 824 F. App'x at 683.

## III.    ALTERNATIVELY, MOTION FOR MORE DEFINITIVE STATEMENT

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," with discrete claims in separate counts. *See* Fed. R. Civ. P. 8(a), 10(b). "Shotgun" pleadings depart from these requirements and are strictly prohibited by the Eleventh Circuit, which "has filled many pages of the Federal Reporter condemning shotgun pleadings and explaining their vices." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018); *see also Moore v. Jasper City Bd. of Educ.*, No. 22-13943, 2023 WL 3719151, at *2 (11th Cir. May 30, 2023). Upon request (or *sua sponte* absent one), the Court should strike a shotgun pleading and may dismiss it with prejudice if a plaintiff does not cure the defects after notice and a chance to do so. *See Jackson*, 898 F.3d at 1357-58.

There are four categories of prohibited shotgun pleadings, including a complaint (1) with "'multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint'"; (2) "that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'"; (3) "that does not separate 'each cause of action or claim for relief' into a different count"; and (4) "that 'assert[s] multiple claims against multiple defendants without specifying which of the defendants are

responsible for which acts or omissions, or which of the defendants the claim is brought against.'" *Mathis v. City of Lakeland*, No. 22-12426, 2023 WL 2568814, at *4 (11th Cir. Mar. 20, 2023); *see also Moore*, 2023 WL 3719151, at *2. Plaintiffs' Complaint here constitutes *each* of the forbidden four.

*First*, Count II incorporates all of Count I. *See* Compl., ¶ 174. That is the "quintessential" shotgun pleading. *See Moore*, 2023 WL 3719151, at *2; *see also VM Glob. Partners, LLC v. Laxai Pharma, Ltd.*, No. 8:14-cv-01343-T-27EAJ, 2014 WL 12634948, at *1 (M.D. Fla. Dec. 1, 2014).

*Second*, the Complaint is replete with conclusory, vague, and unadorned allegations of conspiracy, agency, statutory violations, and crime. *E.g.*, Compl., ¶¶ 1-4, 19-20, 23-24, 59, 68, 93-94, 115, 124-130, 139, 155-65; *see also Mathis*, 2023 WL 2568814, at *4 (affirming dismissal of shotgun pleading with "conclusory and vague" allegations lacking "explanation on how any of the factual allegations amount to unlawful conduct under the cited statutes"); *Barmapov v. Amuial*, 986 F.3d 1321, 1325-26 (11th Cir. 2021) (affirming dismissal of shotgun pleading rife with immaterial background and "numerous vague and conclusory allegations" of agency or joint venture relationships).

*Third*, the Complaint comingles claims. Despite tackling alleged tortious interference by four defendants with various contractual and business relationships of six plaintiffs, Plaintiffs bring a single tortious interference claim, which they incorporate into a single conspiracy claim. *See generally* Compl.; *see also Shores Glob.,*

*LLC v. Njord's Ark A/S*, No. 21-CV-20623, 2023 WL 2838078, at *25 (S.D. Fla. Feb. 3, 2023) (finding "tortious interference claim is impermissibly pled as a shotgun pleading" as it comingled alleged interference with customers, a codefendant's employment, and other employees), *report and recommendation adopted*, No. 21-20623-CIV, 2023 WL 2642691 (S.D. Fla. Mar. 27, 2023).

*Fourth*, the Complaint routinely lumps together joint allegations against Defendants without notice of each Defendant's respective acts. *See generally* Compl.; *see also Mathis*, 2023 WL 2568814, at *4 ("The lumping of defendants does not give any defendant fair notice of the allegations brought against that defendant."); *Worldspan Marine Inc. v. Comerica Bank*, No. 20-11646, 2021 WL 5882006, at *2 (11th Cir. Dec. 13, 2021) (affirming dismissal of shotgun pleading "replete with conclusory allegations, stating only that a conspiracy existed and predicate acts occurred, without specifying which defendants were responsible for which acts"); *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 664 (11th Cir. 2019).

Indeed, despite nearly 200 paragraphs spanning over 40 pages, the Complaint mentions Pastor Siebeling only six times. *See* Compl., ¶¶ 15, 53, 70, 95, 99, 132. Pastor Rizzo is mentioned by name in only nine paragraphs. *See id.* ¶¶ 14, 52, 58, 67, 70, 95, 99, 109, 132. And Pastor Hodges is mentioned only nine times. *See id.* ¶¶ 13, 40, 47-49, 51, 95, 130, 140. How any of them actually engaged in the actions attributed to "Defendants" is unspecified and left for the imagination. *See*

*id.*, ¶¶ 155-165, 166-173, 174-182.

## IV. <u>CONCLUSION</u>

Defendants respectfully request that the Court dismiss the Complaint for lack of subject matter jurisdiction or, alternatively, order a more definite statement and require that Plaintiffs replead the Complaint.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), the undersigned certifies that counsel for Defendants has conferred by telephone with counsel for Plaintiffs in good faith regarding the subject matter of this Motion. Plaintiffs oppose the requested relief.

Respectfully Submitted this 28th day of August, 2023.

MURPHY & ANDERSON, P.A.

s/Sarah Jeck Hulsberg
Niels P. Murphy
Florida Bar No. 0065552
Sarah Jeck Hulsberg
Florida Bar No. 0106027
1501 San Marco Blvd
Jacksonville, Florida 32207
904-598-9282 (Telephone)
nmurphy@murphyandersonlaw.com
shulsberg@murphyandersonlaw.com
Attorneys for Defendant Association of
Related Churches

BURR & FORMAN LLP

s/Bryan O. Balogh
Bryan O. Balogh (*pro hac vice*)
420 North 20th Street, Suite 3400
Birmingham, AL 35203
205-251-3000 (Telephone)
205-452-5100 (Facsimile)
bryan.balogh@burr.com
M. Scott Thomas
Florida Bar No. 0994898
50 North Laura Street, Suite 3000
Jacksonville, Florida 32202
904-232-7200 (Telephone)
904-232-7201 (Facsimile)
msthomas@burr.com
Attorneys for Defendant Chris Hodges

BEDELL, DITTMAR, DeVAULT,
PILLANS & COXE, P.A.

s/Michael E. Lockamy
Henry M. Coxe III
Florida Bar No. 0155193
O. David Barksdale
Florida Bar No. 0957331
Michael E. Lockamy
Florida Bar No. 69626
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
904-353-0211 (Telephone)
904-353-9307 (Facsimile)
hmc@bedellfirm.com
odb@bedellfirm.com
mel@bedellfirm.com
Attorneys for Defendant Dino Rizzo

ROGERS TOWERS, P.A.

s/Samuel J. Horovitz
Edward McCarthy, III
Florida Bar No.: 0866873
Samuel J. Horovitz
Florida Bar No.: 059015
1301 Riverplace Blvd., Suite 1500
Jacksonville, Florida 32207
904-398-3911 (Telephone)
904-396-0663 (Facsimile)
emccarthy@rtlaw.com
shorovitz@rtlaw.com
Attorneys for Defendant John Siebeling