# Exhibit C

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

CASE NO.:   2022-CA-1047

DIVISION:   CV-F

CHARLES STOVALL WEEMS IV, an Individual, and KERRI WEEMS, an Individual,

      Plaintiffs,

v.

CELEBRATION CHURCH OF JACKSONVILLE, INC., a Florida Nonprofit corporation, KEVIN CORMIER, MARCUS ROWE, ANGELA CANNON, JACOB WILLIAM, AND LEE WEDEKIND, III,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND DISMISSING PLAINTIFFS' CLAIMS

This matter is before this Court on the Defendant Lee Wedekind's "Motion to Dismiss for Lack of Subject Matter Jurisdiction," filed on July 27, 2022, Defendant Celebration Church's "Motion to Dismiss Second Amended Complaint, or in the Alternative, to Compel Arbitration," filed on July 1, 2022, and Defendants Kevin Cormier, Marcus Rowe, Angela Cannon, and Jacob William's "Motion to Dismiss Second Amended Complaint, or in the Alternative, to Compel Arbitration," filed on July 20, 2022. After reviewing the written motions and responses to those motions and hearing argument from the parties during hearings on June 24, 2022, August 9, 2022, and August 10, 2022, this Court GRANTS the Motions to Dismiss for Lack of Subject Matter

Jurisdiction and DISMISSES the Plaintiffs' Second Amended Complaint for the reasons stated below.

## I.    **Background**

As alleged by all parties, in early 2022, Celebration Church of Jacksonville, Florida, Inc., ("Celebration Church,") through its trustees, hired law firm Nelson Mullins to conduct an internal investigation into certain alleged actions of the Plaintiff, Pastor Charles Stovall Weems IV ("Pastor Weems"). On April 15, 2022, while the investigation by Nelson Mullins was still pending, Pastor Weems resigned as the pastor of Celebration Church. Nevertheless, the investigation continued, and, on April 24, 2022, Nelson Mullins, through attorneys Kristin Ahr and Defendant Lee Wedekind, III, completed its Report of Investigation to Celebration Church of Jacksonville, Inc. ("the Report.").

Co-Plaintiffs Pastor Weems and his wife, Kerri Weems, take issue with the Report, which has been published to the Celebration Church's website. The Weemses, in their Second Amended Complaint, raise a total of twelve claims against Celebration Church, the trustees of the church, and attorney Lee Wedekind, III, including: six claims of defamation, two claims of conspiracy to defame, one claim of invasion of privacy and/or aiding or abetting invasion of privacy, one claim of public disclosure of private facts and/or aiding or abetting public disclosure of private facts, one claim of intentional infliction of emotional distress, and one claim of conspiracy to invade privacy.

The Defendants allege this Court lacks the subject matter jurisdiction to consider the Plaintiffs' claims because such consideration would violate the ecclesiastical abstention doctrine, which prohibits the secular courts from adjudicating religious disputes.

## II.    The Ecclesiastical Abstention Doctrine

The church autonomy doctrine, or ecclesiastical abstention doctrine, is rooted in both the Free Exercise and Establishment Clauses of the United States Constitution and ensures that the highest ecclesiastical authorities, as opposed to the secular courts, have the final say on ecclesiastical matters. Malichi v. Archdiocese of Miami, 945 So. 2d 526, 529 (Fla. 1st DCA 2006). The doctrine "prevents civil courts from deciding matters that require adjudication of 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'" Flynn v. Estevez, 221 So. 3d 1241, 1245 (Fla. 1st DCA 2017) (quoting Watson v. Jones, 80 U.S. 679 (1871)).

The first step in determining whether the ecclesiastical abstention doctrine applies to a dispute at hand is to determine whether the nature and substance of the claim involves a "prohibited inquiry." Malichi, 945 So. 2d at 529. A prohibited inquiry is one "that would require adjudication of questions of religious doctrine." Malicki v. Doe, 814 So. 2d 347, 355 (Fla. 2002). "A court thus must determine whether the dispute 'is an ecclesiastical one about discipline, faith, internal organization, or ecclesiastical rule, custom, or law, or whether it is a case in which [it] should hold religious organizations liable in civil courts for purely secular disputes between third parties and a particular defendant, albeit a religiously affiliated organization.'" Id. at 357 (quoting Bell v. Presbyterian Church, 126 F.3d 328, 331 (4th Cir. 1997)).

