# Exhibit H

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

Case No. 2023-CA-000740

Division: CV-F

| | |
|---|---|
| CELEBRATION CHURCH OF JACKSONVILLE, INC., a Florida corporation, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) |
| CHARLES S. ("STOVALL") WEEMS, IV, and KERRI WEEMS, individuals, | )<br>)<br>) |
| Defendants. | )<br>) |
| CHARLES S. WEEMS, IV, KERRI WEEMS, and CELEBRATION GLOBAL, INC., a Florida not for profit corporation, | )<br>)<br>)<br>) |
| Counter-Plaintiffs, | ) |
| v. | ) |
| CELEBRATION CHURCH OF JACKSONVILLE, INC., a Florida corporation, TIM TIMBERLAKE, WAYLAND WISEMAN, LISA STEWART, KEVIN CORMIER, MARCUS ROWE, ANGELA CANNON, JACOB WILLIAM, and LEE WEDEKIND, III, individuals, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Counter-Defendants. | )<br>) |

**COUNTER-DEFENDANTS CELEBRATION, TIMBERLAKE, WISEMAN, STEWART, CORMIER, ROWE, CANNON, AND WILLIAM'S MOTION TO DISMISS COUNTERCLAIM FOR LACK OF SUBJECT-MATTER JURISDICTION**

Counter-defendants Celebration Church of Jacksonville, Inc. ("Celebration"), Tim Timberlake, Wayland Wiseman, Lisa Stewart, Kevin Cormier, Marcus Rowe, Angela Cannon, and Jacob William, pursuant to Rule 1.140(b)(1), Florida Rules of Civil Procedure, move to dismiss the Counterclaim filed by Counter-plaintiffs Charles S. Weems, IV ("Stovall Weems") and Kerri Weems ("Kerri Weems") with prejudice. Like the claims brought by the Weemses in the case currently pending before this Court styled *Charles S. Weems, IV and Kerri Weems v. Celebration Church of Jacksonville, Inc.*, Fourth Judicial Circuit, Duval County, Florida; Case No. 2022-CA-1047, the ecclesiastical abstention doctrine bars this Court from exercising subject-matter jurisdiction over the Counterclaim.

The Weemses' claims in both cases are based on the same set of facts, and in large part the Counterclaim appears to be a cut-and-paste of the Second Amended Complaint in the related case. Because this Court has already determined that it does not have subject-matter jurisdiction to hear claims arising out of these facts, the Court should dismiss the Counterclaim with prejudice.

The Counter-defendants join in and adopt by reference the recitation of facts and arguments made in the Motion of Counter-Defendant Lee Wedekind, III to Dismiss for Lack of Subject-Matter Jurisdiction filed on March 28, 2023.

## **INTRODUCTION**

This eviction action was initially filed by Celebration to recover possession of the church's property located at 16073 Shellcracker Road, Jacksonville, Florida 32226 (the "Shellcracker Property") following the Weemses' refusal to vacate the property after resigning as pastors of the church. The complaint also seeks payment of rent for the period of their unauthorized holdover tenancy pursuant to the Florida Residential Landlord and

Tenant Act, FLA. STAT. § 83.40, *et seq*. In a transparent attempt to extend their unlawful possession of the premises, four days before an evidentiary hearing to determine the amount of rent they would be required to deposit in the court registry to remain in possession of the property, the Weemses amended their answer (unilaterally and without leave) to assert new claims against the church, its current and former pastors, its trustees, and the undersigned.

