UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHARLES S. WEEMS, IV, an individual,
KERRI WEEMS, an individual,
and CELEBRATION
GLOBAL, INC., a Florida not for profit
corporation, HONEY LAKE FARMS,
INC., a Florida not for profit corporation,
NORTHSTREAM MANAGEMENT
GROUP, LLC, a Florida limited liability
company, and WEEMS GROUP, LLC,
a Florida limited liability company,

      Plaintiffs,

v.

ASSOCIATION OF RELATED
CHURCHES, a Texas not-for-profit
corporation, CHRIS HODGES,
individually, DINO RIZZO, individually,
and JOHN SEIBELING, individually,

      Defendants.
_____/

Case No.: 3:23-cv-00811-MMH-LLL

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT**

Plaintiffs, Charles S. Weems, IV, Kerry Weems, Celebration Global, Inc., Honey Lake Farms, Inc., Northstream Management Group, LLC and Weems Group, LLC (collectively, "Plaintiffs"), by counsel and pursuant to Local Rule 3.01, respond in opposition to the Motion to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, Motion for More Definite Statement [Doc. 28] ("Motion") filed by Defendants, Association of Related Churches ("ARC"), Chris Hodges ("Hodges"),

Dino Rizzo ("Rizzo"), and John Siebeling ("Siebeling") (collectively, "Defendants"), as follows:

## INTRODUCTION

Defendants' Motion does not establish any legitimate grounds to dismiss this case for lack of subject matter jurisdiction based on ecclesiastical abstention. Plaintiffs and Defendants are not part of the same church or religious institution. The claims at issue do not involve a theological controversy or require any adjudication of questions of religious doctrine. Thus, without sufficient factual or legal support, the Motion seeks the extraordinary relief of depriving Plaintiffs of the only means they have to seek redress for the wrongs Defendants committed against them. It should be denied.

Defendants' alternative contention that the Complaint is supposedly a "shotgun" pleading and therefore grounds for a more definite statement is equally unfounded and (as discussed below) a delay tactic. The Complaint more than sufficiently alleges facts putting each of the Defendants on notice as to the nature of the claims against them such that they can formulate their responsive pleadings.

## FACTUAL BACKGROUND

Defendants' Motion claims to be a "facial attack" on subject matter jurisdiction (*see* Motion at p.6, n.2)—which necessarily admits the truth of *all* of Plaintiffs allegations—but it rests on f cherry-picked, partial quotes from the factual allegations in the Complaint selected to create the false impression that that Plaintiffs and Defendants are all part of the same religious body embroiled in a controversy governed by religious principles. This illusion advanced by the Motion runs afoul of the

2

standards governing motions to dismiss and is not supported by the material facts. The relevant, material facts—which Defendants do not refute—are that the parties are not part of the same church or religious institution and the adjudication of this case does not require any entanglement in religious doctrine or ecclesiastical governance.

In their factual overview of this case[1] (see Motion at pp. 6-13), Defendants seek to transform this non-religious, essentially business dispute into an ecclesiastical one by bootstrapping themselves to abstention arguments being raised by Plaintiffs' former church and its principals in related litigation. Of course, this strategy omits any meaningful analysis of the allegations in *this case* concerning the relationships amongst these parties and nature of the claims at issue herein against Defendants.

Simply stated, this case does not involve a religious dispute. Rather, it "arises out of a continuing unlawful conspiracy masterminded by the Defendants to protect and expand their church growth business interests and endeavors and the substantial income they generate by destroying Plaintiffs and eliminating them as perceived threats and competitors, which included engineering a takeover at Celebration Church of Jacksonville, Inc. ("Celebration Church") to allow Defendants to effectively gain control over its operations and substantial assets, cover-up numerous criminal and tortious acts committed in the process, and frame the Weemses's for financial crimes

---

[1] Plaintiffs disagree with Defendants' spin on the facts discussed in their Motion and its incomplete characterizations of pleadings and rulings in the "Related State Court Litigation," but are not specifically addressing these disagreements in this Response because it is not necessary to defeat Defendants' Motion. The related state court actions are irrelevant to this Court's subject matter jurisdiction in *this case*.

