# Exhibit A

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NOS.:          16-2022-CA-1047

DIVISION:          CV-F

CHARLES STOVALL WEEMS, IV and
KERRI WEEMS,

     Plaintiffs,

v.

CELEBRATION CHURCH OF
JACKSONVILLE, INC., KEVIN
CORMIER, MARCUS ROWE,
ANGELA CANNON, JACOB WILLIAM,
and LEE WEDEKIND, III,

     Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

This matter comes before the Court on "Motion of Defendant Lee Wedekind, III, to Dismiss for Lack of Subject-Matter Jurisdiction," and "Celebration Church of Jacksonville Inc., Kevin Cormier, Marcus Rowe, Angela Cannon, and Jacob William's Motion to Dismiss Third Amended Complaint for Lack of Subject-Matter Jurisdiction," both filed on November 17, 2022. On December 16, 2022, Plaintiffs filed their response in opposition to the motions to dismiss. On August 3, 2023, this Court held a hearing on the motions to dismiss.

On September 28, 2022, this Court issued an Order dismissing without prejudice Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction and granting Plaintiffs leave to file an amended complaint raising causes of action that could be decided solely on neutral principles of secular law without impermissibly wading into ecclesiastical waters. On October 18,

2022, Plaintiffs filed their Third Amended Complaint. This Court must again dismiss Plaintiffs' complaint for lack of subject matter jurisdiction—this time with prejudice.

### *Overview of the Dispute*

This dispute revolves around a report (the "Report") commissioned by Celebration Church of Jacksonville, Inc. (the "Church") through its co-defendant trustees and drafted in-part by co-defendant Lee Wedekind, III to investigate Plaintiffs' possible misconduct in their pastoral roles. While the investigation was on-going, Charles Stovall Weems, IV ("Pastor Stovall Weems") resigned from the Church. The Church published the completed Report on its website, finding Pastor Stovall Weems had breached his fiduciary duties to the Church through fraud and self-dealing and that the Pastors failed generally to fulfill the biblical standards for church leadership.

Plaintiffs sued, asserting causes of action for defamation, conspiracy to defame, invasion of privacy, public disclosure of private facts, intentional infliction of emotional distress, and conspiracy to invade privacy. Defendants contend this Court lacks subject matter jurisdiction under the ecclesiastical abstention doctrine, despite Plaintiffs efforts to amend, because adjudication of the present dispute would require adjudication of a religious quarrel. This Court agrees.

### *The Ecclesiastical Abstention Doctrine*

The ecclesiastical abstention doctrine is rooted in the free exercise and establishment clauses of the Constitution and provides a categorical institutional barrier against secular courts officiating religious controversies. *See Napolitano v. St. Joseph Catholic Church*, 308 So. 3d 274, 277 (Fla. 5th DCA 2020). This jurisdictional bar adheres to disputes over church polity and administration. *Id.* at 278. "[T]he doctrine precludes secular courts from exercising jurisdiction over ecclesiastical disputes, those about 'discipline, faith, internal organization, or ecclesiastical rule, custom, or law,' as distinguished from 'purely secular disputes between third parties and a

2

particular defendant, albeit a religiously affiliated organization.'" *Id.* (quoting *Malichi v. Doe*, 814 So. 2d 347, 357 (Fla. 2002)). A court has jurisdiction to decide secular disputes involving a religious entity using neutral legal principles only if "'no issue of doctrinal controversy is involved.'" *Napolitano*, 308 So. 3d at 278 (quoting *Jones v. Wolf*, 443 U.S. 595, 605 (1979)).

## *Application of the Ecclesiastical Abstention Doctrine to the Present Dispute*

This Court finds judicial resolution of Plaintiffs' causes of action would require it to impermissibly engage in a doctrinal squabble involving the Church's biblical standards, administration, financial policies, and disciplinary practices, and decide whether the Pastors' personal, spiritual, and administrative conduct fulfilled those standards.

