UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHARLES S. WEEMS, IV , an individual, KERRI WEEMS, an individual, CELEBRATION GLOBAL, INC., a Florida not for profit corporation, HONEY LAKE FARMS, INC., a Florida not for profit corporation, NORTHSTREAM MANAGEMENT GROUP, LLC, a Florida limited liability company, and WEEMS GROUP, LLC, a Florida limited liability company,

    Plaintiffs,

v.

Case No. 3:23-cv-811-MMH-LLL

ASSOCIATION OF RELATED CHURCHES, a Texas not-for-profit corporation, CHRIS HODGES, individually, DINO RIZZO, individually, and JOHN SEIBELING, individually,

    Defendants.

## O R D E R

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction or, Alternatively, Motion for More Definite Statement and Supporting Memorandum of Law (Doc. 28; Motion) filed on August 28, 2023. In the Motion, Defendants seek dismissal of Plaintiffs' Complaint & Demand

for Jury Trial (Doc. 1; Complaint) based on the ecclesiastical abstention doctrine. Motion at 1. In the alternative, Defendants ask the Court to "order a more definite statement and require that Plaintiffs replead the Complaint." Id. at 24. Plaintiffs have filed a response in opposition to the Motion. See Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss or for More Definite Statement (Doc. 35; Response), filed September 25, 2023.[1] Accordingly, this matter is ripe for review. For the reasons that follow, the Court finds that the Motion is due to be granted to the extent that the Court will strike the Complaint as a shotgun pleading and direct Plaintiffs to file an amended complaint.

## I.  Background[2]

Plaintiffs Charles Stovall Weems ("Pastor Weems") and Kerri Weems are co-founders of Celebration Church. Complaint at 1, 7. Before he resigned from his position with the Church in April 2022, Pastor Weems had been Celebration Church's Senior Pastor and CEO since its founding in 1998. See id. ¶¶ 27–29. Plaintiffs Celebration Global, Inc., Honey Lake Farms, Inc.,

---

[1] Plaintiffs requested and received an extension of time to file their Response. See Endorsed Order (Doc. 34), entered September 14, 2023. Accordingly, Plaintiffs' Response was timely filed.

[2] In considering the Motion, in which Defendants assert a facial challenge to the Court's jurisdiction, see Motion at 6 n.4, the Court must accept all factual allegations in the Complaint as true. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). As such, the facts recited here are drawn from the Complaint and its exhibit and may well differ from those that ultimately can be proved.

NorthStream Management Group, LLC, and Weems Group, LLC., are business entities Pastor Weems and Kerri Weems created to "house and fund Celebration Church's significant administrative and personnel operations" and to support Pastor Weems's missionary work. See id. ¶¶ 35–38. Defendants are the Association of Related Churches ("ARC"), which is a "cooperative of independent churches from different denominations," id. ¶ 39, ARC's co-founder Chris Hodges, id. ¶ 47, ARC's Executive Director Dino Rizzo, id. ¶ 52, and ARC's "founding board member" John Seibeling, id. ¶ 53. Rizzo and Seibeling also served as "Overseer[s] at Celebration Church until September 2021." Id. ¶¶ 52–53.

In the Complaint, Plaintiffs assert that Defendants engaged in an "unlawful conspiracy" to "protect and expand their church growth business interests and endeavors and the substantial income they generate by destroying Plaintiffs and eliminating them as perceived threats and competitors," including by "engineering a takeover at Celebration Church of Jacksonville, Inc." Id. ¶ 1. Among other allegations, Plaintiffs assert that Defendants orchestrated a "sham 'investigation'" within Celebration Church to frame Pastor Weems for embezzlement. See id. ¶ 125. According to Plaintiffs, this caused Celebration Church to "avoid paying Plaintiffs the benefits [it] had already agreed to provide," allowed Defendants to "install leadership [they] could control" within Celebration Church, and eliminated "Honey Lake Farms

as competition" for a similar entity developed by Hodges and Rizzo.[3]  Id. ¶¶ 95, 126.  Plaintiffs plead two counts in their 182-paragraph Complaint.  In Count I, Plaintiffs assert a claim for tortious interference with "Plaintiffs' advantageous contractual and business relationships."  See id. ¶¶ 166–173.  In Count II, Plaintiffs assert a claim for conspiracy based on all the same facts.  See id. ¶¶ 174–182.  Defendants seek dismissal of both Counts.  See generally Motion.

