UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHARLES S. WEEMS, IV, an individual,
KERRI WEEMS, an individual,
and CELEBRATION
GLOBAL, INC., a Florida not for profit           Case No.: 3:23-cv-811-MMH-LLL
corporation, HONEY LAKE FARMS,
INC., a Florida not for profit corporation,
NORTHSTREAM MANAGEMENT
GROUP, LLC, a Florida limited liability
company, and WEEMS GROUP, LLC,
a Florida limited liability company,

        Plaintiffs,

v.

ASSOCIATION OF RELATED CHURCHES,
a Texas not-for-profit corporation,
CHRIS HODGES, individually, and
DINO RIZZO, individually,

        Defendants.

_____/

## FIRST AMENDED COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiffs, Charles Stovall Weems, IV ("S Weems"), Kerri Weems ("K. Weems"), Celebration Global, Inc. ("Celebration Global"), Honey Lake Farms, Inc. ("Honey Lake Farms"), NorthStream Management Group, LLC ("NorthStream"), and Weems Group, LLC ("Weems Group"), sue Defendants, Association of Related Churches ("ARC"), Chris Hodges ("Hodges"), and Dino Rizzo ("Rizzo"), and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     This is an action for damages well in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees, as well as equitable relief.

2.     Plaintiff, S. Weems, is a resident and citizen of Duval County, Florida.

3.     Plaintiff, K. Weems, is a resident and citizen of Duval County, Florida.

4.     Plaintiff, Celebration Global, is a Florida not for profit corporation with its principal place of business located at 2627 Belfort Road, Jacksonville, Florida 32216.

5.     Plaintiff, Honey Lake Farms, is a Florida not for profit corporation with its principal place of business located at 2627 Belfort Road, Jacksonville, Florida 32216.

6.     Plaintiff, NorthStream, is a Florida limited liability company with its principal place of business located at 2627 Belfort Road, Jacksonville, Florida 32216, whose sole members are S. Weems and K. Weems.

7.     Plaintiff, Weems Group, is a Florida limited liability company with its principal place of business located at 2627 Belfort Road, Jacksonville, Florida 32216, whose sole members are S. Weems and K. Weems.

8.     Defendant, ARC, is a Texas not-for-profit corporation with its principal place of business located at 1201 Lee Branch Lane, Birmingham, AL 35242.

9.     Defendant, Hodges, is a resident and citizen of Birmingham, Alabama.

10.     Defendant, Rizzo, is a resident and citizen of Birmingham, Alabama.

11.    Non-Party, John Siebeling, is a resident and citizen of Memphis, Tennessee.

12.    Non-party, Celebration Church, is a Florida not-for-profit corporation with its principal place of business at 9555 R.G. Skinner Parkway, Jacksonville, Florida 32256.

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because it involves claims between citizens of different states with an amount in controversy that exceeds the sum of $75,000.00, exclusive of interest and costs.

14.    Pursuant to 28 U.S.C. §1391, venue is proper in this District because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

15.    Based on the facts alleged throughout this First Amended Complaint, Defendants, directly and/or through employees, agents, authorized representatives, co-conspirators, subsidiaries, affiliates, and/or other persons, entities, and/or representatives acting under their management, direction, supervision, and/or control, engaged in numerous contacts in, with, and/or directed at the state of Florida upon which this action is based.

16.    Based on the facts alleged throughout this First Amended Complaint, Defendants knowingly and intentionally entered into one or more contracts or agreements, pursuant to which they, directly and/or through employees, agents, authorized representatives, co-conspirators, subsidiaries, affiliates, and/or other

persons, entities, and/or representatives acting under their management, direction, supervision, and/or control, committed and engaged in tortious and overt acts within and directed at the state of Florida.

17.    Based on the facts alleged throughout this First Amended Complaint, this Court has personal jurisdiction over each Defendant under Section 48.193, *Florida Statutes*, because they each personally, directly, in concert with one another, and/or through an employee, agent, co-conspirator, subsidiary, affiliate, and/or other person or entity acting under their management, supervision, direction, and/or control, engaged in one or more of the following acts:

a.    committing tortious acts within the state of Florida;

b.    committing intentional torts expressly aimed at Florida, effects of which were suffered in Florida;

c.    operating, conducting, engaging in, or carrying on a business or business venture within the state of Florida, or having an office in Florida;

d.    engaging in substantial and not isolated activity within the state of Florida; and/or

e.    engaging in a conspiracy to commit tortious acts against Plaintiffs within the state of Florida and engaging in overt acts in furtherance of that conspiracy within or directed at the state of Florida.

18.    Based on the facts alleged throughout this First Amended Complaint, sufficient minimum contacts exist between each Defendant and the state of Florida to satisfy Due Process under the United States Constitution because Defendants: (1) engaged in substantial and not isolated activity within and directed at the state of Florida; (2) conducted business through employees, agents, co-conspirators, and/or

4

authorized representatives located in the state of Florida; and/or (3) committed and conspired to commit intentional torts expressly aimed at Florida, the effects and harms of which were calculated to and did cause injury within the state of Florida. Accordingly, each of the Defendants could and should have reasonably anticipated being sued for the claims alleged herein in the state of Florida.

19.     At all times material to this action, Defendants were the agents, licensees, employees, partners, joint-venturers, co-conspirators, masters, and/or employers of one another, and each of them acted within the course and scope of an agency, license, partnership, employment, conspiracy, ownership, joint venture, or contractual relationship with one another. At all times material to this action, each Defendant's acts, omissions, and misconduct alleged herein were known to, authorized, approved, and/or ratified by the other Defendants; and/or Defendants engaged in such acts, omissions, and misconduct in concert or active participation with one another or to aid or abet one another.

20.     Defendants conspired and agreed with each other and others to engage in unlawful and tortious conduct intended to harm and injure Plaintiffs, in furtherance of which Defendants and their agents and co-conspirators engaged in overt acts within and directed at the state of Florida and could and should have reasonably anticipated that the acts and omissions alleged herein connected them to Florida in a meaningful way.

21.     Defendants' actions and misconduct alleged herein produced and/or substantially contributed to producing the damages, injuries, and harms Plaintiffs

suffered, and for which they seek recovery and redress through this action; which injuries and harms occurred in the state of Florida and the greatest effects of which were suffered within the state of Florida.

22.    All conditions precedent to the filing and maintenance of this action have occurred, have been performed, and/or have been waived.

## COMMON FACTUAL ALLEGATIONS TO ALL COUNTS

### Overview of the Plaintiffs

23.    S. Weems and K. Weems are husband and wife.  They founded Celebration Church in 1998 and devoted over 23 years of their lives to their church, its congregation, and its missions.

24.    Initially, Celebration Church was comprised of a single site in Jacksonville, Florida, but through years of dedication and sacrifice S. Weems and K. Weems grew that single site into a global, multi-site, non-denominational church with nearly 20,000 members.

25.    In 2018, S. Weems came to the realization that Celebration Church had become too "corporate" and focused on generating attendance and revenue and needed to concentrate on helping the poor, missionary work, equality, and simplifying the church by creating alternative revenue streams that would make the church less donation dependent.

26.    S. Weems also came to recognize that the modern church growth system and its constant pressure to grow attendance and generate more and more revenue to keep the corporate "machine" running was having significant negative psychological

and health impacts on pastors, who needed counseling, guidance, and treatment to recover from the adverse effects of the growth model that Defendants are at the forefront of promoting.

27.    Thus, S. Weems and K. Weems developed a missionary-focused plan that included establishing several corporate entities that collectively would house and fund Celebration Church's significant administrative and personnel operations, quickly reduce expenses and Celebration Church's debt, and operate and fund the missionary work on which Pastor Weems wanted to focus, including the development of Restorative Community Developments (RCD's[1]) (the "**Missions Plan**").

