UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHARLES S. WEEMS, IV, an individual,
KERRI WEEMS, an individual,                    Case No.: 3:23-cv-00811-MMH-LLL
and CELEBRATION
GLOBAL, INC., a Florida not for profit
corporation, HONEY LAKE FARMS,
INC., a Florida not for profit corporation,
NORTHSTREAM MANAGEMENT
GROUP, LLC, a Florida limited liability
company, and WEEMS GROUP, LLC,
a Florida limited liability company,

       Plaintiffs,

v.

ASSOCIATION OF RELATED
CHURCHES, a Texas not-for-profit
corporation, CHRIS HODGES, and
individually, DINO RIZZO,

       Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
OR, ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM**

      Plaintiffs, Charles S. Weems, IV, Kerry Weems, Celebration Global, Inc.,

Honey Lake Farms, Inc., Northstream Management Group, LLC and Weems Group,

LLC (collectively, "Plaintiffs"), by counsel and pursuant to Local Rule 3.01, respond

in opposition to the Motion to Dismiss for Lack of Subject Matter Jurisdiction or,

Alternatively, for Failure to State a Cause of Action [Doc. 52] ("Motion") filed by

Defendants, Association of Related Churches ("ARC"), Chris Hodges ("Hodges"), and Dino Rizzo ("Rizzo"), (collectively, "Defendants"), as follows:

## INTRODUCTION

Ecclesiastical abstention does not bar subject matter jurisdiction over this case, particularly at the pleadings stage.  Plaintiffs' claims are **not** based on any questions of religious doctrine and they are **not** against parties who are part of the same church or religious institution.  Defendants are trying to use religion as a sword, not a shield, to immunize themselves from tort liability and deprive Plaintiffs of their fundamental constitutional rights to freedom of religion and petition for the redress io grievances.  Defendants' alternative contention that Weems Group and NorthStream fail to state actionable causes of action for tortious interference and conspiracy is equally flawed.  Weems Group and NorthStream adequately and plausibly alleges facts establishing each of the required elements of their claims.

Defendants' Motion prematurely and without sufficient factual or legal support seeks to permanently deprive Plaintiffs of their only means of redress for the wrongs Defendants committed against them.  It should be denied.

## DEFENDANTS' "FACIAL"
## SUBJECT MATTER JURISDICTION CHALLENGE

Defendants' Motion raises a "facial" challenge to subject matter jurisdiction based on ecclesiastical abstention (*see* Motion at p.3, n.1).  The burden is on the party invoking ecclesiastical abstention to establish that it applies:  *Flynn v. Estevez*, 221 So.3d 1241, 1247 (Fla. 1st DCA 2017) (a "church or religious organization seeking to avoid

application of a neutral state law must first show why application of the law requires adjudication of an ecclesiastical matter." (*citing Malichi v. Archdiocese of Miami*, 945 So.2d 526, 529 (Fla. 1st DCA 2006) and *Malicki v. Doe*, 814 So.2d 347,360 (Fla. 2002)).

This Court has already determined that ecclesiastical abstention can be raised under Rule 12(b)(1). *See* Doc. 39 at p. 6 n.6. But having chosen this procedural mechanism to contest jurisdiction, Defendants are necessarily subject to its constraints.

***First***, Defendants necessarily admitted the truth of **all** of Plaintiffs' factual allegations. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). They cannot refute any facts nor ignore facts that defeat the application of the abstention doctrine.

Defendants acknowledge that this case involves non-religious tort claims between religiously unaffiliated parties that happened to occur within the context of a church to which Defendants did not belong (Motion at pp. 3-9). They also acknowledge their commercial interests, economic motives ,desire to eliminate Plaintiffs as competitors and perceived threats to Defendants' business model. and the non-religious object of their conspiracy (Motion at pp. 3-9), but omit some key details and allegations, such as Defendants' lack of "doctrinal" or "ministerial" control over Celebration Church (Doc. 49 ¶¶ 5-6).

