**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CHARLES S. WEEMS, IV, an individual, KERRI WEEMS, an individual, CELEBRATION GLOBAL, INC., a Florida not for profit corporation, HONEY LAKE FARMS, INC., a Florida not for profit corporation, NORTHSTREAM MANAGEMENT GROUP, LLC, a Florida limited liability company, and WEEMS GROUP, LLC, a Florida limited liability company,

    Plaintiffs,

v.                                 Case No. 3:23-cv-811-MMH-LLL

ASSOCIATION OF RELATED CHURCHES, a Texas not-for-profit corporation, CHRIS HODGES, individually, and DINO RIZZO, individually,

    Defendants.

## O R D E R

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss First Amended Complaint for Lack of Subject-Matter Jurisdiction (Doc. 52; Motion), filed on April 22, 2024. In the Motion, Defendants seek dismissal of Plaintiffs' First Amended Complaint and Demand for Jury Trial (Doc. 49; Amended Complaint) based on the ecclesiastical abstention doctrine. See Motion at 1. In

the alternative, Defendants seek dismissal of Counts X–XV, XIX, and XX, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)). Id. at 1–2. Plaintiffs filed a response in opposition to the Motion. See Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 56; Response), filed May 23, 2024.[1] Accordingly, this matter is ripe for review.

## I. Background[2]

Plaintiffs Charles Stovall Weems ("Pastor Weems") and Kerri Weems are co-founders of Celebration Church, see Amended Complaint ¶ 23, and until April 2022, Pastor Weems served as Celebration Church's senior pastor. Id. ¶ 93. In 2018, Pastor Weems decided that Celebration Church needed to reject "the modern church growth system," and shift its focus to "helping the poor, missionary work, equality, and simplifying the church by creating alternative revenue streams that would make the church less donation dependent." Id. ¶¶ 25–26. To this end, Pastor Weems "developed a missionary-focused plan that included establishing several corporate entities that collectively would house and fund Celebration Church's significant

---

[1] Plaintiffs also filed a Notice of Supplemental Authority (Doc. 57) on October 24, 2024.

[2] In considering the Motion, in which Defendants assert a facial challenge to the Court's jurisdiction, see Motion at 3 n.1, the Court must accept all factual allegations in the Amended Complaint as true. See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). As such, the facts recited here are drawn from the Amended Complaint and may well differ from those that ultimately can be proved.

administrative and personnel operations, quickly reduce expenses and Celebration Church's debt, and operate and fund the missionary work on which Pastor Weems wanted to focus[.]" Id. ¶ 27 (the "Missions Plan"). The corporate entities established to effectuate the Missions Plan include Plaintiffs Celebration Global, Inc., Honey Lake Farms, Inc., NorthStream Management Group, LLC, and Weems Group, LLC. See id. ¶¶ 28–29.

Defendant Association of Related Churches ("ARC") is a "cooperative of independent churches from different denominations[.]" Id. ¶ 31. "ARC is one of the largest church planting organizations in North America," and although "Celebration Church is not an ARC-planted church," it has "gratuitously donated approximately $150,000 to $200,000 per year to or for the benefit of ARC's church planting operations." Id. ¶¶ 33, 35, 36. Defendant Chris Hodges is ARC's co-founder, id. ¶ 39, Defendant Dino Rizzo is ARC's Executive Director, id. ¶ 45, and non-party John Siebeling is one of ARC's founding board members, id. ¶ 48.[3]

In 2019, Pastor Weems informed Rizzo that ARC's "focus on planting churches" was not in alignment with the Missions Plan, and that Celebration Church would only continue "to donate funds to ARC if they were earmarked for missionary work . . . rather than church growth[.]" Id. ¶ 52. Due to ARC

---

[3] Rizzo and Siebeling also served as "Overseer[s] at Celebration Church until September 2021[.]" Amended Complaint ¶¶ 46, 49.

having "financial and business interests" in the church growth movement it "knew that, if implemented, the Missions Plan posed a threat to" its business model. Id. ¶ 56. So ARC, through Hodges, Rizzo, and Siebeling, "agreed to engage in a continuing course of conduct" designed to "oust" Pastor Weems as the senior pastor of Celebration Church and to install a new senior pastor that would "destroy the Missions Plan." Id. ¶ 57. "One of the first steps in this continuing conspiracy was planting an ARC agent Defendants knew they could control and who would continue to advance their interests, Tim Timberlake, to replace Pastor Weems as Senior Pastor of Celebration Church." Id. ¶ 58 (alterations omitted). After successfully installing Timberlake as a pastor at Celebration Church, Defendants directed Timberlake to enlist "Celebration Church Trustee (Kevin Cormier) and financial officer (Lisa Stewart)" into a scheme "to manufacture evidence of supposed financial crimes and mismanagement that could be used to frame [Pastor] Weems and justify his removal[.]" Id. ¶ 64. This scheme worked, and based upon the evidence manufactured by Defendants, Celebration Church initiated a "sham 'investigation'" into Pastor Weems to determine whether he had engaged in "improper financial practices" and whether he had failed to "fulfill [his] duties and responsibilities as Senior Pastor." Id. ¶ 81.