If the dispute is purely secular, "it can be decided on neutral principles of secular law without a court intruding upon, interfering with, or deciding church doctrine." See Flynn, 221 So. 3d at 1247. If, on the other hand, the dispute requires "inquiry into or resolution of an ecclesiastical matter," the ecclesiastical abstention doctrine acts as a jurisdictional bar and requires the claim to be dismissed. Id.; see also Napolitano v. St. Joseph Catholic Church, 308 So. 3d 274, 278 (Fla. 5th

3

DCA 2020) ("[T]he application of neutral legal principles in resolving church disputes is valid only if 'no issue of doctrinal controversy is involved.'" (quoting <u>Jones v. Wolf</u>, 443 U.S. 595, 605 (1979))).

### III.    Can the Ecclesiastical Abstention Doctrine Apply to Congregational Churches?

The Plaintiffs urge this Court to find that, because Celebration Church is a congregational church, as opposed to a hierarchical church, the ecclesiastical abstention doctrine cannot apply to divest this Court of subject matter jurisdiction. The Plaintiffs reason that civil courts need only give hierarchical churches deference in religious disputes because hierarchical churches, unlike congregational churches, are not governed by the same neutral laws that govern voluntary associations: Chapter 617, Florida Statutes, or the Florida Non-Profit Act. (Omnibus Response at 32.)

However, case law does not support this contention. The cases relied upon by the Plaintiffs are over thirty years old, and most deal with property disputes within churches that have undergone schisms and internally separated. <u>See</u> <u>Serbian Eastern Orthodox Diocese for U.S. of America and Canada v. Milivojevich</u>, 426 U.S. 696, 698 (1976) ("The basic dispute is over control of the Serbian Eastern Orthodox Diocese for the United States of America and Canada (American-Canadian Diocese), its property and assets."); <u>St. John's Presbytery v. Central Presbyterian Church of St. Petersburg</u>, 102 So. 2d 714, 716 (Fla. 1958) ("Is the majority who voted to and withdrew its affiliation from Central Church or the minority who continued faithful thereto entitled to ownership of the church property?"); <u>New Magnolia Baptist Church, Inc. of Branford v. Ellerker</u>, 353 So. 2d 204 (Fla. 1st DCA 1977) (the resolution to incorporate did not authorize church property to be conveyed to the corporation).

4

In these property cases, the difference between hierarchical and congregational churches expressly matters because congregational churches, which are autonomous in their government, each have a right to control their own property, whereas property in a hierarchical church is owned by the higher religious organization. St. John's Presbytery, 102 So. 2d at 715-16.

Newer, more recent case law dealing with claims other than church property disputes shows that the District Courts of Appeal have chosen not to explicitly determine whether the ecclesiastical abstention doctrine applies to congregational churches. Rather, the courts have instead implicitly ruled the ecclesiastical abstention doctrine *does* apply to congregational churches by simply applying it. See Malichi, 945 So. 2d at 532 (barring Catholic priest's workers' compensation claim because of the ecclesiastical abstention doctrine while expressly choosing not to "decide whether the church autonomy doctrine applies to a claim filed by a minister of a 'congregational' or 'presbyterial' church (or other religious body) that does not have the same hierarchical structure and well-established body of canonical law as the Archdiocese"); Auguste v. Hyacinthe, 2022 WL 4088300 at *2 n.2 (Fla. 4th DCA September 2022) (affirming in part by upholding the dismissal of Count IV of appellants' complaint, which alleged conversion against appellees, because "resolution of that count would necessarily require the trial court to first determine who controlled the [Baptist] Church," but simultaneously noting, "The parties do not address in the briefs whether the Church is a hierarchical or congregational, so we do not address the propriety of applying the ecclesiastical abstention doctrine in this appeal as to that issue.").

While courts in Florida have not explicitly decided the issue of the application of the ecclesiastical abstention doctrine to congregational churches, other courts have. Though nonbinding, these decisions are guiding, and are all in agreement that the hierarchy and organization of the church does not affect the application of the ecclesiastical abstention doctrine.

See <u>Crowder v. S. Baptist Convention</u>, 828 F.2d 718, 727 n.20 (11th Cir. 1987); <u>Calvary Christian Sch., Inc. v. Huffstuttler</u>, 367 Ark. 117 n.2 (Ark. 2006); <u>Patterson v. S.W. Baptist Theological Seminary</u>, 858 S.W.2d 602, 606 (Tex. App. 1993); <u>First Baptist Church of Glen Este v. State of Ohio</u>, 591 F.Supp. 676, 682-83 (S.D. Ohio 1983); <u>Bruss v. Przybylo</u>, 895 N.E.2d 1102, 1111 (Ill. App. Ct. 2008) Even a case heavily relied upon by the Plaintiffs, <u>Guinn v Church of Christ Collinsville</u>, acknowledged that "a church's disciplinary decisions are protected from judicial scrutiny whether the church is 'congregational' or 'hierarchical.'" 775 P.2d 766, 771 n.18 (Okla. 1989).