  The allegations in the Weemses' Counterclaim should be familiar to this Court. Even a cursory reading of the Counterclaim demonstrates it is nearly indistinguishable from the Second Amended Complaint in the related case. For example, the factual allegations in paragraphs 21–31, 37–46, 49–62, 64–69, 73, 76–77, 80–81, 88–92, 94–112, 114 of the Counterclaim appear identical to those in paragraphs 23–33, 35–37, 45–70, 72–75, 80–95, 99–105, 108–113, 122 of the Second Amended Complaint. As this Court has recognized, it is prohibited by the ecclesiastical abstention doctrine from making factual findings about these issues, specifically including "whether the trustees approved a Parsonage and Compensation Agreement for Pastor Weems" and "the history between the Church and the [Weemses]." (Order Granting Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction and Dismissing Plaintiffs' Claims, *Weems v. Celebration Church of Jacksonville, Inc.*, No. 2022-CA-1047, p. 8). Any judicial examination of the facts alleged in the Counterclaim would necessarily "require this Court to impermissibly examine the inner workings of Celebration Church, including the church's internal financial policies and bylaws, as well as the duties and actions of Pastor Weems." *Id*. at 7-8.

  Conversely, the ecclesiastical abstention doctrine does not bar Celebration's claims relating to the Shellcracker Property. Churches may resort to the judicial system to enforce the church's decision regarding the possession of its property. *See Franzen v. Poulos*, 604

3

So.2d 1260, 1263 (Fla. 3d DCA 1992) (citing *Rekas v. Polish National Catholic Church, West. Diocese*, 102 So.2d 705 (Fla. 1958) for proposition that a judicial proceeding brought by church to obtain property from former pastor was proper). Circuit courts have jurisdiction over landlord-tenant cases such as this one. FLA. STAT. § 34.011. While the Counterclaim falls squarely within the ambit of the ecclesiastical abstention doctrine, the Complaint does not.

## MEMORANDUM OF LAW

> The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. *But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed.* It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.
>
> *Watson v. Jones*, 13 Wall. 679, 728-729, 20 L.Ed. 666 (1872) (emphasis added).

The ecclesiastical abstention doctrine ensures that churches—not secular courts—maintain the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Napolitano v. St. Joseph Cath. Church*, 308 So. 3d 274, 277 (Fla. 5th DCA 2020) (quoting *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952)). The doctrine prevents civil courts from deciding matters involving theological controversy, church discipline, ecclesiastical government, or the conformity of the church's members to the moral standards espoused by the church.

4

*See Flynn v. Estevez*, 221 So. 3d 1241, 1245 (Fla. 1st DCA 2017) (quoting *Watson*, 80 U.S. at 733). This Court's analysis and application of the ecclesiastical abstention doctrine in the related case are instructive.

To determine whether the ecclesiastical abstention doctrine deprives it of subject-matter jurisdiction, the Court "must determine whether the dispute is an ecclesiastical one about discipline, faith, internal organization, or ecclesiastical rule, custom, or law, or whether it is a case in which it should hold religious organizations liable in civil courts for purely secular disputes between third parties and a particular defendant, albeit a religiously affiliated organization." Dismissal Order p. 3 (cleaned up) (quoting *Malicki v. Doe*, 814 So. 2d 347, 355 (Fla. 2002)). If "the dispute requires inquiry into or resolution of an ecclesiastical matter, the ecclesiastical abstention doctrine acts as a jurisdictional bar and requires the claim to be dismissed." *Id.* (same) (quoting *Flynn*, 221 So. 3d at 1247). On the other hand, if the dispute is purely secular in nature, "it can be decided on neutral principles of secular law without a court intruding upon, interfering with, or deciding church doctrine." *Id.*

The Counterclaim alleges causes of action for declaratory judgment (Count I), breach of contract (Counts II, III, IV, and XI), breach of fiduciary duty (Counts V-VIII), tortious interference (Count IX), and conspiracy (Count X). Although the causes of action are different than those in the related action, the underlying factual allegations are the same. Moreover, each of these claims is based on legal obligations that arise only in the context of the parties' service to the church's management and administration. Judicial examination of the facts attendant to these claims would require the Court to engage in impermissible inquiries regarding the church's management of its internal affairs and ecclesiastical government; the power and authority of the church's officers, trustees, and

5

agents; the Weemses' conduct as the church's senior pastors; and whether the trustees approved the agreement that is the subject of the Pastors' counterclaims (they did not).