3

they never committed." *See* Doc. 1 at ¶ 1. The Complaint alleges tortious interference and conspiracy claims arising out of facts establishing that Defendants were not a part of and had no "doctrinal" or "ministerial" control over Celebration Church and committed tortious acts driven not by religious reasons but by economic motives and the desire to eliminate Plaintiffs as competitors and perceived threats to Defendants' business model. *See e.g.*, Doc. 1 at ¶¶ 43, 45, 47-51, 95-97, 126, 133, 141, 145-146.

## ARGUMENT

### I.  Subject Matter Jurisdiction

#### A.  The Governing Standards

When a "facial" challenge to subject matter jurisdiction is raised, the non-moving party's factual allegations still must be accepted as true. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Facial attacks "merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Lawrence*, 919 F.2d at 1529. Here, Plaintiffs allege a basis of subject matter jurisdiction (diversity) in their Complaint that Defendants do not contest. *See* Doc. 1 at ¶¶ 6-17. If Defendants' Motion is truly "facial," it should be denied on this basis alone.

In reality, Defendants' supposed "facial" attack is an unsupported, improper *factual* challenge to this Court's subject matter jurisdiction in which they attempt to contradict the allegations in the Complaint (contrary to *Kennedy* and *Lawrence*) without evidentiary support and try to manufacture the appearance of an ecclesiastical dispute where none exists. At points, Defendants openly ask this Court to make impermissible

4

factual determinations about the elements of Plaintiffs' claims and merits of this case; including the argument that abstention is necessary based on causation and damages issues (*see* Motion at pp. 17-18) that would necessarily require the Court to make factual determinations.

As this Court recognized in *Grosharev v. Wilson's Limited, Inc.*, "the district court should only rely on Rule 12(b)(1) [i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." 2010 WL 11507086, *1 at n. 3 (M.D. Fla. Jan. 15, 2010) (internal quotations and citation omitted). "Where a jurisdictional challenge does implicate the merits of the underlying claim, the proper course 'is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* (quotation and citation omitted). Other courts dealing with arguments seeking dismissal due to abstention based on causation and damages issues have concluded that resolving such factual disputes is inappropriate at the dismissal stage. *See e.g.*, *Minker v. Baltimore Annual Conf. of United Methodist Church*, 894 F.2d 1354, 1360-1361 (D.C. Cir. 1990) (noting that a plaintiff "need show only that *some* form of inquiry is permissible and *some* form of remedy is available to survive a motion to dismiss"). As noted in *Minker*, "[o]nce evidence is offered, the district court will be in a position to control the case so as to protect against any impermissible entanglements." *Id.* at 1360.

**B.    The Ecclesiastical Abstention Doctrine**

"The ecclesiastical abstention doctrine prevents civil [or secular] courts from deciding disputes requiring an adjudication of 'theological controversy, church

5

discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required.'" *Flynn v. Estevez*, 221 So.3d 1241, 1245 (Fla. 1st DCA 2017) (quoting *Watson v. Jones*, 80 U.S. 679, 733 (1871); *Malichi v. Archdiocese of Miami*, 945 So.2d 526, 529 (Fla. 1st DCA 2006). "The doctrine precludes secular courts from becoming arbiters of religious matters and the circumvention or erosion of church doctrine by those who disagree with it." *Flynn*, 221 So.3d at 1246. It "has its core application in cases where a court intrudes on a church's autonomous management of its own internal affairs and property, thereby either burdening or inhibiting the exercise of religious freedom (free exercise clause) or fostering an excessive government entanglement with religion (establishment clause)." *Id*.

Here, the claims alleged in the Complaint to not implicate any of these concerns. The tortious interference and conspiracy claims do not require an adjudication of theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required. The parties to this action are not even members of the same church. Likewise, Plaintiffs are not asking this Court to become an arbiter of religious matters or to erode any church doctrine because they disagree with it. And deciding this case does not require this Court to intrude on ***a church's*** autonomous management of its own internal affairs and property, thereby either burdening or inhibiting the exercise of religious freedom (free exercise clause) or fostering an excessive government entanglement with religion (establishment clause), because the Defendants have not been sued based on the management of their own internal church affairs or property.