The third amended complaint omits mention of large sections[1] of the Report related to the underlying power struggle between the Pastors and Board, as well as the Pastors alleged failure to abide by biblical leadership standards. These omissions are necessitated by the ecclesiastical abstention doctrine's prohibition on "intrud[ing] on a church's autonomous management of its own internal affairs," *Flynn v. Estevez*, 221 So. 3d 1241, 1246 (Fla. 1st DCA 2017), such as "'inquiring into the adequacy of the religious reasoning behind the dismissal of a spiritual leader." *Diocese of Palm Bch., Inc. v. Gallagher*, 249 So. 3d 657, 663 (Fla. 4th DCA 2018) (quoting *Goodman v. Temple Shir Ami, Inc.*, 712 So. 2d 775, 777 (Fla. 3d DCA 1998)).

Instead, the most recent complaint hones in on a few specific segments of the Report. It first focuses on the allegations of financial improprieties. Plaintiffs posit that "[t]he falsity of [the alleged financial improprieties] can be determined by comparing those [allegations] to documents and events and applying secular law to decide whether Plaintiffs did in fact embezzle, misuse, or

---

[1] The Report is attached to the Third Amended Complaint and must therefore be considered—in its entirety—as a part of the complaint for all purposes. *Springhill Missionary Baptist Church, Inc. v. Mobley*, 251 So. 3d 281, 283 (Fla. 1st DCA 2018) (citing Fla. R. Crim. P. 1.130(b)).

misappropriate church funds for personal gain or engage in other acts that result[ed] in financial losses to the church." Indeed, it is likely possible for this Court to determine whether the Pastors made any material representations about, or personally benefitted from, any of these financial transactions without delving into questions involving biblical dogma or church polity.

But this Court cannot pass on the myriad other questions invariably arising in this dispute. First, this Court is not permitted to determine the proper scope of the Pastors' spending powers (including whether these transactions required board approval) or whether the riskiness of certain investments aligned with the Church's missions or fiduciary duties to its tithing members. Those questions can only be answered by church leadership—not this Court. Second, this litigation will require adjudication of Defendants' qualified privilege to publish the Report based on their senior leadership roles within the church. *See Lundquist v. Alewine*, 397 So. 2d 1148, 1149 (Fla. 5th DCA 1981) ("The elements essential to the finding of a conditionally privileged publication are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, (5) publication in a proper manner."). Put simply, this Court lacks authority to judge the legitimacy of a religious interest or whether efforts to uphold that religious interest were appropriate. Third, the Report must be analyzed under the substantial truth doctrine, requiring it to be considered in the full context of its publication. *Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019). Plainly, the Report cannot be assessed in its full context without consideration of the large swaths that were carefully excised from the third amended complaint.

This Court is likewise barred from adjudicating the propriety of the Report discussing Pastor Kerri Weems's depression and suicidal ideation. The Report's mention of Pastor Kerri Weems's mental health struggles must be considered within the context in which they were raised—namely, in response to her husband's alleged encounter with Jesus Christ. This theophanic

4

encounter was mentioned in the Report because it seemingly precipitated, and provided some explanation for, many of the leadership issues occasioning the Pastors' ouster. But, again, consideration of the entire Report would require this Court to second-guess the church's decision to remove the Pastors or its reasoning for doing so.

At bottom, resolution of this dispute would require this Court enmesh itself into the decision of who should lead the Church—this is something it cannot do:

> When it comes to the expression and inculcation of religious doctrine, there can be no doubt that the messenger matters. . . . [T]he content and credibility of a religion's message depend vitally on the character and conduct of its teachers. A religion cannot depend on someone to be an effective advocate for its religious vision if that person's conduct fails to live up to the religious precepts that he or she espouses. For this reason, a religious body's right to self-governance must include the ability to select, and to be selective about, those who will serve as the very "embodiment of its message" and "its voice to the faithful."

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 201 (2012) (J. Alito, concurring) (quoting *Petruska v. Gannon Univ.*, 462 F.2d 294, 306 (3d Cir. 2006)). Therefore, the ecclesiastical abstention doctrine deprives this Court of subject matter jurisdiction over the present dispute, and no amendment can circumvent this constitutional prohibition. *See Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1090 (Fla. 3d DCA 2014).

Accordingly, it is **ORDERED** that Plaintiffs' "Third Amended Complaint," filed on October 18, 2022, is **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Jacksonville, Duval County, Florida on October 6, 2023.

*Marianne Lloyd Aho*
**MARIANNE L. AHO**
**Circuit Judge**

Copies furnished to all counsel of record.

/tbc

5