**II.  Discussion**

In the Motion, Defendants first argue that the ecclesiastical abstention doctrine prevents the Court from adjudicating Plaintiffs' claims.  See id. at 13–21.  In the alternative, Defendants assert that the Complaint is an impermissible shotgun pleading.  See id. at 21–23.  As explained below, Defendants' first argument fails for the same reason their second one succeeds: because the Complaint is a shotgun pleading, the Court lacks sufficient information to determine the applicability of the ecclesiastical abstention doctrine to any of Plaintiffs' claims.

In general, pursuant to the ecclesiastical abstention doctrine, "[c]ivil courts lack jurisdiction to entertain disputes involving church doctrine and

---

[3] Plaintiffs explain that Honey Lake Farms is "a retreat and outpatient facility for pastoral care" which provides "Christian mental health treatment services."  Id. ¶ 36.  Plaintiffs further assert that Hodges and Rizzo were involved in creating the Lodge Retreat Center, a "virtually identical" program announced nine months after Honey Lake Farms opened.  See id. ¶ 95.

polity" unless the dispute can be resolved "under neutral principles" of law without "consideration of religious doctrinal matters." See Rutland v. Nelson, 857 F. App'x 627, 628 (11th Cir. 2021) (citing Crowder v. S. Baptist Convention, 828 F.2d 718, 727 (11th Cir. 1987) and Jones v. Wolf, 443 U.S. 595, 602–03 (1979)).[4] Defendants assert that resolving Plaintiffs' claims would require "excessive judicial entanglement" with Celebration Church's internal governance and would require the Court to answer several "manifestly ecclesiastical questions." Motion at 14–20. For this reason, Defendants contend that the Court cannot evaluate the "causation and damages elements of Plaintiffs' claims" without violating the First Amendment. See id. at 18. In response, Plaintiffs assert that Defendants fail to analyze the "relationships amongst these parties and nature of the claims at issue" in this case, as opposed to those in related state-court litigation against Celebration Church itself.[5]

---

[4] The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[5] In state court, Pastor Weems and Kerri Weems previously filed a lawsuit against Celebration Church "to try to obtain temporary injunctive relief" while an investigation of Pastor Weems was ongoing. See Complaint ¶ 135. Pastor Weems and Kerri Weems are also parties to "a separate pending eviction matter." See Motion at 11 n.3. Plaintiffs assert that Defendants' arguments in the instant case "bootstrap[ ] themselves to abstention arguments" that Celebration Church and its principals raised in the related litigation, and maintain that the "related state court actions are irrelevant to this Court's subject matter jurisdiction in this case." Response at 3 & n.1. Plaintiffs' contention in this regard may have some merit, but the problem with the argument is that Plaintiffs' vague pleading that itself lumps all Plaintiffs and Defendants together forecloses the ability to distinguish the relationships amongst the parties from those addressed in the state-court actions.

See Response at 3. Accordingly, Plaintiffs argue that Defendants "fail to meet th[eir] burden" of showing that the dispute cannot be decided based on neutral principles of secular law.[6]  See id. at 8.

For some events and business relationships Plaintiffs describe in the Complaint, Defendants' arguments likely are well-taken.[7] But Plaintiffs describe (or allude to) many business relationships in the Complaint, see, e.g., Complaint ¶¶ 102–106, and the Court is unable to determine which relationships, acts, or omissions form the basis of their tortious interference