28.    Pursuant to the Missions Plan, S. Weems and K. Weems formed several corporations that would perform different functions while operating cohesively to provide management services for Celebration Church and other entities, operate and fund missionary work, and operate, fund, and develop  RCD's, including the following:

> A.    Honey Lake Farms:  Plaintiff, Honey Lake Farms, was formed and funded to create, develop, and operate a retreat and outpatient facility for pastoral care which would be supported by an adjoining medical clinic (Honey Lake Clinic, Inc.) that would provide Christian mental health treatment services, the revenue from which would be used to build out and support Honey Lake Farms' mission;

> B.    NorthStream:  Plaintiff, NorthStream, was formed and funded to (1) provide centralized and shared management

---

[1]Restorative Community Developments are self-contained investment portfolios ideal for venture philanthropists and impact investors, combining profitability with socially and environmentally conscious that directly impact human flourishing in both rural and urban areas.  *See* **Exhibit A**.

services to Celebration Church and numerous other churches and related entities, enabling church leadership to focus their attention on ministry and missions rather than operational aspects of their churches; and (2) help initially operate and develop RCD's, the first of which was Honey Lake Farms;

C. <u>AWKNG</u>: A separate entity (AWKNG, Inc.) served as the hub for the restorative/ministry programing used at Honey Lake Farms, a theology school, missionary partnerships, media operations, and other similar endeavors; and

D. <u>Celebration Global</u>: Plaintiff, Celebration Global, was formed and funded to operate as the umbrella organization under which S. Weems and K. Weems missionary work would be housed.

29. S. Weems and K. Weems also formed Weems Group as a vehicle for themselves and family members to invest in the Missions Plan. Weems Group invested approximately $450,000 in NorthStream, which was used to help fund and start the operations of Honey Lake Farms and AWKNG, and S. Weems and K. Weems also invested $350,000 of their own money in Honey Lake Farms—all as part of and in furtherance of the Missions Plan.

30. Celebration Church's Board of Trustees and Overseers (including Rizzo and Siebeling) were fully aware of and approved the Missions Plan and the formation of the companies and investments made by Plaintiffs to implement the Missions Plan.

<u>**Overview of Defendants**</u>

31. ARC is a cooperative of independent churches from different denominations, networks, and backgrounds, including churches "planted" or launched through ARC and churches that invest in the mission of ARC financially.

32.     Although ARC started as a loosely connected group of people who wanted to help smaller churches, it eventually (under the leadership of Hodges) shifted its focus to generating large attendance growth and church "planting," which vastly expanded Hodges' power and influence and his revenue streams through ARC-promoted businesses and entities.

33.     ARC is one of the largest church planting organizations in North America and has planted more than a thousand churches since 2000.

34.     ARC-planted churches enter into contractual agreements with ARC that, among other things, provide for initial loans to launch the church and require the church to pay 10% of tithes and offerings to ARC until this loan is repaid; following which the church is required to send ARC an ongoing amount of 2% of its monthly tithes/offerings.

35.     Celebration Church is not an ARC-planted church and, at all times material to this action, had no legal, contractual, or financial obligations to ARC or any of the other Defendants.

36.     Historically, Celebration Church gratuitously donated approximately $150,000 to $200,000 per year to or for the benefit of ARC's church planting operations.

37.     ARC is not a denomination and does not issue directives on what its member churches should promote or how they should operate doctrinally, philosophically, ministerially, or politically—such that ARC's relationship with

churches is non-ecclesiastical. ARC member churches are completely and totally autonomous—operationally, financially, and governmentally.[2]

38.    ARC has attained a significant amount of power and influence through its church growth model and church-planting operations and is able to maintain and expand such power and influence through affiliated entities and "partners" that it heavily encourages its members to use.

39.    Hodges is one of the co-founders of ARC and Founder and Senior Pastor of Church of the Highlands ("Highlands"), one of the largest churches in the United States, and fully embraces the modern church growth model and has vocally expressed his goal to help 1,000 churches break the 1,000-attendance barrier.

40.    Hodges also founded, controls, and benefits financially from several entities closely affiliated with ARC and Highlands that are heavily promoted as ARC "partners," including GrowLeader, LLC ("GrowLeader") and Highlands College.

41.    GrowLeader is a for-profit company that generates significant revenue and resulting financial benefits to Hodges by providing fee-based mentoring, coaching, training, and consulting services and related resources focused on promoting and advancing the modern church growth system to churches and their leadership.

42.    Hodges and ARC furtively maintain *non-ecclesiastical* control and oversight over churches throughout the country through ARC's power and influence and through ARC "partners" and agents that, upon information and belief, Hodges

---

[2] https://www.arcchurches.com/about/our-structure/

ultimately directs and controls, such as "trustees" installed on church governing boards and church attorneys controlled by and loyal to Hodges and ARC.

43.    Attorneys David Middlebrook and Steven Goodspeed ("Middlebrook Goodspeed") specialize in the areas of church formation, governance, operations, and taxes, and were at all times material to this action promoted as an ARC "partner." Middlebrook Goodspeed represented Celebration Church during the events described below, but also, upon information and belief, acted at the direction and/or under the control of Hodges and in the interests of ARC.

44.    Attorneys Lee Wedekind ("Wedekind") and Kristin Ahr ("Ahr") work for the Nelson Mullins Riley & Scarborough LLP law firm ("Nelson Mullins") and were at all times material to the events described below, upon information and belief, acting at the direction and/or under control of Hodges and in the interests of ARC.

45.    Rizzo is the Executive Director of ARC and an Associate Pastor at Church of the Highlands.[3]   In these capacities, Rizzo carries out Hodges' directives. Rizzo's position within ARC provides inroads and influence  into every ARC church and the ability to, among other things, direct or restrict ARC resources to churches and their programs and missions.

46.    Rizzo served as an Overseer at Celebration Church until September 2021, and in that capacity had access to information and documentation concerning the Missions Plan, which he provided to Hodges.

---

[3] https://jamesriver.church/author/drizzo

47.     At all times material to the events described below, Rizzo acted pursuant to an explicit or tacit agreement with Hodges and Siebeling to engage in a continuing course of conduct intended to interfere with the Missions Plan.

48.     Siebeling is a Founder and Senior Pastor of The Life Church and founding board member of ARC—a position which enables him to use ARC and its extensive network and power to benefit himself and his church financially.

49.     Siebeling served as an Overseer at Celebration Church until September 2021, and in that capacity had access to information and documentation concerning the Missions Plan, which he provided to Hodges.

50.     At all times material to the events described below, Siebeling acted pursuant to an explicit or tacit agreement with Hodges and Rizzo to engage in a continuing course of conduct intended to interfere with the Missions Plan.

## The Implementation of the Missions Plan

51.     In 2019, Pastor Weems and K. Weems began implementing the Missions Plan, which is antithetical to ARC's business model and Hodges', Rizzo's, and Siebeling's business and financial interests, including their interests in and the benefits they and their churches derive from ARC and affiliated organizations such as GrowLeader and Highlands College.

52.     Once S. Weems and K. Weems began implementing the Missions Plan, S. Weems informed Rizzo that Celebration Church would only be willing to donate funds to ARC if they were earmarked for missionary work and helping pastors get the counseling, guidance, and treatment they needed to shift their focus to ministry and

missions, rather than church growth; while also expressing his concerns over the ARC system and its focus on planting churches to help expand ARC and GrowLeader and Hodges', Rizzo's, and Siebeling's own personal interests, which was causing stress and psychological harm for pastors.

53.     Middlebrook Goodspeed represented Celebration Church at the time and began consulting with S. Weems and Celebration Church on the Missions Plan, as part of which Celebration Church agreed to a financial package for the benefit of S. Weems and K. Weems and the Missions Plan that involved a Founding Pastor agreement, retirement package for S. Weems and K. Weems, a parsonage, and continued and ongoing financial support for their missions through funding Celebration Global, which would in turn help fund the operations of Honey Lake Farm, NorthStream, and AWKNG (the "Founding Pastor Agreements").

54.     Celebration Church's Board of Trustees and Overseers were fully aware of, approved, and agreed on behalf of Celebration Church to the Missions Plan and to the terms and conditions of the Founding Pastor Agreements.

55.     In December 2019, pursuant to the Founding Pastor Agreements, Celebration Church's Compensation Committee (including Siebeling and Rizzo) formally approved and agreed upon (among other things) Celebration Church's acquisition of a parsonage for the Weemses's and the payment of $100,000 per year to S. Weems until age 65; terms of which were memorialized in a *Compensation Resolution* and *Parsonage Use License Agreement*.