Nevertheless, Defendants to try to transform this case into an "ecclesiastical" dispute by bootstrapping themselves to abstention arguments raised by Plaintiffs' former church and its principals in related litigation (Motion at pp. 8-9) and to

Celebration Church's investigation and certain "biblical" findings in the resulting Report (Id. at pp. 6-7). However, Defendants omit that this false and defamatory Report was published publicly outside the church after Plaintiffs were no longer members and to coincide with ARCS's national conference (Doc. 49 ¶¶ 91-98), and used in support of the false and defamatory letter to TurnCoin (Doc. 49 ¶¶ 99-100).

**Second**, Defendants cannot ask this Court to make impermissible factual determinations about the elements of Plaintiffs' claims and merits of this case; such as their argument that abstention is necessary based on causation and damages issues (*see* Motion at pp. 14-17), which necessarily requires the Court to make factual determinations. *Grosharev v. Wilson's Limited, Inc.*, 2010 WL 11507086, *1 at n. 3 (M.D. Fla. Jan. 15, 2010) ("the district court should only rely on Rule 12(b)(1) [i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action."); *Minker v. Baltimore Annual Conf. of United Methodist Church*, 894 F.2d 1354, 1360-1361 (D.C. Cir. 1990) (arguments seeking dismissal based on abstention involving causation and damages issues are factual in nature and not appropriate for the dismissal stage).

## ARGUMENT

As a preliminary matter, it is important at the outset to recognize that religious freedom is not the only fundamental constitutional right at issue in this case. The First Amendment right to petition the government for a redress of grievances includes a right of access to the courts and is "[o]ne of the most precious of the liberties safeguarded by the Bill of Rights" and "high in the hierarchy of First Amendment

values." *Bank of Jackson Cty. v. Cherry*, 980 F.2d 1362, 1370 (11th Cir. 1993); *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1954-1955 (2018). This right is so fundamental that it is "implied by the very idea of a government, republican in form." *BK & E Const. Co. v. NLRB*, 536 U.S. 516, 524-525 (2002). Defendants' Motion seeks to deprive Plaintiffs of this fundamental right and, if granted, would leave Plaintiffs without any recourse against Defendants for their tortious misconduct.

Conversely, as the Supreme Court recognized in *Cantwell v. State of Connecticut*, 310 U.S. 296, 303-304 (1940), freedom of religion is not synonymous with the freedom to act:

> The constitutional inhibition of legislation on the subject of religion has a double aspect. On the one hand, it forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship. Freedom of conscience and freedom to adhere to such religious organization or form of worship as the individual may choose cannot be restricted by law. On the other hand, it safeguards the free exercise of the chosen form of religion. Thus, the Amendment embraces two concepts—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society.

As explained below, this case does not in any way implicate Defendants' religious beliefs or freedoms. It merely seeks to hold them liable for their tortious acts.

## I.    This Lawsuit is Not Barred by the Ecclesiastical Abstention Doctrine

As this Court already recognized, "pursuant to the ecclesiastical abstention doctrine, 'civil courts lack jurisdiction to entertain disputes involving church doctrine and polity' unless the dispute can be resolved 'under neutral principles' of law without

'consideration of religious doctrinal matters.'"  See Doc. 39 at pp. 4-5 (citing See *Rutland v. Nelson*, 857 F. App'x 627, 628 (11th Cir. 2021) (citing *Crowder v. S. Baptist Convention*, 828 F.2d 718, 727 (11th Cir. 1987) and *Jones v. Wolf*, 443 U.S. 595, 602–03 (1979)); see also *Flynn*, 221 So.3d at 1245 ("The ecclesiastical abstention doctrine prevents civil [or secular] courts from deciding disputes requiring an adjudication of 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required.'"); *Watson v. Jones*, 80 U.S. 679, 733 (1871); *Malichi*, 945 So.2d at 529.