Defendants then used this ongoing investigation as an opportunity to "target Plaintiffs' strategic partnerships . . . by contacting pastors, missional

partners, strategic partners, leaders of church networks, and donors and telling them that [Pastor] Weems was" being investigated "for financial misconduct and [that he] would be removed as Celebration Church's Senior Pastor." Id. ¶ 80. Defendants were also able to use the investigation as an opportunity to have the "agents they controlled within Celebration Church" repudiate "a financial package for the benefit of [Pastor] Weems and [Kerri] Weems and the Missions Plan" that had been previously agreed upon by Celebration Church's Board of Trustees and Overseers. Id. ¶¶ 53–54, 79.[4] Because of Defendants' conduct, numerous "advantageous business relationships" that Plaintiffs had were terminated. Id. ¶ 98.

Eventually, Pastor Weems "came to the difficult realization that he could no longer be a part of Celebration Church and [that he] needed to try to protect his family from any further attacks by resigning[.]" Id. ¶ 92. Consequently, on April 15, 2022, Pastor Weems tendered his resignation as Celebration Church's senior pastor. Id. ¶ 93. Shortly after resigning, Celebration Church's attorneys released a report outlining the findings of their investigation into Pastor Weems. Id. ¶ 95; see also Report of Investigation to Celebration Church of

---

[4] This financial package included "a Founding Pastor agreement, [a] retirement package for [Pastor] Weems and [Kerri] Weems, a parsonage, and continued and ongoing financial support for" the Weems' mission work. See Amended Complaint ¶ 53.

Jacksonville, Inc. (Doc. 1-1; the "Report").[5] The Report, which states that it was "provided to assist [Celebration Church's] Board [of Trustees] in fulfilling its biblical and legal obligations" and was "performed according to biblical principles," Report at 4, 6, concluded that Pastor Weems had engaged in financial misconduct, "unbiblical" leadership, and "spiritual" abuse, id. at 6–7. The Report further concluded that Pastor Weems had exhibited "the antithesis of biblical leadership," and recommended that Celebration Church accept his resignation. Id. at 20–22.

## II. Discussion

In the Amended Complaint, Plaintiffs assert twenty claims against Defendants. See Amended Complaint at 27–55. In Counts I–XV, Plaintiffs assert claims for tortious interference. Id. at 27–47. And in Counts XVI–XX, Plaintiffs assert conspiracy claims. Id. at 48–55. Defendants argue that the Court lacks subject matter jurisdiction over this action because Plaintiffs'

---

[5] "Generally, when considering a motion to dismiss, the district court must limit its consideration to the pleadings and any exhibits attached to it." Baker v. City of Madison, Alabama, 67 F.4th 1268, 1276 (11th Cir. 2023). However, "[u]nder the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) 'the plaintiff refers to certain documents in the complaint,' (2) those documents are 'central to the plaintiff's claim,' and (3) the documents' contents are undisputed." Id. (quoting Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)). Here, although the Report was not attached to the Amended Complaint, it was attached to Plaintiff's original complaint. The Report is also referenced numerous times throughout the Amended Complaint, is central to Plaintiffs' claims that Defendants orchestrated a sham investigation into Pastor Weems, and its contents are undisputed by the parties. See Amended Complaint ¶¶ 95–100. For these reasons, the Court finds that Plaintiffs have incorporated the Report by reference, and will consider its contents in deciding the Motion.

claims involve questions of church doctrine and polity and are therefore barred by the ecclesiastical abstention doctrine. See Motion at 1. Plaintiffs contend that the ecclesiastical abstention doctrine does not apply because their claims do not involve questions of church doctrine or polity, and can be decided using neutral principles of law. See Response at 7, 9, 13. For the reasons discussed below, the Motion is due to be granted.