Thus, this Court determines that, if the dispute at issue is ecclesiastical in nature, the ecclesiastical abstention doctrine can apply in this case even though Celebration Church is a congregational, as opposed to hierarchical, church.

## IV.    Do the Plaintiffs' Claims Involve Ecclesiastical Matters?

The Defendants argue this case must be dismissed because the Plaintiffs' claims, even if appearing secular on their faces, are so inextricably intertwined with matters of Celebration Church's discipline, employment, and internal organization that ecclesiastical issues would necessarily need to be considered by this Court in deciding the claims.

The Plaintiffs contend their twelve claims can be considered in this secular Court because they can be decided solely on neutral principles of secular law without consideration of ecclesiastical issues. See <u>Bilbrey v. Myers</u>, 91 So. 3d 887 (Fla. 5th DCA 2012) (tort claims of defamation and breach of fiduciary duty brought by former church member against church pastor could be considered by secular court on neutral principles of law theory); <u>LeGrande v. Emmanuel</u>, 889 So. 2d 991, 994 (Fla. 3d DCA 2004) (ecclesiastical abstention doctrine did not bar claims of slander by Baptist minister against congregants where well-pled bare allegations of the complaint did not

indicate excessive entanglement in internal church matters); <u>Mendez v. da Silva</u>, 980 So. 2d 631 (Fla. 2d DCA 2008) (ecclesiastical abstention doctrine did not act as a jurisdictional bar to dismiss complaint where claims of slander and libel would not entangle the court in internal church matters).

While it is conceivable that tort claims like the ones outlined in the Plaintiffs' Second Amended Complaint, such as defamation and intentional infliction of emotional distress, could allege purely secular questions of law, the pleading in the current case does not. Rather, the Plaintiffs' current pleading invites this Court's entanglement into Celebration Church's internal matters. It contains 229 initial paragraphs of what the Plaintiffs allege is pure background information. (Response at 24). This background information includes claims that the Defendants staged a "nefarious coup" to "banish Pastor Weems and K. Weems from the church they founded over two decades ago," and are now "seditionists . . . in control [of] Celebration Church." (Complaint 1-2.)

Rather than solely providing background information as alleged by the Plaintiffs, the 229 paragraphs are actively incorporated into the legal claims themselves; each of the twelve causes of action references prior paragraphs nestled within the background facts section to support the claims. Thus, the Plaintiffs here rely exclusively on these background facts to support their claims. <u>Contra</u> <u>Mendez</u>, 980 So. 2d at 632 (where complaint did not point to claims made in "background facts" to support the claims, excessive entanglement was not proven so as to require dismissal of the complaint).

For example, the Plaintiffs' first six claims – which are all defamation claims – fail to state with specificity the challenged defamatory language. Rather, the pleading refers back to various background paragraphs by number. These specifically-cited paragraphs argue the Report as a whole is defamatory and make various claims regarding the veracity of numerous aspects of the

Report. The Plaintiffs' allegations in this Second Amended Complaint urge this Court to make factual findings regarding: (1) how the investigation into the Plaintiffs was initiated; (2) whether the Plaintiffs complied with the investigation; (3) whether Pastor Weems appointed any trustees prior to the commencement of the investigation; (4) whether Pastor Weems was required to present certain transactions to the trustees for their review and approval or whether he had "total authority over investments and spending" within the approved budget; (5) whether the trustees approved a Parsonage and Compensation Agreement for Pastor Weems on December 10, 2019, and whether Pastor Weems ever handled  the execution of compliance and/or documentation of parsonage transactions. Plaintiff K. Weems's additional claims against the Defendants further urge this Court to look into the history between the Church and the Plaintiffs by alleging the facts noted in the Report about K. Weems "involve events that transpired in 2018 – four years ago." (Complaint 45.)

As pled, these claims would require this Court to impermissibly examine the inner workings of Celebration Church, including the church's internal financial policies and bylaws, as well as the duties and actions of Pastor Weems. See Malichi, 945 So. 2d at 531 (citing McClure, 460 F.2d at 559 ("Determination of a priest's duties is a matter of the church's internal administration and government.")); Rosenberger v. Jamison, 72 So. 3d 199, 204 (Fla. 1st DCA 2011) (quoting Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 709 (1976) ("However, even where neutral law applies, secular courts must not 'become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs.'")).  In order to determine whether Celebration Church defamed Pastor Weems as currently alleged, this Court would need to look to the time Pastor Weems was employed by the Church to see whether he did or did not partake in the actions as alleged by the Church and whether those actions were forbidden by the Church's bylaws and other internal policies.