Just as the Court determined it was without jurisdiction to adjudicate the claims in the related action, these claims are also beyond the Court's jurisdiction. *See Flynn*, 221 So. 3d at 1246; *Napolitano*, 308 So. 3d at 279. However couched, the Court may not examine claims based on an internal church employment and disciplinary dispute. Adding new defendants also does not alter the analysis because the doctrine applies to the issues regardless of who the claims are alleged against. *See Napolitano*, 308 So. 3d at 279; *see also Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Bank of Am., N.A.*, 321 So. 3d 245, 246–47 (Fla. 4th DCA 2021) (ecclesiastical abstention doctrine barred claims against bank, which allegedly transferred control of church bank accounts to rival faction because resolution of dispute would require determination of which faction was entitled to control of church); *Goodman v. Temple Shir Ami, Inc.*, 712 So. 2d 775 (Fla. 3d DCA 1998) (barring claims against temple and director). For these reasons, the Counterclaim should be dismissed with prejudice.

### The ecclesiastical abstention doctrine bars the Court from exercising subject-matter jurisdiction over the Counterclaim

This Court has determined that the ecclesiastical abstention doctrine prohibits any inquiry into the inner workings of the Church, the Church's internal financial policies and bylaws, the duties and actions of the Weemses, whether the trustees approved a parsonage and compensation agreement for Pastor Weems, and the execution of compliance and/or documentation of the parsonage transactions. Dismissal Order p. 8. Likewise, the adjudication of the claims alleged in the Counterclaim would require the Court to engage in one or more of these prohibited inquiries.

6

Like the Second Amended Complaint, the Counterclaim contains 114 paragraphs of background facts that are incorporated by reference into each cause of action. (Counterclaim ¶¶ 115, 123, 129, 135, 141, 146, 151, 156, 161, 167, 172). Generally, these allegations repeat the same story: the defendants formed a "seditious plot" to stage a "coup" and "banish" the Weemses from the church. These allegations infect each cause of action with impermissible issues that would require the Court to excessively entangle itself in Celebration's internal matters. Dismissal Order p. 7.

Counts I, II, III, IV, and XI assert contract claims against the church relating to the purported parsonage and compensation-related agreements. Each of these claims would require the Court to first consider whether there was a valid and binding agreement between the parties. The Counterclaim attaches an unexecuted resolution of the board of trustees' compensation committee as evidence of an agreement between the parties. Counterclaim Ex. A. But this Court has already determined that the ecclesiastical abstention doctrine bars it from making factual findings about whether Pastor Weems was required to present certain transactions to the trustees for their review and approval, whether he had total authority over investments and spending, *whether the trustees approved a Parsonage and Compensation Agreement*, and whether Pastor Weems handled the execution and compliance and/or documentation of the parsonage transactions. Dismissal Order p. 8 (emphasis added).

Each contract claim would require that the Weemses establish they have fully performed their duties to Celebration, and Celebration could raise as defenses that the Weemses' misconduct constituted a prior material breach or unclean hands that excused the church's performance. *See Arquette Development Corp. v. Hodges*, 934 So. 2d 556 (Fla. 1st DCA 2006) (holding that a party's material breach of contract entitles the non-

7

breaching party to "treat the contract as breached and terminate" further performance) (citing *Colucci v. Kar Kare Auto. Group, Inc.*, 918 So. 2d 431, 441 (Fla. 4th DCA 2006) (Farmer, J., concurring specially). In either circumstance, the Court would be unable to avoid delving into issues prohibited by the abstention doctrine, including the church's inner workings, financial policies, the authority of the church's officers and trustees, and the impropriety of Pastor Weems's actions. *Id.* (citing *Malichi v. Archdiocese of Miami*, 945 So. 2d 526, 531 (Fla. 1st DCA 2006), *McClure v. Salvation Army*, 460 F.2d 553, 559 (5th Cir. 1972), *Rosenberger v. Jamison*, 72 So. 3d 199, 204 (Fla. 1st DCA 2011), and *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709 (1979)).