It is well established that a lawsuit does not, of course, become a theological controversy just because one of the litigants is a church." *Springhill Missionary Baptist Church, Inc. v. Mobley*, 251 So.3d 281, 283 (Fla. 1st DCA 2018) (*citing Flynn*, 221 So.3d at 1247). "The scope of the [abstention] doctrine is not unlimited; courts have held that the application of a neutral law that does not require inquiry into or resolution of an ecclesiastical matter may be permissible, for example by the application of secular tort claims by third parties against a religious institution…" *Flynn,* 221 So.3d at 1247.

The abstention doctrine is rooted in the First Amendment. However, a "First Amendment violation does not occur any time a case requires a court to examine church law or policies." *Auguste v. Hyacinthe*, 346 So.3d 67, 70 (Fla. 4th DCA 2022) (*quoting Mammon v. SCI Funeral Services of Fla., Inc.*, 193 So.3d 980, 984 (Fla. 4th DCA 2016)). There is no First Amendment violation where the claims at issue can be resolved by the application of neutral principles of law, "particularly where there is no allegation that the conduct in question was part of a sincerely held religious belief or practice." *Id*. at 71 (*citing Bilbrey v. Myers*, 91 So.3d 887, 891 (Fla. 5th DCA 2012) (emphasis added)). Here, Defendants have not established that their tortious acts were part of any sincerely held religious beliefs or taken pursuant to church law or policies.

The burden is on the party invoking ecclesiastical abstention to establish that the doctrine applies: a "church or religious organization seeking to avoid application of a neutral state law must first show why application of the law requires adjudication of an ecclesiastical matter." *Flynn*, 221 So.3d at 1247 (*citing Malichi*, 945 So.2d at 529 and *Malicki v. Doe*, 814 So.2d 347,360 (Fla. 2002)) (emphasis added). The "threshold

inquiry is whether there is a conflict between conduct that is required by law and conduct that is prohibited by religious principles." *Malicki,* 814 So.2d at 360 (internal citation omitted) (emphasis added). The Court is required to consider "the nature of the dispute and whether it can be decided on neutral principles of secular law without a court intruding upon, interfering with, or deciding church doctrine*." Flynn*, 221 So.3d at 1247. Defendants fail to meet this burden.

### C.   Ecclesiastical Abstention is Not Required

The issues framed by the Complaint do not implicate "church autonomy," require the "adjudication of questions of religious doctrine," nor involve an analysis of "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required." *See Malichi*, 945 So.2d at 529. Rather, Plaintiffs' claims can be "decided based on neutral principles of secular law without this court intruding upon, interfering with, or deciding church doctrine." *See Flynn*, 221 So.3d at 1247; *see also Malicki v. Doe*, 814 So.2d 347, 357 (Fla. 2002); *Bilbrey v. Myers,* 91 So.3d 887, 891 (Fla. 5th DCA 2012); *Flynn*, 231 So.3d at 1245-1246; *Diocese of Palm Beach, Inc. v. Gallagher*, 249 So.2d 657, 662 (4th DCA 2018); *Springhill*, 251 So.3d at 283; *World of Life Ministry, Inc. v. Miller*, 778 So.2d 360, 362-363 (Fla. 1st DCA 2001).

The most glaring deficiency in Defendants' abstention argument is the fact that Plaintiffs and Defendants are not even members of the same church or religious institution. Virtually every case Defendants cite involves a situation where a member or former member of a church is pursuing claims against that church or its members,

the resolution of which would require entanglement in that church's religious doctrines or governance. The only case Defendants appear to cite that involves the application of the abstention doctrine to a non-religious institution is *Mammon v. SCI Funeral Servs. Of Florida, Inc.*, 193 So.3d 980 (Fla. 4th DCA 2016) [*see* Motion at p. 5, n.1]. However, Mammon is factually distinguishable because the claims at issue charged the defendant funeral home with conduct that violated "Jewish burial customs and traditions." Here, Plaintiffs are not suing Defendants for violating any religious doctrine, custom, or tradition. They are suing Defendants for committing torts in violation of secular law.