---

[6] Plaintiffs also assert that if the Motion is truly a facial attack on subject matter jurisdiction, it should be denied because they have properly alleged diversity jurisdiction. See Response at 4. But the presence of diversity jurisdiction does not mean that ecclesiastical abstention does not apply. Abstention is not the absence of a statutory basis for subject matter jurisdiction, but a doctrine "under which a District Court may decline to exercise" jurisdiction which would otherwise be proper. See Allegheny Cnty. v. Frank Mashuda Co., 360 U.S. 185, 188 (1959) (emphasis added). And although it has not done so in a published decision, the Eleventh Circuit has treated ecclesiastical abstention as an issue which is properly addressed under Rule 12(b)(1). See Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y, 719 F. App'x 926, 928 (11th Cir. 2018) ("The district court correctly dismissed Myhre's complaint for lack of subject matter jurisdiction."); see also Kawimbe v. African Methodist Episcopal Church, No. 1:20-cv-04711-SDG, 2022 WL 3362050, at *1–2 (N.D. Ga. Aug. 15, 2022) (denying motion for reconsideration because "the Eleventh Circuit continues to treat the ecclesiastical abstention doctrine as a jurisdictional concern" (collecting cases)).

[7] Plaintiffs appear to argue that ecclesiastical abstention is categorically inapplicable because the parties "are not even members of the same church or religious institution." See Response at 8–9. In doing so, Plaintiffs attempt to distinguish Mammon v. SCI Funeral Servs. of Fla., Inc., 193 So. 3d 980 (Fla. 4th DCA 2016), where abstention was warranted in a dispute between an individual and a non-religious institution, because, in this action, Plaintiffs are "suing Defendants for committing torts in violation of secular law." See id. But this was precisely the issue that Mammon addressed: even though the plaintiff there framed her complaint "in counts alleging deceptive and fraudulent misrepresentations" in violation of secular law, the court could not apply that secular law "without first determining, as a matter of fact, 'what constitutes Jewish burial customs and traditions.'" Mammon, 193 So. 3d at 985. At least at this stage of the proceedings, the Court does not foreclose any future argument that a claim "require[s] an examination of doctrinal beliefs and internal church procedures." See Myhre, 719 F. App'x at 929.

claims.[8]  Without allegations that identify which actions by which Defendants harmed which Plaintiff and which of that Plaintiff's relationships with which entities, the Court cannot determine whether resolution of each Plaintiffs' claims requires consideration of religious doctrinal matters as opposed to a straightforward application of secular law.  For example, it is unclear which claims would require the Court to determine how Celebration Church began its investigation into Pastor Weems, interpret the church's financial policies and bylaws, or weigh the effect of the investigation report "on [Celebration Church's] board members as compared to the effects of" other religious disagreements.[9]  See Motion at 14, 18.  Accordingly, the Court is unable to determine whether

---

[8] Although Plaintiffs incorporate specific paragraphs into Count I to illustrate their "advantageous contractual and business relationships," see id. ¶ 167, it does not appear that Plaintiffs intended this to be an exhaustive list of relationships.  Indeed, these incorporated paragraphs lack any reference to Plaintiff Weems Group, LLC.  And for many of the incorporated relationships, there are no allegations to suggest that the relationship was damaged, let alone how it was damaged.  Accordingly, the incorporation of these allegations in Count I does not clarify Plaintiffs' claims.

[9] Because Siebeling and Rizzo are former Overseers of Celebration Church, Defendants also argue that the Court will need to examine whether they acted within "the scope of their responsibilities as Overseers" to address the claims against these Defendants.  See Motion at 19–20.  According to Defendants, since the Overseer role involved providing "'apostolic oversight'" and "'prayer,'" the Court would have to answer ecclesiastical questions in the process.  See id. (quoting Complaint ¶ 31).  But the Complaint also alleges that these Defendants stepped down as Overseers in September 2021, and it does not suggest that they remained agents of Celebration Church in another capacity.  See Complaint ¶¶ 52–53, 95.  And some allegations suggest that Plaintiffs may be seeking to hold Rizzo accountable for conduct which occurred after he stepped down as an Overseer.  See id. ¶¶ 107–111 (appearing to assert that Rizzo told an investor that he "should cut all ties with Pastor Weems and Honey Lake Farms" in November or December of 2021).  Based on the pleading, the Court cannot determine whether all of Plaintiffs' claims against Siebeling and Rizzo require analysis of conduct which occurred while they were Overseers at Celebration Church.

and to what extent the claims in this case require the inquiries which Defendants argue would be impermissible.