13

56.    Hodges, Rizzo, and Siebeling knew that, if implemented, the Missions Plan posed a threat to ARC's operational and business model and to Hodges', Rizzo's, and Siebeling's personal financial and business interests, including those derived through ARC and its related entities.

57.    Thus, Hodges, Rizzo, and Siebeling agreed to engage in a continuing course of conduct that was directed primarily by Hodges and implemented by Rizzo and Siebeling, directly and through other agents acting at their direction and under their control, to eliminate the threat Plaintiffs posed by using S. Weems' transition to Celebration Church's Founding Pastor to oust S. Weems from Celebration Church, terminate the founding Pastor Agreements, and destroy the Missions Plan.

58.    One of the first steps in this continuing conspiracy was planting an ARC agent Defendants knew they could control and who would continue to advance their interests, Tim Timberlake ("Timberlake"), to replace S. Weems as Senior Pastor of Celebration Church.

59.    Unaware of the clandestine agency relationship between Timberlake and ARC or that Timberlake was acting at Hodges', Rizzo's, and Siebeling's direction and/or under their control, S. Weems moved forward with transitioning to Celebration Church's Founding Pastor and guiding Timberlake to be his replacement.

60.    By December of 2020, Honey Lake Farms had opened and started offering retreats and its outpatient facility for pastoral care (known as the "Lodge"), and Honey Lake Clinic began generating revenue providing Christian mental health treatment services.

61.     Meanwhile, S. Weems and K. Weems continued working tirelessly to bring stability, structure, consistency, and clarity to Celebration Church's staff, congregation, and organization, greatly improving the church's financial position, and they believed everything was moving forward as planned with the Missions Plan and the Founding Pastor Agreements.

62.     In May of 2021, S. Weems and K. Weems and Celebration Church agreed on the property that would be the Weemses's' permanent parsonage and it was sold to the Church for that purpose—following which Celebration Church agreed to and did treat that property as the parsonage under the *Parsonage Use License Agreement*.

63.     However, unbeknownst to S. Weems and K. Weems, Hodges, Rizzo, and Siebeling were still working behind the scenes to oust Pastor Weems from his leadership position and cause Celebration Church to repudiate the Missons Plan and Founding Pastor Agreements.

64.     Upon information and belief, Hodges directed and Rizzo and Siebeling carried out, directly or indirectly through Timberlake, the enlistment of a new Celebration Church Trustee (Kevin Cormier) and financial officer (Lisa Stewart) they knew were involved in financial frauds against Celebration Church to help oust Pastor Weems, including to manufacture evidence of supposed financial crimes and mismanagement that could be used to frame S. Weems and justify his removal from Celebration Church.

65.     Upon information and belief, Hodges also directed and Rizzo and Siebeling carried out, directly or indirectly through Timberlake, the enlistment

K. Weems's assistant and NorthStream employee, Gaby Sullivan, to illegally access and download K. Weemses's private data, emails, medical information, and therapy sessions so they could also be used against the Weemses's and to oust them from Celebration Church.

66.    In September 2021, Hodge's Highlands church announced that it was spending $4.5 million to build its own "Lodge Retreat Center"—a center for pastoral counseling reported as being "the vision of" Hodges and Rizzo[4] that was virtually identical to the Honey Lake Farms' Lodge (which had been up and running since December 2020).  Around the same time, Rizzo and Siebeling stepped down as Celebration Church Overseers.

67.    Honey Lake Farms' Lodge and The Lodge Retreat Center (once completed) would have been competitors.  However, Hodges and Rizzo knew Honey Lake Farms' Lodge had a significant advantage because it was already operational and had numerous retreats, counseling and restorative programs led by professional therapists and able to provide outpatient clinical care through its association with Honey Lake Clinic, which Highland's "Lodge Retreat Center" was unable to provide.

68.    Hodges and Rizzo also perceived Honey Lake Farms as a threat to ARC and their own personal, financial, and business interests because it was providing counseling services that included programs designed to improve pastoral mental health by moving away from the church growth model.

---

[4]        https://ministrywatch.com/church-of-the-highlands-quietly-advances-controversial-pastoral-retreat-center/

69.    In October of 2021, still unaware of the clandestine plot against them, S. Weems and K. Weems continued to move forward with the Missions Plan and NorthStream agreed to pay Historical Concepts, a highly respected architecture and development firm in Atlanta, over $14,000 for a rendering of a master site plan for Honey Lake Farms so that investors for the RCD portion of the Honey Lake Farms project could be recruited. Historical Concepts is well known and respected in the community development and architectural world and its involvement on the Honey Lake Farms project provided legitimacy and credibility to the project.

70.    The Weemses's immediately drove from their meeting with Historical Concepts to the 2021 ARC conference at Seacoast Church in South Carolina to demonstrate their goodwill toward their friends at ARC and put forth the idea of working together around missions, which resulted in an advantageous business relationship between Honey Lake Farms and Greg Surratt pursuant to which Surratt agreed to partner to expand the availability of pastoral health retreats by hosting them at Honey Lake Farms and Surratt's lodge, which would have generated an estimated $1.5 million in income for Honey Lake Farms and AWKNG over the next 24 months.

71.    Hodges, Rizzo, and Siebeling were aware of this advantageous business relationship between Honey Lake Farms and Surratt.

72.    Not long thereafter, AWKNG and Honey Lake Farms held a fundraiser to raise money for scholarships for pastors and ministers to attend wellness retreats, which raised approximately $250,000 and connected Plaintiffs with Willie Robertson (well known for the "Duck Dynasty" reality show). Honey Lake Farms developed

an advantageous business relationship with Willie Robertson (who even shot some episodes of his series "*Buck Commander*" at the farm), including discussions about Robertson purchasing a lot in the Honey Lake Farms RCD to house his personal ministry initiatives and hosting future filming of the "*Buck Commander*" series. Robertson's involvement in Honey Lake Farms also had significant value and benefit to Honey Lake Farms and the Missions Plan as a whole because it provided credibility and legitimacy to the project. Hodges, Rizzo, and Siebeling were aware of this advantageous business relationship between Honey Lake Farms and Willie Robertson.

73.    In the fall of 2021, Wildwood Ranch also verbally committed to S. Weems that it would make a $1 million investment in Honey Lake Farms in April 2022 and acquire land in the project to build a ranch for troubled teens. Hodges, Rizzo, and Siebeling were aware of this advantageous business relationship between Honey Lake Farms and Wildwood Ranch.

74.    NorthStream was also working on developing an advantageous business relationship with the city of Greenville, FL related to its first RCD, and was launching its first RCD in Africa through Project Africa in Zimbabwe.

75.    Plaintiffs had also developed an advantageous business relationship with David Maura through which he initially invested $1.3 million in Honey Lake Farms and had expressed his willingness to invest significantly more money into the project. Hodges, Rizzo, and Siebeling were aware of this advantageous business relationship between Honey Lake Farms and Maura.

76.     All the foregoing relationships also would have benefitted NorthStream through management services agreements with Honey Lake Farms, Honey Lake Clinic, and AWKNG, pursuant to which NorthStream would have been paid management fees to provide management services for the operations at Honey Lake Farms and management services associated with launching RCD's. Hodges, Rizzo, and Siebeling were aware of the advantageous business relationships and agreements between NorthStream  and Honey Lake Farms, Honey Lake Clinic, and AWKNG.

77.     Based on the Celebration Church's commitment and agreement to the Missions Plan and Founding Pastor Agreements, the Weemses's also stopped drawing a salary from the church (in addition to their personal investments described above).

78.     In November of 2021, Rizzo and Timberlake, who were upon information and belief acting at Hodges' direction, contacted Surratt and informed him that Pastor Weems was about to be put "under investigation" by Celebration Church and told Surratt that he needed to cut all ties with S. Weems and Honey Lake Farms, which caused Surratt to immediately terminate his advantageous business relationship with Honey Lake Farms.

79.     By December 2021, Hodges, Rizzo, and Siebeling had succeeded in using their power and influence and agents they controlled within Celebration Church (including Timberlake and Kevin Cormier), to cause Celebration Church to repudiate the Founding Pastor Agreements and its commitment to provide millions of dollars in funding to Celebration Global to carry out the Missions Plan.