"The doctrine precludes secular courts from becoming arbiters of religious matters and the circumvention or erosion of church doctrine by those who disagree with it." *Flynn*, 221 So.3d at 1246.  It "has its core application in cases where a court intrudes on a church's autonomous management of its own internal affairs and property, thereby either burdening or inhibiting the exercise of religious freedom (free exercise clause) or fostering an excessive government entanglement with religion (establishment clause)." *Id*.

The abstention inquiry is twofold: does the case require the court to excessively entangle itself in (1) church doctrine or (2) church polity.  *Rutland*, 857 F. App'x at 628; *Myhre v. Seventh-Day Adventist Church Reform Movement American Union International Missionary Society*, 719 Fed. App'x 926, 928 (11th Cir. 2018) (citing *Jones*, 443 U.S. at 602).  When a case involves tortious behavior that does not involve church polity or doctrine, "judicial abstention is nonexistent and the theory does not apply."

*Lady v. First Baptist Church of Moore*, 2008 WL 5539161 (D. Ok. 2008) (citing *Guinn v. Church of Christ of Collinsville*, 775 P.2d 766 (Okla. 1989)). Here, the claims alleged in the First Amended Complaint to not implicate church doctrine or polity. Defendants certainly failed to meet their burden to establish otherwise.

Even if this were not the case, abstention still would not be required because Plaintiffs claims can be resolved by the application of neutral principles of law. *Flynn*, 221 So.3d at 1247; *Springhill Missionary Baptist Church, Inc. v. Mobley*, 251 So.3d 281, 283 (Fla. 1st DCA 2018); *Auguste v. Hyacinthe*, 346 So.3d 67, 70 (Fla. 4th DCA 2022); *Mammon v. SCI Funeral Services of Fla., Inc.*, 193 So.3d 980, 984 (Fla. 4th DCA 2016)).

## A.    Plaintiffs' Claims Are Not Based on Church Doctrine

Under the First Amendment, secular courts cannot decide issues of religious doctrine or beliefs. *Crowder*, 828 F.2d at 722. Thus, abstention was required in cases such as *Mammon v. SCI Funeral Servs. Of Florida, Inc.*, 193 So.3d 980 (Fla. 4th DCA 2016) (claims at issue charged the defendant funeral home with conduct that violated "Jewish burial customs and traditions"), *Napolitano v. St. Jospeh Catholic Church*, 308 So.3d 274, 279 (Fla. 5th DCA 2020) (claims at issue would require a court to probe into religious canon Law"), and *Myhre*, 719 Fed. App'x at 928-929 (claims required court to "determine whether [church] exercised [its] religion in accordance with the [ ] doctrine, faith, custom, and rules of governance of the church"), because the claims at issue required the interpretation and application of religious law. Here, however, Plaintiffs' claims do not accuse Defendants of violating any religious doctrine, custom,

or tradition. To the contrary, Plaintiffs allege the absence of any such doctrinal relationship between the parties (Doc. 49 at ¶¶ 35-42).

Defendants have not argued and certainly have not established that **their** tortious acts require this Court to delve into any religious doctrine or were committed in accordance with any sincerely held religious beliefs. Likewise, Defendants do not argue and failed to prove with respect to **their** tortious acts that "there is a conflict between conduct that is required by law and conduct that is prohibited by religious principles" *Malicki,* 814 So.2d at 360. There is no such conflict because the parties to this case are not members of the same religion or religious institution.