"Among the separation of church and state principles required by the establishment and free exercise clauses of the first amendment is that courts may not adjudicate ecclesiastical disputes." Crowder v. S. Baptist Convention, 828 F.2d 718, 718 (11th Cir. 1987). This is so because "[b]y adjudicating religious disputes, civil courts risk affecting associational conduct and thereby chilling the free exercise of religious beliefs. Moreover, by entering into a religious controversy and putting the enforcement power of the state behind a particular religious faction, a civil court risks 'establishing' a religion." Id. at 721. Due to these concerns, under the ecclesiastical abstention doctrine, civil courts are required "to abstain from deciding issues connected to 'theological controversy, church discipline, ecclesiastical government, or conformity of members of the church to the standard of morals required of them[.]'" Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y, 719 F. App'x 926, 928 (11th Cir. 2018) (quoting Crowder, 828 F.2d at

722)).⁶ And must also "accept as binding the decisions of religious organizations regarding the governance and discipline of their clergy[.]" Id. (citing Orthodox Diocese for U. S. of Am. & Canada v. Milivojevich, 426 U.S. 696, 723 (1976)). "Under a narrow exception to this doctrine, however, civil courts may still review church disputes under neutral principles if the dispute does not require consideration of religious doctrinal matters." Rutland v. Nelson, 857 F. App'x 627, 628 (11th Cir. 2021) (citing Jones v. Wolf, 443 U.S. 595, 602–03 (1979)). Even if a claim appears as though it can be decided using neutral principles of law, ecclesiastical abstention will still apply if the claim is "part and parcel of ecclesiastical concerns[.]" Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla., 824 F. App'x 680, 683 (11th Cir. 2020). And its adjudication would "excessively entangle the [court] in questions of ecclesiastical doctrine or belief[.]" Crowder, 828 F.2d at 722 (alteration omitted).

The Court begins by noting that each claim in the Amended Complaint depends on the contention that Pastor Weems' ouster as senior pastor was illegitimate because it was based upon a sham investigation orchestrated by

---

⁶ The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Defendants.[7] As each claim in the Amended Complaint rises and falls based upon this contention, the Court will analyze Plaintiffs' claims collectively. That said, Defendants argue that the ecclesiastical abstention doctrine applies because resolving Plaintiffs' claims will require the Court to inquire into matters of church doctrine and polity. See Motion at 13.

First, Defendants argue that Plaintiffs' claims impermissibly seek the resolution of matters involving church doctrine. See id. at 16. Specifically, Defendants contend that the Court will need "to determine whether the rupture between Pastor Weems and [Celebration Church] was ultimately caused by Defendants' alleged scheming or, instead, sincere religious disagreement, or disagreement about whether Pastor Weems's conduct complied with the church's policies." Id. As noted above, the central contention in the Amended Complaint is that Defendants orchestrated a sham investigation into Pastor Weems to justify his ouster as Celebration Church's senior pastor. See Amended Complaint ¶¶ 64, 81, 85, 95. As part of this plan, Defendants directed Celebration Church pastor Tim Timberlake, Celebration Church Trustee Kevin Cormier, and Celebration Church financial officer Lisa Stewart "to manufacture evidence of supposed financial crimes and mismanagement"

---

[7] Specifically, Plaintiffs' allegations regarding Defendants' plan to oust Pastor Weems from Celebration Church by orchestrating a sham investigation are incorporated into every count in the Amended Complaint. See Amended Complaint ¶¶ 57–58, 63–65, 91, 95–96, 102, 107, 112, 117, 121, 125, 129, 134, 139, 144, 149, 154, 159, 163, 167, 171, 178, 185, 192, 199.

against Pastor Weems. Id. ¶ 64. Defendants then directed Timberlake and Cormier to use this manufactured evidence to prompt Celebration Church to initiate a sham investigation. Id. ¶ 85. As a result of this investigation, Celebration Church's attorneys released a report finding that Pastor Weems had engaged in financial misconduct, "unbiblical" leadership, and "spiritual" abuse. See Report at 6–7. Based upon these findings, Celebration Church decided to accept Pastor Weems' resignation as senior pastor, and repudiate the financial package that it had previously awarded to him. See Amended Complaint ¶¶ 79, 93.

Although Plaintiffs argue that their "claims do not accuse Defendants of violating any religious doctrine, custom, or tradition," and are therefore governed by secular law, "not canonical law," Response at 7–8, the facts outlined above lead the Court to conclude otherwise. Notably, in Mammon v. SCI Funeral Servs. of Fla. Inc., 193 So. 3d 980 (Fla. 4th DCA 2016), the court held that even though the plaintiff had framed her complaint "in counts alleging deceptive and fraudulent misrepresentations" in violation of secular law, this secular law could not be applied "without first determining, as a matter of fact, 'what constitutes Jewish burial customs and tradition.'" Id. at 985. Similarly, here, while Plaintiffs frame their claims as tortious interference and conspiracy, these claims cannot be decided without resolving whether Celebration Church

investigated Pastor Weems for legitimate religious reasons, or because of the tortious conduct of Defendants. In particular, the Court would need to ask:

> Was the investigation of Pastor Weems undertaken by Celebration Church in good faith, based on reasonable concerns about his leadership, or solely because of Defendants' machinations? Was Pastor Weems's 'ouster' the result of scheming by Defendants, or was it Pastor Weems's failure to live up to 'biblical standards for leadership in the church' that led to the investigation and the end of his ministry? Did Pastor Weems exhibit 'the antithesis of biblical leadership as described in scripture,' or was he just set up?