8

Two Florida cases are specifically on point and urge dismissal of this case for lack of subject matter jurisdiction. In <u>Goodman v. Temple Shir Ami, Incorporated</u>, Rabbi Goodman alleged one of the temple's board members defamed him during a board meeting, which led to his temple voting against renewing his employment contract; the Third District Court of Appeal upheld the dismissal of Rabbi Goodman's defamation claim and tortious interference with an advantageous business relationship claim because, to determine the validity of those claims, the court would have had to "immerse itself in religious doctrines and concepts," and "[i]nquiring into the adequacy of the religious reasoning behind the dismissal of a spiritual leader is not a proper task for a civil court." 712 So. 2d 775 (Fla. 3d DCA 1998).

Similarly, in <u>Diocese of Palm Beach, Incorporated, v. Gallagher</u>, Father Gallagher sued the diocese for defamation, claiming the diocese called him a liar, unfit to be a priest, and in need of professional help in various mediums, including in the newspaper, on the diocese's webpage, and on diocese personnel's social media pages. 249 So. 3d 657, 660-61 (Fla. 4th DCA 2018). The Fourth District Court of Appeal determined dismissal of Father Gallagher's claims based on the ecclesiastical abstention doctrine was appropriate because evaluating Father Gallagher's claims would necessarily require the court to excessively entangle itself in religious questions including the duties assigned to Father Gallagher, whether he was qualified to perform those duties, and whether the diocese correctly imposed discipline upon Father Gallagher. <u>Id.</u> at 663.

The Fourth District Court of Appeal also noted Father Gallagher's pleas for actual damages, in which he alleged the defamation "diminished or eliminated his ability to serve in his chosen profession as a priest, and damaged his livelihood," would impermissibly require the courts to "question the diocese's employment decision to hire, retain, or discipline Father Gallagher – a member of the diocese -and the reasoning behind its decision." <u>Id.</u> At 662. Similarly, in the current

case, the Plaintiffs allege the Defendants sought to "prevent [the Plaintiffs] from continuing their ministry anywhere else," "destroy any opportunity for Pastor Weems to lead a ministry in the future," and have "unjustifiably ruined Plaintiffs' ability to work in their chosen profession." (Complaint 2, 22-23, 25-27, 40.) As in <u>Gallagher</u>, the consideration of these issues would require this Court to impermissibly entangle itself within matters of church governance and pastor qualifications.

Because the Plaintiffs' claims on their face as currently written require this Court's involvement in ecclesiastical, doctrinal matters, neutral principles of law cannot be used to consider the issues at hand. As such, this Court **DISMISSES WITHOUT PREJUDICE** the Plaintiffs' complaint. Because this Court has determined the ecclesiastical abstention doctrine deprives it of jurisdiction, rulings on the Defendants' requests to compel arbitration or any of the other claims raised in the Defendant Lee Wedekind's Motion to Dismiss for Lack of Subject Matter Jurisdiction filed on July 27, 2022, Defendant Celebration Church's Motion to Dismiss Second Amended Complaint, or in the Alternative, to Compel Arbitration, filed on July 1, 2022, and Defendants Kevin Cormier, Marcus Rowe, Angela Cannon, and Jacob William's Motion to Dismiss Second Amended Complaint, or in the Alternative, to Compel Arbitration, filed on July 20, 2022, are not required at this time, and, therefore, no such rulings are made.

## V. Order

Based on the above analysis, this Court **GRANTS** the Defendant Lee Wedekind's Motion to Dismiss for Lack of Subject Matter Jurisdiction filed on July 27, 2022, and **GRANTS IN PART** Defendant Celebration Church's Motion to Dismiss Second Amended Complaint, or in the Alternative, to Compel Arbitration, filed on July 1, 2022, and Defendants Kevin Cormier, Marcus Rowe, Angela Cannon, and Jacob William's Motion to Dismiss Second Amended Complaint, or in the Alternative, to Compel Arbitration, filed on July 20, 2022. The Plaintiffs' Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE.** Leave to amend is granted within twenty (20) days of the date of this Order.

**DONE AND ORDERED** in chambers in Jacksonville, Duval County, Florida, on September 28, 2022.

Marianne Lloyd Aho

**Honorable Marianne Lloyd Aho,
Circuit Judge**

Copies to counsel of record via Florida's e-portal.

11