Counts V, VI, VII, and VIII allege that Celebration's current pastors, former Chief Financial Officer, and trustees breached fiduciary duties they allegedly owed to the Weemses. First, officers and directors owe fiduciary duties to the organization, not its senior executives. Moreover, the establishment of a general fiduciary relationship must be "premised upon the specific factual situation surrounding the transaction and the relationship of the parties." *Orlinsky v. Patraka*, 971 So. 2d 796, 800 (Fla. 3d DCA 2007) (quoting *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994)). The former relationships between the Weemses and the counter-defendants all arose in connection with, and would not have existed but for, the church. The church's governing documents—its bylaws, policies, and procedures—establish the counter-defendants' duties as pastors, officers, and trustees. Any analysis of these fiduciary duty claims would require the Court to impermissibly intrude into ecclesiastical governance and administrative matters. *See Rosenberger*, 72 So. 3d at 203-204 (ecclesiastical abstention doctrine required dismissal of claims that directors of church breached their fiduciary duties by removing church officers, initiating disciplinary matters, and amending bylaws).

Counts IX and X assert claims of tortious interference and conspiracy. As to these counts, the counter-defendants join in and adopt by reference the arguments made in Wedekind's motion to dismiss.

The officer and trustee counter-defendants also enjoy immunity from liability for actions "regarding organizational management" pursuant to FLA. STAT. § 617.0834. The only exceptions to this immunity are where an officer or director commits "fraud, criminal activity or self-dealing/unjust enrichment." *Perlow v. Goldberg*, 700 So. 2d 148, 149 (Fla. 3d DCA 1997). The statute describes the fraud exception as requiring the demonstration of "recklessness or an act or omission that was committed in bad faith or with malicious purpose." FLA. STAT. § 617.0834(1)(b)(3). The Counterclaim fails to allege facts suggesting any of these exceptions applies, but even if it did the Court would be faced with an impermissible inquiry into the reasons and motivations (*i.e.* the alleged bad faith or malicious purpose) of the officers' and trustees' decisions or actions with respect to the Weemses. Evaluating the counter-defendants' motives would require factual findings regarding the Weemses' leadership of the church, matters of church governance, employment policies and procedures, discipline, and the church's bylaws. It is well settled that the power to decide such matters lies exclusively with Celebration. Accordingly, this Court's "only legitimate role is ensuring the dispute is committed to religious authorities." *Napolitano*, 308 So. 3d at 280.

9

## **CONCLUSION**

The Counterclaim invites this Court to preside over matters of church discipline and ecclesiastical government. *Gallagher*, 249 So. 3d at 661. Doing so would entangle the Court in this essentially religious controversy and intrude on Celebration's autonomous management of its own internal affairs and property. *Flynn*, 221 So. 3d at 1246. The ecclesiastical abstention doctrine bars this Court from exercising subject-matter jurisdiction over the Counterclaim, which should be dismissed with prejudice.

NELSON MULLINS RILEY &
SCARBOROUGH LLP


By: ___/s/ Lee D. Wedekind, III___

Lee D. Wedekind, III
Florida Bar No. 670588
John P. McDermott, Jr.
Florida Bar No. 1025565
50 N. Laura Street, Suite 4100
Jacksonville, Florida 32202
(904) 665-3652 (direct)
lee.wedekind@nelsonmullins.com
john.mcdermott@nelsonmullins.com
allison.abbott@nelsonmullins.com

Attorneys for Celebration Church of Jacksonville, Inc. and Counter-defendants Celebration Church of Jacksonville, Inc., Tim Timberlake, Wayland Wiseman, Lisa Stewart, Kevin Cormier, Marcus Rowe, Angela Cannon, and Jacob William

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on March 31, 2023, a copy of the foregoing was filed with the Florida Courts E-Filing Portal, which served a copy of it on the following:

Shane B. Vogt, Esq.
David A. Hayes, Esq.
Turkel Cuva Barrios, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
svogt@tcb-law.com
dhayes@tcb-law.com
garnold@tcb-law.com
service@tcb-law.com
*Attorneys for Defendants*



          */s/ Lee D. Wedekind, III*
              Attorney

11

4866-7167-0362