At its core, the Motion's central argument skillfully attempts to conflate Defendants with Celebration Church. But the reason this argument fails is simple: Defendants and Celebration Church are not one in the same. They are not even members of the same church.

Even if (contrary to the facts) Defendants could equate themselves to Celebration Church, their arguments still fail because tort claims against churches based on conduct violating secular law and even "schisms" within congregational churches (such as Celebration Church) must be determined by ordinary principles governing voluntary associations. *Watson* 80 U.S. at 714.

Several courts have determined that abstention is not required in cases involving tort claims where they can be decided based on neutral principles of law. *See e.g.*, *Bilbrey v. Myers*, 91 So.3d 887, 890-891 (Fla. 5th DCA 2012); *LeGrande v. Emmanuel*, 889 So.2d 991, 994 (Fla. 3d DCA 2004); *Mendes v. da Silva*, 980 So.2d 631, 632 (Fla.

9

2d DCA 2008). Also, at least one court determined in a similar factual situation that abstention was not required in a case asserting claims involving a "self-governing group of separate autonomous churches." *McRaney v. North American Mission Board of the Southern Baptist Convention*, 304 F.Supp.3d 514, 521 (N.D. Miss. 2018) (denying motion to dismiss based where case was not "one which, on the face of the complaint, involves a review of '*internal* policies, *internal* procedures, or *internal* decisions of the church' *[but rather]* "*external* actions toward separate autonomous organizations, rather than internal decisions").

Celebration Church is congregational, not hierarchical, and as such governed by the same neutral laws that govern other voluntary associations. *Watson* 80 U.S. at 714. A "schism" in a congregational church must be determined by ordinary principles which govern voluntary associations. *Id.*[2] As established by the Supreme Court in *Watson,* 80 U.S. at 713-714:

> This case belongs to a class, happily rare in our courts, in which one of the parties to *a controversy, essentially ecclesiastical*, resorts to the judicial tribunals of the State *for the maintenance of rights which the church has refused to acknowledge*, or *found itself unable to protect*. Much as such

---

[2] The rule for hierarchical churches is different. As recognized in *Franzen v. Poulos*, 604 So.2d 1260, 1263 and n. 4 (Fla. 3d DCA 1992), the judiciary is only obliged to defer to a hierarchical church's internal decisional processes on matters of internal church discipline and government. *Franzen* distinguishes *Epperson v. Myers*, 58 So.2d 150 (Fla.1952); *Hemphill v. Zion Hope Primitive Baptist Church of Pensacola, Inc.*, 447 So.2d 976 (Fla. 1st DCA 1984); *Covington v. Bowers*, 442 So.2d 1068 (Fla. 1st DCA 1983); *Umberger v. Johns*, 363 So.2d 63 (Fla. 1st DCA 1978); and *Rolle v. Judge*, 310 So.2d 42 (Fla. 4th DCA) *cert. denied* 324 So.2d 633 (Fla.1975), because "[t]hose decisions involve independent congregations which are not part of a hierarchical church organization."

> dissensions among the members of a religious society should be regretted, a regret which is increased when passing from the control of the judicial and legislative bodies of the entire organization to which the society belongs, an appeal is made to the secular authority; ***the courts when so called on must perform their functions as in other cases***.
>
> ***Religious organizations come before us in the same attitude as other voluntary associations*** for benevolent or charitable purposes, and their rights of property, ***or of contract***, are ***equally under the protection of the law, and the actions of their members subject to its restraints***. Conscious as we may be of the excited feeling engendered by this controversy, and of the extent to which it has agitated the intelligent and pious body of Christians in whose bosom it originated, we enter upon its consideration with the satisfaction of knowing that the principles on which we are to decide so much of it as is proper for our decision, are those applicable alike to all of its class, and that our duty is the simple one of applying those principles to the facts before us.