The root of this uncertainty, of course, is the conclusory, overly generalized, and imprecise way that Plaintiffs have set forth the claims in the Complaint. Notably, despite its length, the Court is skeptical that in the Complaint, Plaintiffs include sufficient information for some (if not all) Plaintiffs to state plausible claims for relief.[10] The manner in which Plaintiffs have drafted the Complaint deprives the Court of the ability to conclusively determine whether ecclesiastical abstention is appropriate as to all of Plaintiffs' claims against each Defendant, but it also supports Defendants' contention that the Complaint is an impermissible shotgun pleading. Id. at 21–23. In Weiland, the Eleventh Circuit "identified four rough types or categories of shotgun pleadings." See Barmapov v. Amuial, 986 F.3d 1321, 1324–25 (11th

---

[10] For example, Plaintiff Weems Group, LLC, is mentioned only once in the substantive allegations. What claims is this Plaintiff pursuing? Moreover, claims for tortious interference "generally require[ ] 'a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.'" Sarkis v. Pafford Oil Co., Inc., 697 So. 2d 524, 526 (Fla. 1st DCA 1997) (quoting Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994)); see also Dunn v. Air Line Pilots Ass'n, 193 F.3d 1185, 1191 (11th Cir. 1999) (concluding that, to establish a "business relationship," the plaintiff must show "a relationship with a particular party, and not just a relationship with the general business community"). Plaintiffs do not appear to include such allegations as to many of the business relationships described, and it is unclear whether many of the business relationships described in the Complaint were even damaged. See, e.g., Complaint ¶ 106 (asserting that "Plaintiffs" had "developed an advantageous business relationship with David Maura," a person who is mentioned nowhere else in the Complaint).

Cir. 2021) (quoting Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321 (11th Cir. 2015)). As the Barmapov court explained,

> The first [category] is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." The third is a complaint that does not separate "each cause of action or claim for relief" into a different count. And the final type of shotgun pleading is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

Barmapov, 986 F.3d at 1324–25 (quoting Weiland, 792 F.3d at 1321–23). Defendants contend that the Complaint falls into each of these four categories. Motion at 22. At least regarding the second, third, and fourth categories, Defendants are correct.[11]

As to the second category, the Complaint is replete with conclusory, vague allegations.[12] See, e.g., Complaint ¶ 24 ("Defendants conspired and agreed

---

[11] Defendants contend that the Complaint falls into the first category because "Count II incorporates all of Count I." Id. at 22 (quoting Moore v. Jasper City Bd. of Educ., No. 22-13943, 2023 WL 3719151, at *2 (11th Cir. May 30, 2023)). The Court is not persuaded that this is a fatal defect in this case. The Complaint contains only two Counts, and as Plaintiffs correctly observe, see Response at 13, the conspiracy claims in Count II derive from the tortious interference claims in Count I. See Ford v. Rowland, 562 So. 2d 731, 735 n.2 (Fla. 5th DCA 1990) ("Conspiracy is not a separate or independent tort but is a vehicle for imputing the tortious acts of one coconspirator to another to establish joint and several liability."). Unlike other defects Defendants identify, the Court is not convinced that this reincorporation "materially increase[es] the burden of understanding the factual allegations underlying each count." See Weiland, 792 F.3d at 1324–26.

[12] Plaintiffs' only argument to the contrary is that Defendants cite "no examples" to show that the Complaint falls into this category, "presumably because it is simply untrue."

with each other and others to engage in unlawful and tortious conduct intended to harm and injure Plaintiffs . . . ."); id. ¶¶ 58–59 (asserting that "Defendants acted as the principals of and directed and controlled the acts and conduct" of two attorneys who "purportedly represented Celebration Church"); id. ¶ 68 (asserting that "Defendants acted as the principals of, directed, and controlled acts and conduct of" Celebration Church's lead pastor); id. ¶ 94 (asserting that Defendants enlisted an individual "to manufacture evidence of supposed financial crimes and mismanagement"). The rest of the allegations in the Complaint do little to clarify these allegations. Plaintiffs are two individuals and four separate business entities. In the Complaint, they describe several business relationships and allegedly tortious acts but do not specifically state which of these relationships or acts form the basis of which individual Plaintiff's claims. For one Plaintiff—Weems Group, LLC—there are no allegations about it having any business relationships. Plaintiffs' vague and conclusory pleading is simply insufficient to put Defendants on notice of the claims against them and the grounds on which each claim rests.[13] See Weiland, 792 F.3d at 1323