80.    Celebration Church's repudiation of the Founding Pastor Agreements and millions of dollars in committed funding to Celebration Global to carry out the Missions Plan was soon exacerbated by a campaign initiated by Hodges, Rizzo, and Siebeling as part of their continuing conspiracy to target Plaintiffs' strategic partnerships, pursuant to which Hodges, Rizzo, and Siebeling, directly or indirectly through Timberlake, set out to ruin S. Weems and K. Weems reputations, specifically in the ministry world, by contacting pastors, missional partners, strategic partners, leaders of church networks, and donors and telling them that S. Weems was about to be investigated for financial misconduct and would be removed as Celebration Church's Senior Pastor.

81.    Hodges, Rizzo, and Siebeling, directly or indirectly through Timberlake and Kevin Cormier, also engineered a sham "investigation" and suspension of S. Weems as Celebration Church's Senior Pastor based on "possible improper financial practices and/or failure to fulfill duties and responsibilities as Senior Pastor."

82.    Contemporaneously therewith, Hodges ensured that he and ARC would maintain ultimate oversight and control over the Weemses's ouster from Celebration Church by ensuring that Middlebrook Goodspeed would not do anything to help stop the sham investigation and would bring in ARC attorneys Wedekind and Ahr to lead the supposed "investigation" of S. Weems and K. Weems.

83.    Wedekind and Ahr promptly informed S. Weems that he was banned from Celebration Church while he supposedly was "investigated," barred him from

church property under threat of criminal prosecution, and instructed him to cease all contact with everyone associated with Celebration Church.

84.     Hodges, Rizzo, and Siebeling, further ensured the successful ouster of S. Weems by, directly or indirectly through others (including Timberlake and Cormier), convincing Celebration Church to use Middlebrook Goodspeed and Wedekind and Ahr to amend Celebration Church Bylaws to give its Trustees absolute, unchecked power to unlawfully oust S. Weems from the church.

85.     Wedekind and Ahr also proceeded with conducting the sham "investigation" of S. Weems; during which Hodges, Rizzo, and Siebeling, directly or through others (including Timberlake and Cormier), worked with and directed Middlebrook Goodspeed and Wedekind and Ahr to ensure that the supposed "investigation" would end in the predetermined outcome necessary to frame and oust S. Weems for financial and other misconduct and force him to cede control of Celebration Church to ARC controlled agents, including Timberlake and Cormier.

86.     Well-before the supposed "investigation" commenced, Rizzo and Siebeling had already learned and informed Hodges that Cormier and Celebration Church CFO, Lisa Stewart, were responsible for embezzling money from Celebration Church, so they all knew the "investigation" could be used to frame Pastor Weems for this embezzlement and justify ousting him from Celebration Church, following which ARC controlled leadership could be installed to ensure that the Missions Plan failed, simultaneously destroying Celebration Global, Honey Lake Farms and NorthStream and eliminating them as competition for Hodges other businesses.

87.     During the sham "investigation," the Weemses's were essentially made pariahs, unable to defend themselves and isolated from the church, friends, church members, and professional colleagues and contacts, most of whom they were prohibited from contacting and had been told the Weemses's were suspended and "under investigation" for unspecified reasons.

88.     On or around January 17, 2022, Hodges also enlisted an Overseer and Apostolic Elder of Highlands and Hodges' personal pastor, Larry Stockstill, to send an email openly challenging S. Weems's "new direction in ministry" and laying out that in order to clear his name S. Weems had to cede control over Celebration Church and repent to ARC, Rizzo, and Siebeling, in particular:

1. Express to the trustees your repentance and sorrow for the erratic leadership  What began, perhaps, with a desire to please the Lord and enter revival has developed into something that is not a part of the solid, stable foundation and values of Celebration Church.  Your financial dealings must be totally simplified so that the most unassuming member can understand.

2. Return to a broken, repentant, reconciling relationship to the Board of ARC (of which you have continued to be a part). Repent to them concerning not walking under their covering, blessing, and oversight. Repent specifically to John and Dino for ignoring their advice and counsel as overseers.

3. Pull back from following the directions and advice of other outside leaders who have reshaped Celebration church since your vision.

4. Restore your relationship to Tim Timberlake. He is not seeking to take your church and dishonor you. He could easily return to North Carolina. Whether you feel you erred in appointing him or not, it is an irreversible action you have publicly taken and you must return to the role of an encouraging father in his life (something he no longer has with his wonderful father already in heaven).

5. When all of the above is done, the last piece to clear your reputation is the financial investigation. If it comes back with nothing significant, there should be, in my opinion, no barrier to the Trustees giving you a severance package as the Founder. In my opinion, there will be no "Founder's seat" because of the confusion that has ensued around your leadership. I believe the Trustees will help you begin your worldwide missions ministry as completely separate from Celebration. You have huge potential as a leader, a preacher of righteousness, and a voice to this generation worldwide...IF YOU CLEAR YOUR NAME.

89.     At the same time, Middlebrook Goodspeed were also, upon information and belief acting at Hodges' direction or under his control, refusing to do anything to assist S. Weems in preventing the coup unfolding at Celebration Church.  Instead, Middlebrook Goodspeed, along with Rizzo and Siebeling, were pressuring S. Weems "not get an attorney or go to the court."

90.     As time dragged on with no imminent resolution of this incredibly damaging situation in sight, S. Weems and K. Weems decided to take action and filed suit on February 23, 2022 to try to obtain temporary injunctive relief to protect their rights and force the resolution of the sham investigation.

91.    Wedekind and Ahr represented Celebration Church in that lawsuit and, on March 3, 2022, filed a Motion to Dismiss which lobbed unsubstantiated, unnecessary personal attacks against the Weemses's that were completely irrelevant to the legal arguments it raised.  This motion further explained how Celebration Church's Bylaws were amended on January 13, 2022, to make its Board "the highest ecclesiastical authority in the church," which demonstrated to S. Weems and K. Weems that Hodges, Rizzo, Siebeling, and ARC had successfully completed their plan to take over control of Celebration Church.

92.    Upon reading this, S. Weems came to the difficult realization that he could no longer be a part of Celebration Church and needed to try to protect his family from any further attacks by resigning and completely separating from Celebration Church.

93.    Thus, on April 15, 2022, S. Weems tendered his resignation as Senior Pastor, President, Chief Executive Officer, Chairman and member of the Board of Trustees, and registered agent.

94.    However, Defendants were upset over the lawsuit and the publicity it drew and fearful that members of Celebration Church's congregation would follow S. Weems once he began ministering elsewhere and working with other churches, so they continued working through Timberlake with Wedekind and Ahr to create and publicly disseminate a false and defamatory narrative and statements about S. Weems and K. Weems, along with private and confidential information about K. Weems they

24

had unlawfully gathered, to try to destroy their reputations, humiliate them, and prevent Plaintiffs from continuing their ministry and missions.

95.    This culminated in an April 24, 2022, "Report of Investigation to Celebration Church of Jacksonville, Inc." [Doc 1-1], which was leaked to the press and published on Celebration Church's website so that it would be publicly available immediately before ARC's Conference in South Carolina on April 25-27, 2022—at which Hodges was planning to discuss the progress of the Highlands Lodge and plans for GrowLeader.

96.    The ultimate purpose of the public dissemination of the Report was to frame S. Weems and K. Weems for embezzling the money Defendants' knew Cormier and Stewart had taken and covered up, thereby legitimizing the takeover of Celebration Church, ensuring the failure of the Missions Plan, and simultaneously publicly destroying S. Weems and K. Weems so that they no longer posed any threat to Hodge's, Rizzo's, Siebeling's, and ARC's personal, business, and financial interests.

97.    Defendants' knew the Report could be used to sway the opinions of Celebration Church's members, the public, and people and businesses affiliated with Plaintiffs to convince them that S. Weems and K. Weems were criminals and prevent people and companies from doing business with entities with which they are affiliated, including Honey Lake Farms, NorthStream, and Celebration Global.

98.    Unsurprisingly, shortly after the Report was publicly released, the advantageous business relationships between Honey Lake Farms and Willie Robertson, Wildwood Ranch, and David Maura ended.