Even if the Court were to go beyond the trot claims actually at issue here and consider the agreements and promises with which Defendants tortiously interfered, even those are governed by secular, not canonical law. Defendants have not argued or established that any "canons" or religious doctrine controlled these agreements and promises. And churches are "always free to burden [their] activities voluntarily through contracts, and such contracts are fully enforceable in civil court" and courts "may always resolve contracts governing 'the manner in which churches own property, hire employees, or purchase goods.'" *Minker*, 894 F.2d at 1359 (citing *Watson*, 80 U.S. at 714 and *Jones v. Wolf,* 443 U.S. 595, 606 (1979)); *Goodman v. Temple Shir Ami, Inc.*, 712 So.2d 775, 777 (Fla. 3d DCA 1998) (reversing dismissal of a Rabbi's breach of contract claim for unpaid compensation because it "does not create excessive entanglements with religious beliefs"); *St. Brendan High School, Inc. v. Neff,* 283 So.3d

399, 402 (Fla. 3d DCA 2019) (denying petition for writ of prohibition based on ecclesiastical abstention because the plaintiffs' breach of contract and tort claims were more "secular/contractual" in nature rather than ecclesiastical).

### B.    Plaintiffs' Claims Are Not based on Church Polity

Plaintiffs' tortious interference and conspiracy claims in this case also do not require this Court to interfere in any matters of "internal church governance" nor "church polity and church administration." *Napolitano*, 308 So.3d at 278 (citing *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 710 (1976)). Rather, Plaintiffs explicitly allege that there are no such governance, polity or administrative relationships between Plaintiffs and Defendants (Doc. 49 at ¶¶ 35-42). Defendants cannot overcome this fundamental flaw in their argument by conflating themselves Celebration Church. They are not one in the same.

**This** case (as opposed to some aspects of related litigation) does **not** involve opposing factions of members of the same congregation. Plaintiffs and Defendants are not even members of the same church. Thus, this Court is **not** being asked to "put[] the enforcement power of the state behind a particular religious faction." *Crowder*, 828 F.2d at 721. Likewise, the claims at issue in **this** case do **not** require this Court to reject any "decisions of religious organizations regarding the governance and discipline of their members." *Rutland*, 857 Fed App's at 628; *Eglise Baptiste Bethanie De Ft, Lauderdale, Inc. v. Seminole Tribe of Florida*, 824 Fed. App's 680, 683 (11th Cir. 2020). Simply stated, there are no religious doctrines at issue in this case.

Notably, **every** case cited by Defendants involving an analysis of whether abstention is required based on the issue of church polity involves a dispute between parties **who were members of the same church or religious institution**. This is not surprising because the First Amendment's protection of religious freedom works both ways.

Everyone has the "inalienable right" under the First Amendment to the U.S. Constitution and Article I Section 3 of the Florida Constitution to the free exercise of their religion "according to the dictates of their own consciences." *Beckwith Elec. Co., Inc. v. Sebelius*, 960 F.Supp.2d 1328, 1340 (M.D. Fla. 2013); *Torcaseo v. Watkins*, 367 U.S. 488, 495 (1961). "The constitutional freedom to question, to doubt, and to change one's convictions [is] protected by the Free Exercise and Establishment Clauses." *Zummo v. Zummo*, 574 A.2d 1130, 1146 (Pa. Super. 1990). "Just as freedom of worship is protected by the First Amendment, so also is the liberty to recede from one's religious allegiance." *Guinn*, 775 P.2d at 776. "One of the fundamental purposes of the First Amendment is to protect the people's right to worship as they choose. Implicit in the right to choose freely one's own form of worship is the right of unhindered and unimpeded withdrawal from the chosen form of worship." *Id.* (emphasis added); see also *Bixler v. Super. Ct. of California, Cty. of L.A.*, 2022 WL 167792 (Cal. Sup. Jan. 19, 2022). Applying the abstention doctrine to claims asserted amongst parties who are not members of the same church or religious institution violates this well-established First Amendment religious freedom.