Motion at 15–16 (internal citations omitted). Such an inquiry would result in the Court entangling itself in matters of "theological controversy, church discipline, [and] ecclesiastical government," which the ecclesiastical abstention doctrine squarely prohibits. Crowder, 828 F.2d at 722 (quotation omitted).

Second, Defendants argue that Plaintiffs' claims impermissibly seek the resolution of matters involving church polity. See Motion at 14. However, Plaintiffs are correct that "[t]his case . . . does not involve opposing factions of members of the same congregation." Response at 9 (emphasis in original). Indeed, Celebration Church is not a party to this litigation. Nor are Plaintiffs and Defendants part of the same church body. That said, resolving Plaintiffs' claims will require the Court to inquire into whether those within Celebration Church, namely Timberlake and Cormier, prompted the investigation into Pastor Weems due to legitimate concerns about his fitness for the pastoral ministry, or because of the tortious conduct of Defendants. Therefore, although

Plaintiffs have framed their claims in such a way that there is not a direct dispute between two church bodies, the resolution of these claims will invariably call for the Court to inquire into Celebration Church's internal decision to investigate Pastor Weems. This inquiry, however, is barred by the ecclesiastical abstention doctrine. See Goodman v. Temple Shir Ami, Inc., 712 So. 2d 775, 777 (Fla. 3rd DCA 1998) ("Inquiring into the adequacy of the religious reasoning behind the dismissal of a spiritual leader is not a proper task for a civil court."); Myhre, 719 F. App'x at 928 (finding that the district court lacked jurisdiction over a claim challenging "purely ecclesiastical decisions . . . regarding [the plaintiff's] fitness to serve in the clergy or to remain a member of the denomination").

Finally, Plaintiffs argue that "[e]ven if this were an ecclesiastical dispute . . . abstention still is not required because . . . [c]ertainly, church outsiders responsible for engineering and controlling such a coup can be held responsible for their acts under neutral principles of tort law." Response at 13, 15. The Court is not persuaded by this contention because, as discussed above, the central dispute in this case is whether Celebration Church initiated their investigation into Pastor Weems due to legitimate concerns regarding his fitness for the pastoral ministry, or whether this investigation was a "sham" orchestrated through the tortious conduct of Defendants. The resolution of these questions necessarily involve matters of church doctrine and polity, which

the Court lacks subject matter jurisdiction to address. See Crowder, 828 F.2d at 722; Goodman, 712 So. 2d at 777.[8]

### III. Conclusion

For the foregoing reasons, the ecclesiastical abstention doctrine prevents the Court from adjudicating Plaintiffs' claims. The Court therefore lacks subject matter jurisdiction over this action, and the Amended Complaint is due to be dismissed without prejudice.[9]

Accordingly, it is

**ORDERED:**

1. Defendants' Motion to Dismiss First Amended Complaint for Lack of Subject-Matter Jurisdiction (Doc. 52) is **GRANTED**.

2. Plaintiffs' First Amended Complaint and Demand for Jury Trial (Doc. 49) is **dismissed without prejudice**.

---

[8] Plaintiffs argue that an exception to the ecclesiastical abstention doctrine exists for cases involving fraud or collusion. See Response at 16. Specifically, Plaintiffs contend that the "U.S. Supreme Court [has] noted the possibility" that the ecclesiastical abstention doctrine may be inapplicable in cases where "'church tribunals act in bad faith for secular purposes.'" Id. (citing Milivojevich, 426 U.S. at 713). Assuming for the purposes of this Order that such an exception exists, the Court does not find it to be applicable here. To be sure, the allegations in the Amended Complaint raise a reasonable inference that Defendants had a secular motive for ousting Pastor Weems from Celebration Church. But, in the Amended Complaint, Plaintiffs fail to sufficiently allege that Celebration Church itself had a secular motive for the investigation into Pastor Weems.

[9] As the Court lacks subject matter jurisdiction over this action, Defendants' request for Counts X–XV, XIX, and XX to be dismissed pursuant to Rule12(b)(6) is denied as moot.

3. The Clerk of the Court is **directed** to close the file and terminate any pending motions as moot.

**DONE AND ORDERED** in Jacksonville, Florida this 19th day of December, 2024.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

Lc32

Copies to:
Counsel of Record