The U.S. Supreme Court's recognition in *Watson* of the responsibility courts have to decide cases involving factions of congregational churches was recognized by Florida's Supreme Court in *Epperson v. Myers*, 58 So.2d 150, 152 (Fla. 1952), which held that "When a 'faction' of the church arrogates authority to itself, disrupts the organization and sets at naught well-defined rules of church order, there is no course left for those who desire their rights settled through orderly processes but resort to the courts."

Consistent with the principles established in *Watson* and *Epperson*, numerous courts have exercised jurisdiction in disputes involving the governance of congregational churches that (like Celebration Church) are required to abide by

11

Florida's Non-Profit Act. *See e.g.*, *Bendross v. Readon*, 89 So.3d 258, 260 (Fla. 3d DCA 2012) (ecclesiastical abstention doctrine did not bar a suit alleging the Defendants, acting without authority, attempted to remove specific board members from the church organization in derogation of the requirements of Chapter 617, *Florida Statutes*; *New Magnolia Baptist Church, Inc. of Branford v. Ellerker*, 353 So.2d 204, 205 (Fla. 1st DCA 1977); *First Independent Missionary Baptist Church of Chosen v. McMillan*, 153 So.2d 337, 340 (Fla. 2d DCA 1963); *Word of Life Ministry, Inc. v. Miller,* 778 So.2d 360, 362 (Fla. 1st DCA 2001) (dispute between a corporate church and its members over corporate assets and the propriety of corporate dissolution involved only neutral legal principles and therefore could be judicially resolved where defendants took a series of actions the church challenged, including electing new directors, amending the church's articles of incorporation, and voting to dissolve the corporation and distribute its assets); *Hemphill v. Zion Hope Primitive Baptist Church of Pensacola, Inc.*, 447 So.2dc 976, 977 (Fla. 1st DCA 1984) (affirming trial court's exercise of subject matter jurisdiction while recognizing that when the dispute turns on whether a minister's discharge was accomplished in accordance with the corporate charter, ecclesiastic matters do not come into play and the civil courts are an appropriate forum).

And even if Defendants could somehow establish (contrary to the facts and law) that abstention should apply in this case, it still should not be because an exception to its application exists in situations involving fraud and collusion. In *Serbian Orthodox Diocese v. Milivojevich*, the U.S. Supreme Court noted the possibility of this abstention exception for fraud or collusion "when church tribunals act in bad faith for secular

12

purposes." 426 U.S. 696, 713 (1976).  One court evaluating this exception described it as involving situations where a defendant "engaged in a bad faith attempt to conceal a secular act behind a religious smokescreen." *Moon v. Moon*, 833 Fed. App'x 876, 880 (2d Cir. 2020).  The Complaint in this case is predicated on a bad faith attempt to conceal secular misconduct and includes specific allegations that Defendants are attempted to use religion as a smokescreen.  *See* Doc. 1 at ¶ 127

## II.   More Definite Statement

Defendants' alternative argument that a more definite statement should be required because the Complaint supposedly is a "shotgun" pleading is not factually or legally supported.  A shotgun pleading is one that makes it "virtually impossible to know which allegations of fact are intended to support claims for relief" *Joe Hand Promotions, Inc. v. Hart*, 2012 WL 1289731, *2 (S.D. Fla. Apr. 16, 2012).  This typically occurs where all the preceding counts of the complaint are incorporated into each succeeding cause of action so that the last count is a combination of the entire complaint.  *Barone v. Wells Fargo Bank, N.A.*, 709 Fed. App'x 943, 951 (11th Cir. 2017).

Here, the Complaint does not such thing.  It also does not qualify as any of the four types of shotgun pleadings identified on page 21 of the Motion.