---

Response at 13. But this is incorrect: Defendants cite many examples of conclusory allegations from throughout the Complaint. See Motion at 22 (citing Complaint ¶¶ 1–4, 19–20, 23–24, 59, 68, 93–94, 115, 124–130, 139, 155–65).

[13] This is especially true because for any Plaintiff to prevail on a claim that Defendants tortiously interfered with a business relationship under Florida law, that Plaintiff "must plead and prove that" the Defendant had "knowledge of the relationship" and "manifested a specific intent to interfere with" it. See Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc., 832 So. 2d 810, 814 (Fla. 2d DCA 2002). That Plaintiff must also establish that it incurred actual losses from the damage to the identified relationship. See Worldwide Primates, Inc. v. McGreal, 26 F.3d 1089, 1091–92 (11th Cir. 1994) (imposing Rule 11 sanctions

(describing this deficiency as the "unifying characteristic of all types of shotgun pleadings"); see also Barmapov, 986 F.3d at 1325–26 (describing excessively conclusory allegations that defendants "'sabotage[d]' [the plaintiff's] efforts to apply for financing" (first alteration in original)).

As for the third and fourth types of shotgun pleadings, in Count I of the Complaint Plaintiffs appear to combine claims for tortious interference based on multiple theories and occurrences, and Plaintiffs routinely fail to specify which Plaintiff or Plaintiffs bring the claim, and which Defendant or Defendants the Plaintiff asserts would be responsible for which acts or omissions. The Eleventh Circuit has repeatedly explained that in a case with multiple parties, and in particular multiple defendants, the complaint should contain specific allegations with respect to each defendant; it is insufficient to assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." See Weiland, 792 F.3d at 1323 & n.14 (collecting cases). This is true even more so here, where multiple Plaintiffs raise claims based on a series of different events against multiple Defendants, all in the same two Counts of the Complaint.[14]

---

on a plaintiff who brought a tortious interference claim under Florida law despite knowing "from the beginning" that the attempted interference caused no actual damage to the relationship at issue).

[14] Some Plaintiffs do not appear to be able to base any claim on some of the acts alleged in the Complaint. For example, why would the business entity Plaintiffs have claims for acts

In their Response, Plaintiffs assert without elaboration that Defendants "ignore the legal implications of Defendants' conspiracy making each of them liable for each other's acts."  See Response at 14.  It is true that a properly pleaded conspiracy can make co-conspirators liable for each other's actions.  See Ford, 562 So. 2d at 735 n.2.  But this does not relieve each Plaintiff of the obligation to provide each Defendant with adequate notice of which claims are brought against that Defendant and by which Plaintiff.  See Automotive Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co., 953 F.3d 707, 732 (11th Cir. 2020) (determining that a district court properly dismissed a claim for tortious interference as a shotgun pleading because it was based on "group allegations");[15] see also Weiland, 792 F.3d at 1320 (explaining that the federal pleading rules exist to ensure that a plaintiff's "'adversary can discern

---

directed solely at Pastor Weems and Kerri Weems?  See Complaint ¶ 94 (describing acts intended "to help oust Pastor Weems" from Celebration Church and to "illegally access and download [Kerri Weems's] private data, emails, medical information, and therapy sessions" for "Defendants to use against the Weemses's [sic]").