99.    Soon after the Report was publicly released, on April 27, 2022, Wedekind, who was upon information and belief acting at the direction of Timberlake or Cormier while under the control of Hodges or Rizzo, prepared and transmitted a letter via email to TurnCoin, Ltd.'s chief legal officer, Arno Visser, (the "TurnCoin Letter"), which falsely asserted that S. Weems "embezzled and fraudulently transferred [Celebration Church] funds that were used to purchase TurnCoin" and engaged in "money laundering…in violation of 18 U.S.C. §§ 1956(a) and 1957":

**NELSON MULLINS**

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AND COUNSELORS AT LAW

Lee D. Wedekind, III
T: 904.665.3652
lee.wedekind@nelsonmullins.com

50 N. Laura Street, 41st Floor
Jacksonville, FL 32202
T 904.665.3600  F 904.665.3699
nelsonmullins.com

April 27, 2022

**By email**

Arno Visser
Chief Legal Officer
TurnCoin, Ltd.
Madison Building Midtown
Queensway
GX11 1AA
arno@turncoin.com

Re:    Demand to freeze TurnCoin purchased with embezzled and fraudulently transferred assets

Mr. Visser:

We represent Celebration Church of Jacksonville, Inc. Celebration's former pastor, Stovall Weems, embezzled and fraudulently transferred church funds that were used to purchase TurnCoin on behalf of the following: Charles S. ("Stovall") Weems IV, AWKNG, Inc., Honey Lake Farms, Inc., and Benny Perez Ministries. The purchase of TurnCoin under these circumstances may constitute money laundering by Weems in violation of 18 U.S.C. §§ 1956(a) and 1957.

On April 24, we released a report of our investigation into Weems's illegal activities. A copy of the report can be viewed at www.celebration.org/weemsinvestigation. Following the release of our report, we have been advised that Weems is planning to liquidate all or part of these TurnCoin holdings.

This letter is to notify TurnCoin of these potentially criminal actions and to request TurnCoin's assistance by freezing the holdings of Charles S. Weems IV, AWKNG, Inc., Honey Lake Farms, Inc., and Benny Perez Ministries until the dispute between these parties has been resolved. We would be pleased to provide you with additional information or to discuss this matter further at your earliest convenience.

Thank you for your cooperation.

Very truly yours,

Lee D. Wedekind, III

LDW/aa

100.    The TurnCoin Letter specifically directed TurnCoin to view the Report to read about "Weemses's illegal activities" and included a hyperlink to the Report for that purpose, and used the Report and false criminal accusations about S. Weems to try to convince TurnCoin to freeze the Weemses's investments and investments of Honey Lake Farms in hopes of further financially crippling Plaintiffs.

101.    By engaging in the above-described conduct, Defendants explicitly or tacitly agreed to participate in a common scheme and unlawful ongoing conspiracy, in furtherance of which they committed overt acts or instructed others under their control to commit overt acts, which caused significant harm and damages to Plaintiffs as a result.

**COUNT I**
**(TORTIOUS INTERFERENCE**
**Weems vs. ARC)**

102.    S. Weems and K. Weems re-allege and incorporate Paragraphs 1 through 101, as if fully stated herein.

103.    As more specifically alleged in paragraphs 27-30, 53-55, and 62, above, S. Weems and K. Weems had advantageous contractual and business relationships with Celebration Church, of which ARC was aware.

104.    As alleged in paragraphs 31-50, 56-68, and 78-100, ARC, through its agents, Hodges, Rizzo, and Siebeling, and others acting at their direction or under their control, intentionally and unjustifiably interfered with S. Weems and K. Weems advantageous contractual and business relationships with Celebration Church, as a

direct and proximate result of which, S. Weems and K. Weems suffered substantial economic damages in amounts to be proven at trial.

105.    Further, as a direct, proximate, and reasonably foreseeable result of ARC's tortious interference with the Mission Plan and S. Weems' and K. Weems' advantageous contractual and business relationships with Celebration Church, ARC caused the Missions Plan to fail and caused S. Weems and K. Weems to lose their personal investment alleged in paragraph 29, above.

106.    ARC's actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure S. Weems and K. Weems and cause them substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, ARC intentionally pursued such course of conduct, resulting in injury and damages to K. Weems and S. Weems; and/or were committed in conscious disregard of S. Weems's and K. Weems's rights.

WHEREFORE, Plaintiffs, Charles S. Weems, IV, and Kerri Weems, demand judgment against Defendant, Association of Related Churches, Inc., awarding:

a.    Compensatory damages in appropriate amounts to be established at trial;

b.    Punitive damages in appropriate amounts to be established at trial;

c.    Costs associated with this action; and

d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT II
## (TORTIOUS INTERFERENCE
### Weems vs. Hodges)

107.   S. Weems and K. Weems re-allege and incorporate Paragraphs 1 through 101, as if fully stated herein.

108.   As more specifically alleged in paragraphs 27-30, 53-55, and 62, above, S. Weems and K. Weems had advantageous contractual and business relationships with Celebration Church, of which Hodges was aware.

109.   As alleged in paragraphs 31-50, 56-68, and 78-100, Hodges, directly and through others acting at his direction and under his control, including Rizzo, Siebeling, Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, intentionally and unjustifiably interfered with S. Weems and K. Weems advantageous contractual and business relationships with Celebration Church, as a direct and proximate result of which, S. Weems and K. Weems suffered substantial economic damages in amounts to be proven at trial.

110.   Further, as a direct, proximate, and reasonably foreseeable result of Hodge's tortious interference with the Mission Plan and S. Weems' and K. Weems' advantageous contractual and business relationships with Celebration Church, Hodges caused the Missions Plan to fail and caused S. Weems and K. Weems to lose their personal investment alleged in paragraph 29, above.

111.   Hodges' actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure S. Weems and K. Weems and cause them substantial harm; committed with actual knowledge of the wrongfulness

of the conduct and the high probability that injury and damage would result, and despite that knowledge, Hodges intentionally pursued such course of conduct, resulting in injury and damages to K. Weems and S. Weems; and/or were committed in conscious disregard of S. Weems's and K. Weems's rights.

WHEREFORE, Plaintiffs, Charles S. Weems, IV, and Kerri Weems, demand judgment against Defendant, Chris Hodges, awarding:

a.   Compensatory damages in appropriate amounts to be established at trial;

b.   Punitive damages in appropriate amounts to be established at trial;

c.   Costs associated with this action; and

d.   Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT III
### (TORTIOUS INTERFERENCE
### Weems vs. Rizzo)

112.   S. Weems and K. Weems re-allege and incorporate Paragraphs 1 through 101, as if fully stated herein.

113.   As more specifically alleged in paragraphs 27-30, 53-55, and 62, above, S. Weems and K. Weems had advantageous contractual and business relationships with Celebration Church, of which Rizzo was aware.

114.   As alleged in paragraphs 31-50, 56-68, and 78-100, Rizzo, directly and through others acting at his direction and under his control, including Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, intentionally and unjustifiably interfered with S. Weems and K. Weems advantageous

contractual and business relationships with Celebration Church, as a direct and proximate result of which, S. Weems and K. Weems suffered substantial economic damages in amounts to be proven at trial.

115.    Further, as a direct, proximate, and reasonably foreseeable result of Rizzo's tortious interference with the Mission Plan and S. Weems' and K. Weems' advantageous contractual and business relationships with Celebration Church, Rizzo caused the Missions Plan to fail and caused S. Weems and K. Weems to lose their personal investment alleged in paragraph 29, above.

116.    Rizzo's actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure S. Weems and K. Weems and cause them substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, Rizzo intentionally pursued such course of conduct, resulting in injury and damages to K. Weems and S. Weems; and/or were committed in conscious disregard of S. Weems's and K. Weems's rights.

WHEREFORE, Plaintiffs, Charles S. Weems, IV, and Kerri Weems, demand judgment against Defendant, Dino Rizzo, awarding:

a.    Compensatory damages in appropriate amounts to be established at trial;

b.    Punitive damages in appropriate amounts to be established at trial;

c.    Costs associated with this action; and

d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT IV
## (TORTIOUS INTERFERENCE
### Celebration Global vs. ARC)

117.    Celebration Global re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

118.    As more specifically alleged in paragraphs 27-28, 30, and 53-55, above, Celebration Global had an advantageous contractual and business relationship with Celebration Church, of which ARC was aware.