This church membership aspect of ecclesiastical abstention is also important because, as the Court noted in its prior Order [Doc. 39 at p. 7 n. 9] and as Plaintiffs allege [Doc. 49 at ¶¶ 91-99], Defendants' tortious conduct includes acts committed **<u>after</u>** Plaintiffs were no longer church members and **<u>outside</u>** the church.  Applying the abstention doctrine to this type of tortious conduct also violates First Amendment religious freedom; which is why numerous courts have held that torts committed against **<u>former</u>** church members and **<u>outside</u>** the setting of the church do not require abstention.  *Guinn*, 775 P.2d at 774-781; *Hadnot v. Shaw*, 826 P.2d 978, 988 (Okla. 1992) ("the church has no power over those who live outside of the spiritual community"); *Gorman v. Swaggart*, 524 So.2d 915, 921-922 (4th Cir. La. 1988) ("by taking their accusations outside their church, the defendants have also taken themselves outside the scope of the First Amendment's protection and, to that extent, have exposed themselves to the jurisdiction of the civil courts"); *Doe v. First Presbyterian Church U.S.A. of Tulsa*, 421 P.3d 284, 290 (2017) (citing *Guinn*, 775 P.2d at 776); *Ausley v. Shaw*, 193 S.W.3d 892, 896 (Tenn. Ct. App. 2005) (statements made to people outside a church are not protected by the church autonomy rule); *Kliebenstein v. Iowa Conference of United Methodist Church*, 663 N.W.2d 404, 406-07 (Iowa 2003) (First Amendment did not bar a church member's defamation claim based on a letter that was "mailed not only to members of the congregation but also to other persons living in the Shell Rock community."); *Turner v. Church of Jesus Christ of Latter-Day Saints*, 18 S.W.3d 877, 896 (Tex. App.—Dallas 2000, pet. denied) (First Amendment did not

bar a church member's defamation claim arising from the church's disclosure of information regarding his mental condition outside the church, including to his grandparents.); *Lipscombe v. Crudup*, 888 A.2d 1171, 1173 & n.2. (D.C. 2005) (First Amendment did not bar a church member's defamation claim in part because the "statement was made 'to the public in an open meeting'" and that "was not part of any church service and members from the public, including accountants, heard the statement."); *Bowie v. Murphy*, 624 S.E.2d 74, 76–77, 79–80. (Va. 2006); *Banks v. St. Matthew Baptist Church*, 750 S.E.2d 605, 607–08 (S.C. 2013); *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 349 (5th Cir. 2020); *Drevlow v. Lutheran Church*, 991 F.2d 468, 471–72 (8th Cir. 1993); *Tubra v. Cooke*, 225 P.3d 862, 864 (Or. 2010); *Connor v. Archdiocese of Phila.*, 975 A.2d 1084, 1107 (Pa. 2009); *McAdoo v. Diaz*, 884 P.2d 1385, 1390–91 (Alaska 1994).

There is a complete absence of any religious relationship between Plaintiff and Defendants. The claims at issue here do not involve any religious doctrine or polity, and they are largely based on tortious conduct occurring after Plaintiffs were Celebration Church members and outside the confines of Celebration Church. And Defendants have not offered any argument (let alone proof) that their tortious acts were committed in accordance with any religious doctrine or law. Their request for this Court to dismiss Plaintiffs' claims with prejudice based on ecclesiastical abstention is contrary to the law and violates Plaintiffs' own fundamental First Amendment rights. It should be rejected.

### C. Plaintiffs' Claims Can Be Decided Based on Neutral Principles of Law

Even if this were an ecclesiastical dispute (which it is not), abstention still is not required because Plaintiffs' claims can be decided based on neutral principles of law. The religious freedom guaranteed by the First Amendment is not violated by exercising jurisdiction over tort claims that can be resolved through the application of "neutral principles" of tort law, particularly where there is no allegation that the conduct in question was part of a sincerely held religious belief or practice. *Malicki,* 814 So.2d at 358; *Bilbrey,* 91 So.3d at 891; *Flynn*, 231 So.3d at 1245-1246; *Diocese of Palm Beach, Inc. v. Gallagher*, 249 So.2d 657, 662 (4ᵗʰ DCA 2018); *Springhill*, 251 So.3d at 283; *World of Life Ministry, Inc. v. Miller*, 778 So.2d 360, 362-363 (Fla. 1ˢᵗ DCAS 2001); *Bendross v. Readon*, 89 So.3d 258, 259-260 (Fla. 3d DCA 2012).