Defendants' Motion takes issue with Count II's (conspiracy) incorporation of Count I (tortious interference) [*see* Motion p. 22], but this is entirely proper because conspiracy claims are required to be based on underlying tort claims.  The Motion claims Plaintiffs' allegations are conclusory and vague [see Motion p. 22], but cites no examples in support of this argument—presumably because it is simply untrue.  The

13

Complaint is specific and detailed in describing the misconduct at issue. Defendants also contend the Complaint fails to sufficiently delineate the tortious interference claims in separate causes of action for each Plaintiff and supposedly "lumps together joint allegations against Defendants" [see Motion pp. 22-23]. These arguments are inconsistent with the actual allegations in the Complaint, seek to impose obligations beyond what the Federal pleading standards require, and ignore the legal implications of Defendants' conspiracy making each of them liable for each other's acts. *See, e. g., Cam v. State,* 433 So. 2d 38, 38-39 (Fla. 1st DCA 1983)*; U.S. v. Silvestri,* 409 F.3d 1311, 1335 (11th Cir. 2005)*; Phillip Morris USA Inc. v. Boatright,* 217 So.3d 166, 174 (Fla. 2d DCA 2017)*; Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott,* 2015 WL 13790168, *3 (S.D. Fla. Mar. 31, 2015) (quoting *U.S. v. Garcia-Ruiz,* 421 F. App'x 903, 909 (10th Cir. 2011)).

The Motion's request for a more definite statement runs afoul of the principles this Court recognized in *Jolly v. Hoegh Autoliners Shipping AS*, 546 F.Supp.3d 1105, 1119 (M.D. Fla. 2021):

> Pursuant to Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." *See* Rule 12(e). Such motions, however, are disfavored under the law, and are " 'not to be used as a substitute for discovery.' " *See United Enter. Fund, LP v. Modern Bus. Assocs., Inc.*, No. 8:08-cv-1488-T-24MAP, 2008 WL 4790537, at *1 (M.D. Fla. Oct. 28, 2008) (quoting *Eye Care Int'l, Inc. v. Underhill*, 92 F. Supp. 2d 1310, 1316 (M.D. Fla. 2000)). Indeed, "the purpose of a more definite statement is to rectify unintelligibility in a complaint, not to provide more

details that can reasonably be left to discovery." *See Wells Fargo Bank NA v. BBMJ, LLC*, No. 1:11-cv-127-MP-GRJ, 2012 WL 441286, at *1 (N.D. Fla. Feb. 10, 2012).

Motions for a more definite statement are generally denied in federal court because they are often used to delay the proceedings. *Dismuke v. Florida Board of Governors,* 2005 WL 1668895 (M.D. Fla. July 8, 2005); *Bazal v. Belford Trucking Co.,* 442 F.Supp. 1089, 1101 (S.D. Fla.1977). They should not be used as a means of discovery. *Pucci v. USAir,* 940 F.Supp. 305, 310 (M.D. Fla.1996).

Due to its liberal discovery practice, the Federal system judges pleadings by the notice standard. *Reich v. Gentle Dental Care of Sarasota, Inc.,* 1996 WL 78361 (M.D.Fla. February 16, 1996); *Perkins v. School Bd. Of Pinellas County, Florida*, 152 F.R.D. 227, 228 (M.D. Fla. 1993). Therefore, if the Plaintiff's complaint indicates generally the type of litigation involved it is sufficient to put the Defendants on notice. *Reich,* 1996 WL 78361 *2.

Here, Plaintiffs' Complaint meets these standards and is sufficient to put the Defendants on notice of the type of litigation involved in this case. Accordingly, Defendants' request for a more definite statement should be denied.

WHEREFORE, Plaintiffs respectfully request that the Court deny Defendants Motion, require Defendants to answer the Complaint, and grant such other and further relief as the Court deems just and appropriate.

Dated: September 25, 2023.

/s/ *Shane B. Vogt*
Shane B. Vogt – FBN 257620
LEAD COUNSEL
E-mail: svogt@tcb-law.com
David A. Hayes - FBN 096657
E-mail: dhayes@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel: (813) 834-9191
Fax: (813) 443-2193
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 25, 2023, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

/s/ *Shane B. Vogt*
Attorney