[15] The Court notes that group allegations are not necessarily fatal if the complaint "can be fairly read to aver that all defendants are responsible for the alleged conduct."  See Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000) (concluding that a complaint was not deficient where it "collectively accuse[d] all the defendants of all the acts" because the complaint alleged physical abuse of a patient in a mental hospital by "defendants who were personally involved" in his care).  But in many allegations it is unclear whether Plaintiffs believe that each Defendant engaged in the same conduct or each is merely liable as a co-conspirator.  For example, it is not apparent that Plaintiffs believe each Defendant—ARC, Hodges, Rizzo, and Seibeling—individually directed Wedekind to email TurnCoin.  See Complaint ¶ 147 (asserting that Wedekind sent this email "at Defendants' direction").  It is likewise unclear whether Plaintiffs believe that each Defendant individually "rewarded Timberlake for his role in advancing" the conspiracy by "partnering with Servolution to promote and generate sales of Timberlake's book."  See id. ¶ 151.  Accordingly, many allegations cannot be read to assert that all the Defendants engaged in all the conduct alleged.

what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not'" (quoting T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting))). Indeed, "[i]n conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged," and it is "not enough to simply aver in the complaint that a conspiracy existed." Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984); see also World Class Yachts, Inc. v. Murphy, 731 So. 2d 798, 799 (Fla. 4th DCA 1999) ("[g]eneral allegations of conspiracy are inadequate" to state a claim under Florida law). Here Plaintiffs' Complaint simply fails to provide sufficient notice of the basis for Plaintiffs' claims. Accordingly, Plaintiffs' arguments to the contrary are unavailing.

### III. Conclusion

For the reasons described above, the Complaint is an impermissible shotgun pleading which fails to put Defendants on sufficient notice of the claims brought against them, and also prevents the Court from resolving Defendants' contention that the ecclesiastical abstention doctrine warrants dismissal. For this reason, the Court will strike the Complaint and direct Plaintiffs to file a proper amended complaint.

### IV. Future Proceedings

Having resolved the Motion, the Court turns its attention to the procedural posture of this action. The case has been pending since July of 2023 but has not yet progressed beyond the pleading stage. Moreover, in light of the fact that Defendants had raised a non-frivolous challenge to the Court's exercise of jurisdiction over these claims, on November 3, 2023, the Court stayed discovery pending resolution of the instant Motion. See Order (Doc. 38). The Court has now resolved the Motion, but has not resolved Defendants' contention that application of the ecclesiastical abstention doctrine warrants dismissal of Plaintiffs' claims. Thus the stay of discovery would be due to remain in place. The Court is of the view, however, that rather than simply stay discovery, the better course of action is to stay and administratively close the case pending resolution of the jurisdictional challenge. Despite the age of the case, given the absence of a viable complaint the Court cannot yet determine whether the exercise of jurisdiction to resolve Plaintiffs' claims is proper. Until Plaintiffs have filed a proper complaint, and the Court has resolved the jurisdictional challenge, the prudent course of action is to stay the case to preserve the resources of the parties and also assure that, if abstention is appropriate, premature litigation of the claims raised by Plaintiffs will not improperly invade matters protected by the First Amendment. As such the Court will direct the Clerk of the Court to stay and administratively close this case

pending a determination by the Court that Plaintiffs have filed a viable amended complaint that plausibly states a claim (or claims) over which the Court can properly exercise subject matter jurisdiction.

Accordingly, it is

**ORDERED:**

1. Defendants' Motion to Dismiss for Lack of Jurisdiction or, Alternatively, Motion for More Definite Statement and Supporting Memorandum of Law (Doc. 28) is **GRANTED** to the extent that the Complaint & Demand for Jury Trial (Doc. 1) is **STRICKEN**.

2. The Motion is otherwise **DENIED without prejudice**.

3. Plaintiffs may file an amended complaint on or before **March 1, 2024**. Failure to do so may result in a dismissal of this action.

4. Defendants shall respond to the amended complaint in accordance with the requirements of Rule 15 of the Federal Rules of Civil Procedure.

5. The Clerk of the Court is **DIRECTED** to stay and administratively close this case.

6. The parties are relieved of the obligation to file a Joint Uniform Case Management Report within twenty-one days of this Order as the Court previously directed.[16]

**DONE AND ORDERED** in Jacksonville, Florida on February 9, 2024.

                                      MARCIA MORALES HOWARD
                                      United States District Judge

lc31

Copies to:

Counsel of Record

---

[16] See Order (Doc. 38) entered November 6, 2023.