119.    As alleged in paragraphs 31-50, 56-68, and 78-100, ARC, through its agents, Hodges, Rizzo, and Siebeling, and others acting at their direction and under their control, intentionally and unjustifiably interfered with Celebration Global 's advantageous contractual and business relationships with Celebration Church, as a direct and proximate result of which, Celebration Global suffered substantial economic damages in amounts to be proven at trial.

120.    ARC's actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Celebration Global and cause them substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, ARC intentionally pursued such course of conduct, resulting in injury and damages to Celebration Global; and/or were committed in conscious disregard of Celebration Global 's rights.

WHEREFORE, Plaintiff, Celebration Global, demands judgment against Defendant, Association of Related Churches, Inc., awarding:

a.    Compensatory damages in appropriate amounts to be established at trial;

b.    Punitive damages in appropriate amounts to be established at trial;

c.    Costs associated with this action; and

d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

### COUNT V
### (TORTIOUS INTERFERENCE
### Celebration Global vs. Hodges)

121.    Celebration Global re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

122.    As more specifically alleged in paragraphs 27-28, 30, and 53-55, above, Celebration Global had an advantageous contractual and business relationship with Celebration Church, of which Hodges was aware.

123.    As alleged in paragraphs 31-50, 56-68, and 78-100, Hodges, directly and through others acting at his direction and under his control, including Rizzo, Siebeling, Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, intentionally and unjustifiably interfered with Celebration Global 's advantageous contractual and business relationships with Celebration Church, as a direct and proximate result of which, Celebration Global suffered substantial economic damages in amounts to be proven at trial.

124.    Hodges' actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Celebration Global and cause it substantial harm; committed with actual knowledge of the wrongfulness of the

conduct and the high probability that injury and damage would result, and despite that knowledge, Hodges intentionally pursued such course of conduct, resulting in injury and damages to Celebration Global; and/or were committed in conscious disregard of Celebration Global 's rights.

WHEREFORE, Plaintiff, Celebration Global, demand judgment against Defendant, Chris Hodges, awarding:

a.  Compensatory damages in appropriate amounts to be established at trial;

b.  Punitive damages in appropriate amounts to be established at trial;

c.  Costs associated with this action; and

d.  Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

### COUNT VI
### (TORTIOUS INTERFERENCE
### Celebration Global vs. Rizzo)

125.  Celebration Global re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

126.  As more specifically alleged in paragraphs 27-28, 30, and 53-55, above, Celebration Global had advantageous contractual and business relationships with Celebration Church, of which Rizzo was aware.

127.  As alleged in paragraphs 31-50, 56-68, and 78-100, Rizzo, directly and through others acting at his direction and under his control, including Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, intentionally and unjustifiably interfered with Celebration Global advantageous

contractual and business relationships with Celebration Church, as a direct and proximate result of which, Celebration Global suffered substantial economic damages in amounts to be proven at trial.

128.    Rizzo's actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Celebration Global and cause it substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, Rizzo intentionally pursued such course of conduct, resulting in injury and damages to Celebration Global; and/or were committed in conscious disregard of Celebration Global 's rights.

WHEREFORE, Plaintiff, Celebration Global, demands judgment against Defendant, Dino Rizzo, awarding:

a.    Compensatory damages in appropriate amounts to be established at trial;

b.    Punitive damages in appropriate amounts to be established at trial;

c.    Costs associated with this action; and

d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT VII
## (TORTIOUS INTERFERENCE
## Honey Lake Farms vs. ARC)

129.    Honey Lake Farms re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

130.    As more specifically alleged in paragraphs 27-28, 30, and 53-55, above, Honey Lake Farms had an advantageous contractual and business relationship with Celebration Church, of which ARC was aware.

131.    As more specifically alleged in paragraphs 69-75, above, Honey Lake Farms had advantageous contractual and business relationships with Surratt, Robertson, Wildwood ranch, and Maura, of which ARC was aware

132.    As alleged in paragraphs 31-50, 56-68, and 78-100, ARC, through its agents, Hodges, Rizzo, and Siebeling, and others acing at their direction and under their control, intentionally and unjustifiably interfered with Honey Lake Farms's advantageous contractual and business relationships with Celebration Church and Surratt, Robertson, Wildwood Ranch, and Maura, as a direct and proximate result of which, Honey Lake Farms suffered substantial economic damages in amounts to be proven at trial.

133.    ARC's actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Honey Lake Farms and cause them substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, ARC intentionally pursued such course of conduct, resulting in injury and damages to Honey Lake Farms; and/or were committed in conscious disregard of Honey Lake Farms's rights.

WHEREFORE, Plaintiff, Honey Lake Farms, demands judgment against Defendant, Association of Related Churches, Inc., awarding:

a.   Compensatory damages in appropriate amounts to be established at trial;

b.   Punitive damages in appropriate amounts to be established at trial;

c.   Costs associated with this action; and

d.   Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

**COUNT VIII**
**(TORTIOUS INTERFERENCE**
**Honey Lake Farms vs. Hodges)**

134.   Honey Lake Farms re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

135.   As more specifically alleged in paragraphs 27-28, 30, and 53-55, above, Honey Lake Farms had an advantageous contractual and business relationship with Celebration Church, of which Hodges was aware.

136.   As more specifically alleged in paragraphs 69-75, above, Honey Lake Farms had advantageous contractual and business relationships with Surratt, Robertson, Wildwood Ranch, and Maura, of which Hodges was aware

137.   As alleged in paragraphs 31-50, 56-68, and 78-99, Hodges, directly and through others acting at his direction and under his control, including Rizzo, Siebeling, Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, intentionally and unjustifiably interfered with Honey Lake Farms's advantageous contractual and business relationships with Celebration Church and Surratt, Robertson, Wildwood Ranch, and Maura, as a direct and proximate result of which,

Honey Lake Farms suffered substantial economic damages in amounts to be proven at trial.

138.    Hodges' actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Honey Lake Farms and cause it substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, Hodges intentionally pursued such course of conduct, resulting in injury and damages to Honey Lake Farms; and/or were committed in conscious disregard of Honey Lake Farms's rights.

WHEREFORE, Plaintiff, Honey Lake Farms, demand judgment against Defendant, Chris Hodges, awarding:

a.    Compensatory damages in appropriate amounts to be established at trial;

b.    Punitive damages in appropriate amounts to be established at trial;

c.    Costs associated with this action; and

d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

### COUNT IX
### (TORTIOUS INTERFERENCE
### Honey Lake Farms vs. Rizzo)

139.    Honey Lake Farms re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

140.    As more specifically alleged in paragraphs 27-28, 30, and 53-55, above, Honey Lake Farms had advantageous contractual and business relationships with Celebration Church, of which Rizzo was aware.

141.    As more specifically alleged in paragraphs 69-75, above, Honey Lake Farms had advantageous contractual and business relationships with Surratt, Robertson, Wildwood Ranch, and Maura, of which Rizzo was aware

142.    As alleged in paragraphs 31-50, 56-68, and 78-99, Rizzo, directly and through others acting at his direction and under his control, including Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, intentionally and unjustifiably interfered with Honey Lake Farms advantageous contractual and business relationships with Celebration Church and Surratt, Robertson, Wildwood Ranch, and Maura, as a direct and proximate result of which, Honey Lake Farms suffered substantial economic damages in amounts to be proven at trial.

143.    Rizzo's actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Honey Lake Farms and cause it substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, Rizzo intentionally pursued such course of conduct, resulting in injury and damages to Honey Lake Farms; and/or were committed in conscious disregard of Honey Lake Farms's rights.

WHEREFORE, Plaintiff, Honey Lake Farms, demands judgment against Defendant, Dino Rizzo, awarding:

a.     Compensatory damages in appropriate amounts to be established at trial;

b.     Punitive damages in appropriate amounts to be established at trial;

c.     Costs associated with this action; and

d.     Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

**COUNT X**
**(TORTIOUS INTERFERENCE**
**NorthStream vs. ARC)**

144.     NorthStream re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

145.     As more specifically alleged in paragraphs 27-28, 30, and 53-55, above, NorthStream had an advantageous contractual and business relationship with Celebration Church, of which ARC was aware.