In deciding whether neutral principles of law can be applied to a dispute, courts are required to consider "the nature of the dispute" and whether it can be decided on without "intruding upon, interfering with, or deciding church doctrine." *Flynn*, 221 So.3d at 1247. Importantly, where there are aspects of a claim that can be adjudicated without resorting to, applying or interpreting church doctrine, those aspects of the claim should be litigated. *See e.g., House of God Which is the Church of the Living God, The Pillar and Ground of the Truth Without Controversy, Inc. v. White*, 792 So.2d 491, 494 (Fla. 4th DCA 2001); *Goodman v. Temple Shir Ami, Inc.*, 712 So.2d 775, 777 (Fla. 3d DCA 1998). A defendant "seeking to avoid the application of neutral state law must first show why application of the law requires the adjudication of an

ecclesiastical matter." *Malichi*, 945 So.2d at 530 (*citing Malicki*, 814 So.2d at 354). Here, Defendants failed to make such a showing.

Several courts have determined that tort claims similar to those at issue here can be decided based on neutral principles of law. *See e.g.*, *Bilbrey*, 91 So.3d at 890-891; *LeGrande v. Emmanuel*, 889 So.2d 991, 994 (Fla. 3d DCA 2004); *Mendes v. da Silva*, 980 So.2d 631, 632 (Fla. 2d DCA 2008). And at least one court determined in a similar factual situation that abstention was not required in a case asserting claims involving a "self-governing group of separate autonomous churches." *McRaney v. North American Mission Board of the Southern Baptist Convention*, 304 F.Supp.3d 514, 521 (N.D. Miss. 2018) (denying motion to dismiss based where case was not "one which, on the face of the complaint, involves a review of '*internal* policies, *internal* procedures, or *internal* decisions of the church' *[but rather]* "*external* actions toward separate autonomous organizations, rather than internal decisions").

Moreover, power struggles within "congregational" churches such as Celebration are governed by the same neutral laws that govern other voluntary associations. *Epperson*, 58 So.2d at 152 (Fla. 1952); *McMillan*, 153 So.2d at 342; *Austin v. Mt. Zion Primitive Baptist Church of West Palm Beach*, 165 So.2d 412, 414 (Fla. 1st DCA 1964); *Watson*, 80 U.S. at 714; *Matthews v. Adams*, 520 So.2d 334, 335 (Fla. 5th DCA 1988) ("When members of a church decide[] to incorporate their body under the laws of the state of Florida they submit[] themselves to the jurisdiction of the state court in all matters of a corporate nature.").

Such "schisms" in congregational churches must be determined by ordinary principles governing voluntary associations. *Watson,* 80 U.S. at 713-714 (emphasis added); *Epperson*, 58 So.2d at 152 (Fla. 1952) ("When a 'faction' of the church arrogates authority to itself, disrupts the organization and sets at naught well-defined rules of church order, there is no course left for those who desire their rights settled through orderly processes but resort to the courts.") The ouster of Pastor Weems and seizure of control over Celebration Church through acts committed in violation of its Bylaws and Chapter 617 is rather fittingly described as "a 'faction' of the church arrogating authority to itself, disrupt[ing] the organization and set[ting] at naught well-defined rules of church order." *Epperson*, 58 So.2d at 152. Certainly, church outsiders responsible for engineering and controlling such a coup can be held responsible for their acts under neutral principles of tort law.