146.     As more specifically alleged in paragraphs 76, above, NorthStream had advantageous contractual and business relationships with Honey Lake Farms, Honey Lake Clinic, and AWKNG, of which ARC was aware.

147.     As alleged in paragraphs 31-50, 56-68, and 78-100, ARC, through its agents, Hodges, Rizzo, and Siebeling, and others acting at their direction or under their control, intentionally and unjustifiably interfered with NorthStream's advantageous contractual and business relationships with Celebration Church and Honey Lake Farms, Honey Lake Clinic, and AWKNG, as a direct and proximate

result of which, NorthStream suffered substantial economic damages in amounts to be proven at trial.

148.    ARC's actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure NorthStream and cause them substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, ARC intentionally pursued such course of conduct, resulting in injury and damages to NorthStream; and/or were committed in conscious disregard of NorthStream's rights.

WHEREFORE, Plaintiff, NorthStream, demands judgment against Defendant, Association of Related Churches, Inc., awarding:

a.    Compensatory damages in appropriate amounts to be established at trial;

b.    Punitive damages in appropriate amounts to be established at trial;

c.    Costs associated with this action; and

d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT XI
### (TORTIOUS INTERFERENCE
### NorthStream vs. Hodges)

149.    NorthStream re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

150.   As more specifically alleged in paragraphs 27-28, 30, and 53-55, above, NorthStream had an advantageous contractual and business relationship with Celebration Church, of which Hodges was aware.

151.   As more specifically alleged in paragraph 76, above, NorthStream had advantageous contractual and business relationships with Honey Lake Farms, Honey Lake Clinic, and AWKNG, of which Hodges was aware

152.   As alleged in paragraphs 31-50, 56-58, and 78-100, Hodges, directly and through others acting at his direction and under his control, including Rizzo, Siebeling, Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, intentionally and unjustifiably interfered with NorthStream's advantageous contractual and business relationships with Celebration Church and Honey Lake Farms, Honey Lake Clinic, and AWKNG, as a direct and proximate result of which, NorthStream suffered substantial economic damages in amounts to be proven at trial.

153.   Hodges' actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure NorthStream and cause it substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, Hodges intentionally pursued such course of conduct, resulting in injury and damages to NorthStream; and/or were committed in conscious disregard of NorthStream's rights.

WHEREFORE, Plaintiff, NorthStream, demand judgment against Defendant, Chris Hodges, awarding:

a.   Compensatory damages in appropriate amounts to be established at trial;

b.   Punitive damages in appropriate amounts to be established at trial;

c.   Costs associated with this action; and

d.   Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT XII
### (TORTIOUS INTERFERENCE
### NorthStream vs. Rizzo)

154.   NorthStream re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

155.   As more specifically alleged in paragraphs 27-28, 30, and 53-55, above, NorthStream had advantageous contractual and business relationships with Celebration Church, of which Rizzo was aware.

156.   As more specifically alleged in paragraph 76, above, NorthStream had advantageous contractual and business relationships with Honey Lake Farms, Honey Lake Clinic, and AWKNG, of which Rizzo was aware

157.   As alleged in paragraphs 31-50, 56-68, and 78-99, Rizzo, directly and through others acting at his direction and under his control, including Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, intentionally and unjustifiably interfered with NorthStream advantageous contractual and business relationships with Celebration Church and Honey Lake Farms, Honey Lake Clinic, and AWKNG, as a direct and proximate result of which, NorthStream suffered substantial economic damages in amounts to be proven at trial.

158.    Rizzo's actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure NorthStream and cause it substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, Rizzo intentionally pursued such course of conduct, resulting in injury and damages to NorthStream; and/or were committed in conscious disregard of NorthStream's rights.

WHEREFORE, Plaintiff, NorthStream, demands judgment against Defendant, Dino Rizzo, awarding:

    a.    Compensatory damages in appropriate amounts to be established at trial;

    b.    Punitive damages in appropriate amounts to be established at trial;

    c.    Costs associated with this action; and

    d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT XIII
### (TORTIOUS INTERFERENCE
### Weems Group vs. ARC)

159.    Weems Group re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

160.    As more specifically alleged in paragraph 29, above, Weems Group had an advantageous contractual and business relationship with and invested in NorthStream, of which ARC was aware.

44

161. As alleged in paragraphs 31-5056-68, and 78-100, ARC, through its agents, Hodges, Rizzo, and Siebeling, and others acting at their direction or under their control, intentionally and unjustifiably interfered with Weems Group's advantageous contractual and business relationships with NorthStream a, as a direct and proximate result of which, Weems Group suffered substantial economic damages in amounts to be proven at trial.

162. ARC's actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Weems Group and cause them substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, ARC intentionally pursued such course of conduct, resulting in injury and damages to Weems Group; and/or were committed in conscious disregard of Weems Group's rights.

WHEREFORE, Plaintiff, Weems Group, demands judgment against Defendant, Association of Related Churches, Inc., awarding:

a.   Compensatory damages in appropriate amounts to be established at trial;

b.   Punitive damages in appropriate amounts to be established at trial;

c.   Costs associated with this action; and

d.   Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT XIV
## (TORTIOUS INTERFERENCE
## Weems Group vs. Hodges)

163.   Weems Group re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

164.   As more specifically alleged in paragraph 29, above, Weems Group had an advantageous contractual and business relationship with and invested in NorthStream, of which Hodges was aware.

165.   As alleged in paragraphs 51-30, 56-68, and 78-100, Hodges, directly and through others acting at his direction and under his control, including Rizzo, Siebeling, Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, intentionally and unjustifiably interfered with Weems Group's advantageous contractual and business relationships with NorthStream, as a direct and proximate result of which, Weems Group suffered substantial economic damages in amounts to be proven at trial.

166.   Hodges' actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Weems Group and cause it substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, Hodges intentionally pursued such course of conduct, resulting in injury and damages to Weems Group; and/or were committed in conscious disregard of Weems Group's rights.

WHEREFORE, Plaintiff, Weems Group, demand judgment against Defendant, Chris Hodges, awarding:

a.    Compensatory damages in appropriate amounts to be established at trial;

b.    Punitive damages in appropriate amounts to be established at trial;

c.    Costs associated with this action; and

d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

### COUNT XV
### (TORTIOUS INTERFERENCE
### Weems Group vs. Rizzo)

167.    Weems Group re-alleges and incorporate Paragraphs 1 through 101, as if fully stated herein.

168.    As more specifically alleged in paragraph 29, above, Weems Group had advantageous contractual and business relationships with and invested in NorthStream, of which Rizzo was aware.

169.    As alleged in paragraphs 31-50, 56-68, and 78-100, above, Rizzo, directly and through others acting at his direction and under his control, including Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, intentionally and unjustifiably interfered with Weems Group advantageous contractual and business relationships with Celebration Church and NorthStream, as a direct and proximate result of which, Weems Group suffered substantial economic damages in amounts to be proven at trial.

170.    Rizzo's actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Weems Group and cause it substantial harm; committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result, and despite that knowledge, Rizzo intentionally pursued such course of conduct, resulting in injury and damages to Weems Group; and/or were committed in conscious disregard of Weems Group's rights.

WHEREFORE, Plaintiff, Weems Group, demands judgment against Defendant, Dino Rizzo, awarding:

a.    Compensatory damages in appropriate amounts to be established at trial;

b.    Punitive damages in appropriate amounts to be established at trial;

c.    Costs associated with this action; and

d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT XVI
### (CONSPIRACY
### Weems vs. Hodges and Rizzo)

171.    S. Weems and K. Weems re-allege and incorporate Paragraphs 1 through 101, and Counts II and III, above, as if fully stated herein.

172.    As more specifically alleged in Counts II and III, above, S. Weems and K. Weems had advantageous contractual and business relationships with Celebration Church, of which Hodges and Rizzo were aware.

173.    As alleged in paragraphs 47, 57, and 101, above, Hodges and Rizzo expressly or tacitly agreed and conspired with one another and others, including Siebeling, Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, to intentionally and unjustifiably interfere with S. Weems and K. Weems advantageous contractual and business relationships with Celebration Church.

174.    As alleged in paragraphs 31-50, 56-68, and 78-100, above, Hodges and Rizzo each committed overt acts in pursuance and furtherance of their conspiracy.