Consistent with the principles established in *Watson* and *Epperson*, numerous courts have held that exercising jurisdiction is proper in similar disputes involving members of congregational churches. *Bendross v. Readon*, 89 So.3d 258, 260 (Fla. 3d DCA 2012) (ecclesiastical abstention doctrine did not bar a suit alleging the defendants, acting without authority, attempted to remove specific board members from the church organization in derogation of the requirements of Chapter 617, *Florida Statutes*); *Ellerker*, 353 So.2d at 205 (in cases involving a "dispute between two factions of a congregational, as distinguished from a hierarchical church" courts have "the right, indeed the duty, of applying and enforcing sterile principles of property law"); *McMillan*, 153 So.2d at 340; *Word of Life Ministry, Inc. v. Miller,* 778 So.2d 360, 362 (Fla.

1st DCA 2001), (dispute between a congregational church and its members over corporate assets and the propriety of corporate dissolution involved only neutral legal principles and therefore could be judicially resolved); *Hemphill*, 447 So.2d at 977 (affirming exercise of subject matter jurisdiction where dispute turned on whether a minister's discharge was accomplished in accordance with the corporate charter)

### D.    Defendants' Alleged Tortious Conduct is Excepted from the Abstention Doctrine

Even if Defendants could somehow establish (contrary to the facts and law) that abstention should apply in this case, it still should not be at this stage of the proceeding because an exception to its application exists for fraud and collusion.  In *Serbian Orthodox Diocese v. Milivojevich*, the U.S. Supreme Court noted the possibility of this abstention exception for fraud or collusion "when church tribunals act in bad faith for secular purposes." 426 U.S. 696, 713 (1976).  One court evaluating this exception described it as involving situations where a defendant "engaged in a bad faith attempt to conceal a secular act behind a religious smokescreen."  *Moon v. Moon*, 833 Fed. App'x 876, 880 (2d Cir. 2020).  This entire case is predicated on a bad faith attempt to conceal secular misconduct and use religion as a smokescreen to conceal economically-motivated tortious acts.  Plaintiffs' pleading demonstrates a plausible basis for the application of this exception, which Defendants have not overcome.

## II.    Counts X through XV and Counts XIX and XX state actionable claims

### A.    NorthStream and Weems Group State Actionable Claims for Tortious Interference.

"[T]o state a claim for tortious interference with a contract, a plaintiff must allege four elements: (1) the existence of a contract, (2) the defendant's knowledge thereof, (3) the defendant's intentional and unjustified procurement of a breach thereof; and (4) damages. *Soho Ocean Resort TRS, LLC v. Rutois*, 21-11392, 2023 WL 242350, at *2 (11th Cir. Jan. 18, 2023). "Similarly, to state a claim for tortious interference with a business relationship, a plaintiff must allege four elements: (1) the existence of a business relationship, (2) the defendant's knowledge thereof; (3) the defendant's intentional and unjustified interference there-with; and (4) damages." *Id.*

Defendants contend NorthStream and Weems Group fail to adequately allege advantageous contractual or business relationships, interference, and damages.  For the reasons explained below, these arguments fail.

### 1.    NorthStream and Weems Group identify specific advantageous business relationships with which Defendants interfered.

Defendants claim NorthStream does not allege advantageous contractual or business relationships (Motion, p. 20), but Plaintiffs' allege NorthStream "was formed and funded to . . . provide centralized and shared management services to Celebration Church and numerous other churches and related entities . . ." one of the corporate entities that "would house and fund Celebration Church's significant administrative and personnel operations . . ." and stood to benefit through "management services agreements with Honey Lake Farms, Honey Lake Clinic, and AWKNG, pursuant to

which NorthStream would have been paid management fees to provide management services for the operations at Honey Lake Farms and management services associated with launching RCD's." See Doc. 49 at ¶¶ 27-28, 76. The argument that NorthStream failed to allege legally sufficient business relationships with Celebration Church, Honey Lake Farms, Honey Lake Clinic, and AWKNG is simply wrong.