175.    In doing so, Hodges and Rizzo  agreed and conspired to do an unlawful act or a lawful act by unlawful means.

176.    As a direct and proximate result, S. Weems and K. Weems suffered damages in amounts to be proven at trial.

177.    Hodges' and Rizzo's 'actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure S. Weems and K. Weems and cause them substantial harm; were committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage to S. Weems and K. Weems would result, and despite that knowledge, and they intentionally pursued their course of conduct, resulting in injury and damages to S. Weems and K. Weems; and/or were committed in conscious disregard of the S. Weems and K. Weems rights.

WHEREFORE, Plaintiffs, S. Weems and K. Weems, demand judgment against Defendants, Chris hodges and Dino Rizzo, awarding:

a.     Compensatory damages in appropriate amounts to be established at trial;

b.     Punitive damages in appropriate amounts to be established at trial;

c.     Costs associated with this action; and

d.     Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

### COUNT XVII
### (CONSPIRACY
### Celebration Global vs. Hodges and Rizzo)

178.    Celebration Global re-alleges and incorporates Paragraphs 1 through 101, and Counts V and VI, above, as if fully stated herein.

179.    As more specifically alleged in Counts V and VI, above, Celebration Global had advantageous contractual and business relationships with Celebration Church, of which Hodges and Rizzo were aware.

180.    As alleged in paragraphs 47, 57, and 101, above, Hodges and Rizzo expressly or tacitly agreed and conspired with one another and others, including Siebeling, Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, to intentionally and unjustifiably interfere with Celebration Global 's advantageous contractual and business relationships with Celebration Church.

181.    As alleged in paragraphs 31-50, 56-68, and 78-100, above, Hodges and Rizzo each committed overt acts in pursuance and furtherance of their conspiracy.

182.    In doing so, Hodges and Rizzo  agreed and conspired to do an unlawful act or a lawful act by unlawful means.

183.    As a direct and proximate result, Celebration Global suffered damages in amounts to be proven at trial.

184.    Hodges' and Rizzo's 'actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Celebration Global and cause it substantial harm; were committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage to Celebration Global would result, and despite that knowledge, and they intentionally pursued their course of conduct, resulting in injury and damages to Celebration Global; and/or were committed in conscious disregard of the Celebration Global 's rights.

WHEREFORE, Plaintiff, Celebration Global, demands judgment against Defendants, Chris Hodges and Dino Rizzo, awarding:

a.    Compensatory damages in appropriate amounts to be established at trial;

b.    Punitive damages in appropriate amounts to be established at trial;

c.    Costs associated with this action; and

d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT XVIII
## (CONSPIRACY
### Honey Lake Farms vs. Hodges and Rizzo)

185.    Honey Lake Farms re-alleges and incorporates Paragraphs 1 through 101, and Counts VIII and IX, above, as if fully stated herein.

186.    As more specifically alleged in Counts VIII and IX, above, Honey Lake Farms had advantageous contractual and business relationships with Celebration Church, Surratt, Robertson, Wildwood Ranch, and Maura, of which Hodges and Rizzo were aware.

187.    As alleged in paragraphs 47, 57, and 101, above, Hodges and Rizzo expressly or tacitly agreed and conspired with one another and others, including Siebeling, Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, to intentionally and unjustifiably interfere with Honey Lake Farm's advantageous contractual and business relationships with Celebration Church, Surratt, Robertson, Wildwood Ranch, and Maura.

188.    As alleged in paragraphs 31-50, 56-68, and 78-100, above, Hodges and Rizzo each committed overt acts in pursuance and furtherance of their conspiracy.

189.    In doing so, Hodges and Rizzo  agreed and conspired to do an unlawful act or a lawful act by unlawful means.

190.    As a direct and proximate result, Honey Lake Farms suffered damages in amounts to be proven at trial.

191.    Hodges' and Rizzo's 'actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Honey Lake Farms and cause it substantial harm; were committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage to Honey Lake Farms  would result, and despite that knowledge, and they intentionally pursued

their course of conduct, resulting in injury and damages to Honey Lake Farms; and/or were committed in conscious disregard of the Honey Lake Farms' rights.

WHEREFORE, Plaintiff, Honey Lake Farms, demands judgment against Defendants, Chris Hodges and Dino Rizzo, awarding:

a.   Compensatory damages in appropriate amounts to be established at trial;

b.   Punitive damages in appropriate amounts to be established at trial;

c.   Costs associated with this action; and

d.   Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT XIX
### (CONSPIRACY
### NorthStream vs. Hodges and Rizzo)

192.   NorthStream re-alleges and incorporate Paragraphs 1 through 101,and Counts XI and XII, as if fully stated herein.

193.   As more specifically alleged in Counts XI and XII, above, NorthStream had an advantageous contractual and business relationships with Celebration Church, Honey Lake Farms, Honey Lake Clinic, and AWKNG, of which Defendants were aware.

194.   As alleged in paragraphs 47, 57, and 101, above, Hodges and Rizzo expressly or tacitly agreed and conspired with one another and others, including Siebeling, Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, to intentionally and unjustifiably interfere with NorthStream's

advantageous contractual and business relationships with Celebration Church, Honey Lake Farms, Honey Lake Clinic, and AWKNG.

195.    As alleged in paragraphs 31-50, 56-68, and 78-100, above, Hodges and Rizzo each committed overt acts in pursuance and furtherance of their conspiracy.

196.    In doing so, Hodges and Rizzo  agreed and conspired to do an unlawful act or a lawful act by unlawful means.

197.    As a direct and proximate result, NorthStream suffered damages in amounts to be proven at trial.

198.    Hodges' and Rizzo's 'actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure NorthStream and cause it substantial harm; were committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage to NorthStream would result, and despite that knowledge, and they intentionally pursued their course of conduct, resulting in injury and damages to NorthStream; and/or were committed in conscious disregard of the NorthStream's rights.

WHEREFORE,  Plaintiff,  NorthStream,  demands  judgment  against Defendants, Chris Hodges and Dino Rizzo, awarding:

a.    Compensatory damages in appropriate amounts to be established at trial;

b.    Punitive damages in appropriate amounts to be established at trial;

c.    Costs associated with this action; and

d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## COUNT XX
### (CONSPIRACY
### Weems Group vs. Defendants)

199.   Weems Group re-alleges and incorporate Paragraphs 1 through 101, and Counts XIV and XV, as if fully stated herein.

200.   As more specifically alleged in Counts XIV and XV, above, Weems Group had an advantageous contractual and business relationship with NorthStream, of which Defendants were aware.

201.   As alleged in paragraphs 47, 57, and 101, above, Hodges and Rizzo expressly or tacitly agreed and conspired with one another and others, including Siebeling, Timberlake, Cormier, Sullivan, Middlebrook Goodspeed, and/or Wedekind and Ahr, to intentionally and unjustifiably interfere with Weems Group's advantageous contractual and business relationships with NorthStream.

202.   As alleged in paragraphs 31-50, 56-68, and 78-100, above, Hodges and Rizzo each committed overt acts in pursuance and furtherance of their conspiracy.

203.   In doing so, Hodges and Rizzo  agreed and conspired to do an unlawful act or a lawful act by unlawful means.

204.   As a direct and proximate result, Weems Group suffered damages in amounts to be proven at trial

205.   Hodges' and Rizzo's actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Weems Group and cause them substantial harm; were committed with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage to

Weems Group would result, and despite that knowledge, and they intentionally pursued their course of conduct, resulting in injury and damages to Weems Group; and/or were committed in conscious disregard of Weems Group's rights.

WHEREFORE, Plaintiff, Weems Group, demands judgment against Defendants, Chris Hodges and Dino Rizzo, awarding:

a.    Compensatory damages in appropriate amounts to be established at trial;

b.    Punitive damages in appropriate amounts to be established at trial;

c.    Costs associated with this action; and

d.    Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Shane B. Vogt*
Shane B. Vogt – FBN 257620
E-mail:  svogt@tcb-law.com
David A. Hayes - FBN 096657
E-mail:  dhayes@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 834-9191
Fax: (813) 443-2193
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on March 29, 2024, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

/s/ Shane B. Vogt            
Attorney