Defendants' contention that the alleged management services agreements are legally insufficient to support a claim because Plaintiffs do not allege the management services agreements were actually executed is also wrong. For purposes of a tortious interference claim, a "business relationship need not be evidenced by a contract, but it generally requires an understanding between the parties that would have been completed had the defendant not interfered." *Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001).

With respect to Weems Group, Defendants acknowledge that Plaintiffs alleged that "Weems Group invested approximately $450,000 in NorthStream" but suggest Weems Group's tortious interference claim should be dismissed because specific details about the nature of Weems Group's investment is "left to the imagination" (Motion, p. 23). Such detailed factual allegations are not required. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At this stage of the proceedings, Weems Group is not required to provide evidence of an actual agreement; but merely to plead facts that establish a business relationship. *See Henderson v. Todd Rhyne, Inc.*, 2019 WL 7567811, at *4 (M.D. Fla. 2019), *report and recommendation adopted*, 2020 WL 136520 (M.D. Fla. 2020)

18

(denying motion to dismiss tortious interference claim, stating that the plaintiff need not provide evidence of an actual agreement that would have been completed had the defendant not interfered). Weems Group's factual allegations concerning its business relationship with NorthStream are sufficient to support a tortious interference claim.

### 2.    NorthStream and Weems Group sufficiently allege misconduct, interference, and resulting damages.

Defendants also claim Plaintiffs fail to allege any intentional interference with NorthStream's or Weems Group's advantageous business relationships (Motion p. 21, 23), but this is also incorrect.  The First Amended Complaint alleges in detail how Defendants tortiously coordinated and directed the unlawful takeover of Celebration Church to sabotage the Missions Plan and eliminate Plaintiffs as competition and benefit Defendants' own business and financial interests; which destroyed Honey Lake Farms and eliminated NorthStream's sources of management fees, rendering Weems Group's investment in the Missions Plan worthless.  *See* Doc. 49 at ¶¶ 78-100. These allegations—which must be accepted as true and construed in Plaintiffs' favor, along with all reasonable inferences arising therefrom—are more than sufficient to demonstrate misconduct amounting to actionable interference with advantageous business relationships that caused NorthStream and Weems Group to suffer damages. *See Henderson v. Todd Rhyne, Inc.*, 2019 WL 7567811, at *4 (M.D. Fla. 2019), *report and recommendation adopted*, 2020 WL 136520 (M.D. Fla. 2020) (at the motion to dismiss stage, plaintiff "need not provide actual evidence of his damages . . . . Whether [plaintiff] has actually suffered damages . . . is one that should be left to the discovery

phase."); *Berkley Insurance Co. v. Banc of America Community Develop. Co., LLC*, 2024 WL 2267773 (Fla. 2d DCA May 17, 2024) (reversing dismissal of tortious interference and conspiracy claims for failure to state a cause of action).

### B.    NorthStream and Weems Group state actionable and valid claims for conspiracy.

A conspiracy claim rises and falls with its underlying tort claim, and for the reasons stated above Plaintiffs alleged actionable tortious interference claims and have therefore sufficiently pled claims for conspiracy.   See e.g. *Berkley Insurance Co.,* , 2024 WL 2267773 at *1; *Carroll v. TheStreet.com, Inc.*, 2012 WL 13134547, *7 (S.D. Fla. May 25, 2012).

WHEREFORE, Plaintiffs respectfully request that the Court deny Defendants Motion, require Defendants to answer the First Amended Complaint, and grant such other and further relief as the Court deems just and appropriate.

Dated: May 23, 2024.

/s/ Shane B. Vogt
Shane B. Vogt – FBN 257620
LEAD COUNSEL
E-mail:  svogt@tcb-law.com
David A. Hayes - FBN 096657
E-mail:  dhayes@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Tel:  (813) 834-9191
Fax: (813) 443-2193
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 23, 2024, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

<u>*/s/ Shane B. Vogt*</u>
Attorney